# Exhibit A

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

P. DAVID NEWSOME, JR.,   )
et al.,                  )
                         )
              Plaintiff, )
                         ) Case No.
v.                       ) 1:14-cv-00842-RGA-MPT
                         )
JEFF G. LAWSON, et al.   )
              Defendants.)

Thursday, June 9, 2016
11:00 a.m.

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE MARY PAT THYNGE,
         United States Magistrate Judge

APPEARANCES:

PACHULSKI, STANG, ZIEHL & JONES, LLP
BY:  LAURA DAVIS JONES, ESQ.

-and-

COOLEY, LLP
BY:  ALI M.M. MOJDEHI, ESQ.

Counsel for the Plaintiffs

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

2

APPEARANCES CONTINUED:

COOCH & TAYLOR
BY:  JAMES W. SEMPLE, ESQ.

-and-

FRANDEN FARRIS QUILLIN GOODNIGHT & ROBERTS
BY:  PAULA QUILLIN, ESQ.
BY:  JOSEPH FARRIS, ESQ.

Counsel for the Defendants

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

3

1    THE COURT:  Please be seated.
2        All right.  I spent some time
3  going through the materials and by the way, most
4  of these are my notes.  And now I'm not exactly
5  certain where we are, but what I had hoped when
6  we got started and maybe before we get started I
7  should have introductions done.  So who is here
8  on behalf of the plaintiff.
9        MS. JONES:  Good morning, Your
10  Honor.  Laura Davis Jones of Pachulski, Stang,
11  Ziehl & Jones here together with Ali Mojdehi of
12  Cooley, LLP.
13        THE COURT:  How do you know
14  pronounce your last name, because I don't think
15  it's going to look good on the record if I call
16  you Ali, it's just easier.
17        MR. MOJDEHI:  Mojdehi,
18  M-O-J-D-E-H-I.
19        THE COURT:  Mojdehi.  I'm going to
20  do that.  I'll do it.  I have done it
21  phonetically.  Thank you.
22        Mr. Semple.
23        MR. SEMPLE:  Good morning, Your
24  Honor.  James Semple of Cooch & Taylor on behalf

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

4

1  of the defendants.  With me are two lawyers from
2  Tulsa, Oklahoma from the law firm of Franden
3  Farris Quillin Goodnight & Roberts, Paula
4  Quillin and Joe Farris.  Ms. Quillin will be
5  making the presentation on behalf of the
6  defendants.
7        THE COURT:  All right.  Thank you.
8        When I issued my order, counsel,
9  what I was really looking for because it seemed
10  to me certain parts of this dealt with whether
11  or not there had been an appropriate privilege
12  log, but other parts of it dealt with whether or
13  not the documents had been produced in response
14  to requests.  And what I really was looking for
15  were those documents that were really, really
16  important to the plaintiff.  Because going back
17  and looking at the law, at least in Delaware,
18  and looking also over what Judge Andrews
19  authorized, jurisdictional discovery is
20  something that is relatively limited.
21        I recognize that this Court allows
22  and has acknowledged that some, and I emphasize
23  the word some, degree of merits discovery may be
24  necessary.  But I've got some question as to

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

5

1 whether the degree of merits discovery that I
2 have gleaned from what has been submitted is
3 necessarily required for the jurisdictional
4 argument.
5         I know that you can make any
6 argument that -- because that jurisdictional, if
7 the jurisdictional issues decide against the
8 defense, you're going to have that time, we are
9 not denying that, we're just saying the type of
10 discovery I think needs to be more focused on
11 what's really important.
12         So for me there is an issue at
13 least at the beginning regarding relevance, and
14 the relevance goes to the jurisdictional aspect
15 of it.
16         The second issue is to make that
17 determination, I think we have to have an
18 understanding -- you know, Robert, get me Title
19 10 of the Delaware Code.  I forgot to bring it
20 in.  Thank you.
21         And are we talking about specific
22 jurisdiction, are you talking about general
23 jurisdiction, but more importantly, we're
24 talking about individuals.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

7

1 If you need the podium, it is helpful only
2 sometimes if your voice can get sucked in this
3 courtroom.
4         MR. MOJDEHI:  With respect to your
5 question whether there is a distinction, I'm not
6 aware of any distinction.
7         THE COURT:  Neither am I.
8         MR. MOJDEHI:  And jurisdiction in
9 Delaware, like many things in Delaware is a
10 nuance.  And while one has to satisfy the
11 statutory predicate for jurisdiction, in
12 addition to that there is, of course, the
13 constitution overlay.
14         THE COURT:  And frankly the
15 Supreme Court decisions have emphasized that
16 constitutional overlay, the due process aspects
17 of the 14th Amendment and it basically uses that
18 to reinterpret or limit or what I interpret
19 narrowing the continuous context argument under
20 general jurisdiction.  The cases are all dealing
21 with general jurisdiction, not with specific
22 jurisdiction, that's a different animal.
23         MR. MOJDEHI:  So to just state it
24 differently, we don't perceive the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

6

1         One of the issues, and exactly
2 what that means, more recent case law has really
3 come down discussing about corporations and I
4 guess the first question I have is does counsel
5 see a difference in the way corporations are
6 necessarily going to be treated under the law
7 versus individuals?
8         I'm not finding that, but I didn't
9 know if that was an argument.  Because there has
10 been a lot of case law out there from the
11 Supreme Court recently in 2011 and 2014 in a
12 recent case that was handed down by Chief Judge
13 Strine concerning general jurisdiction and what
14 it actually now means in this spectrum, and how
15 that has been narrowed compared to what it was
16 before based upon prior cases.
17         So I'm looking for some direction
18 from the plaintiff as to all these questions and
19 some direction from the defendant as to all
20 these questions.
21         MR. MOJDEHI:  Thank you, Your
22 Honor.
23         THE COURT:  You don't have to
24 stand at the podium if Mr. Hawkins can hear you.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

8

1 jurisdictional test to be a mechanical one where
2 you just check this box and suddenly you have
3 jurisdiction.  That, of course, there may be
4 such a test in the context of officers and
5 directors who consent to jurisdiction, but
6 that's not what we're dealing with here.
7         THE COURT:  You're going for
8 general jurisdiction?
9         MR. MOJDEHI:  No, we're going for
10 specific, but in that analysis, one needs to
11 deal with the constitutional issues as well.
12 It's not just a strict --
13         THE COURT:  No, I recognize that.
14         MR. MOJDEHI:  So that's what --
15 and then there is the third point, Your Honor,
16 that is very significant in this case and
17 somewhat unique to Delaware and some other
18 states, which is the use of conspiracy as a
19 means to convert jurisdiction.  And that is
20 precisely what we have alleged here.
21         So what does that do?  What that
22 does is it makes relevant the conduct of others.
23 And it broadens the breath of what we view as
24 permissible discovery.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

9

1    And the difficulty that a
2  plaintiff has in this context is that when they
3  file their motion to dismiss, or refile it or
4  have it --
5    THE COURT:  I think they have
6  filed it, have they not?
7    MR. MOJDEHI:  They have filed it.
8  In case they refile it, what they're going to
9  do, Your Honor, is say oh, these guys have had
10  discovery so therefore, Judge, you need to do
11  away with liberal construction, you need to hold
12  the plaintiff's feet to the fire and force them
13  to come forward with specifics.  That's what
14  we're going to hear.  Hence our desire to get
15  documents we seek.
16    There is one other point, Your
17  Honor, that is significant.  The defendants here
18  have submitted declarations in support of the
19  motion to dismiss so it's not simply a motion to
20  dismiss devoid of evidence.  And once that's
21  done, that also enhances the breath of discovery
22  that is reasonable in the context of
23  jurisdictional discovery, if for no other
24  purpose than the purpose of being able to

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

11

1  permeating everything that had been filed
2  previously, and seems to be your argument today.
3    So I'm going to --
4    MR. MOJDEHI:  Your Honor, that
5  wasn't my argument.
6    THE COURT:  I know, but I was
7  looking for some help from you, and I'm not
8  hearing it.  So I'm cutting you off right now
9  for your argument and I'm going to allow the
10  defense to respond.
11    What about the argument, though?
12  I know that I asked a number of questions, but
13  what about plaintiff's argument that, okay, you
14  have now -- you are now trying to box them in
15  and limit what they're going to be able to
16  obtain in this jurisdictional discovery phase,
17  and then you'll say, you'll have an I got you,
18  because you haven't given them the information.
19    And you're going to say we need
20  specifics, we need to see the specifics and
21  everything else and -- oh, by the way, judge,
22  they don't have it, so the affidavit is invalid.
23    MS. QUILLIN:  We filed a motion to
24  dismiss.  It's true we filed a declaration with

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

10

1  impeach those declarations.
2    So for all of those reasons, Your
3  Honor, we believe that this is a case where
4  jurisdictional discovery is inextricably linked
5  to the merits and why we should have wholesome
6  discovery.  I would also --
7    THE COURT:  Wait a minute.  The
8  Court didn't grant you that.  Judge Andrews
9  granted you jurisdictional discovery.  For you
10  to try to backdoor and make arguments completely
11  backdooring the merits, it's not going to
12  happen, I'm going to tell you that right now.
13    I think there are certain aspects
14  that yes, the merits may very well be necessary,
15  but not from what I saw in the multiple pages
16  that I had to read from the various letters that
17  were provided.
18    I am not in agreement with what
19  has been done so far by the plaintiff.  I am not
20  saying I am eliminating anything by any stretch
21  of the imagination.  But I was looking for some
22  assistance from plaintiff as to what was really
23  important to the issues, not this kind of
24  broader brush approach that seems to be

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

12

1  the motion to dismiss.  Everything in the
2  declaration refers to documents that were
3  referenced in the complaint itself which my
4  understanding of the law is if it's referenced
5  in the complaint, it's fair game for a motion to
6  dismiss.
7    THE COURT:  It is.
8    MS. QUILLIN:  It is not a motion
9  for summary judgment.  One of the first grounds
10  in the motion to dismiss is jurisdiction.
11    With respect to the jurisdiction
12  question, defendants have produced all documents
13  that were Mahalo USA with BDP, that's the law
14  firm, Burnet, Duckworth & Palmer.  I'll use BDP
15  if that's all right.
16    We have produced all documents
17  that show joint disposition, if you will, to
18  Mahalo USA and parent from BDP.
19    THE COURT:  Are you saying there
20  was joint representation?
21    MS. QUILLIN:  BDP did advise
22  Mahalo USA on Canadian law.  And, in fact, some
23  of the attachments that plaintiff has to the
24  papers that have been filed with the Court show

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

13

1  opinion letters that talk about the effect on,
2  or where Mahalo USA needed to comply with
3  Canadian law.  Whenever U.S. law was required
4  and plaintiff has also attached to his papers,
5  there were opinions by U.S. lawyers.
6         Our position is BDP -- and
7  specifically BDP isn't sued here, just these two
8  Canadian lawyers were sued here -- did not
9  represent Mahalo USA on U.S. law.
10        So we have represented both, but I
11 would say it's not joint if that makes sense.
12 There were Mahalo USA had U.S. representation on
13 U.S. issues.
14        THE COURT:  Did the same attorneys
15 who represented the parent within BDP also
16 represent Mahalo?
17        MS. QUILLIN:  These two lawyers, I
18 believe that Jeff Lawson did talk about the
19 Canadian law from Mahalo USA, and he is one of
20 the defendants here.
21        Grant MacKenzie, it's possible
22 that he also advised on the Canadian part for
23 Mahalo USA.
24        THE COURT:  Then they represented

14

1  the parent as well?
2         MS. QUILLIN:  Yes.
3         All we have left that these two
4  defendants have control over are documents that
5  solely deal with the parent.  The parent was the
6  only one on that.  The parent is a Canadian
7  corporation.  Under Canadian law, the successor
8  to the bankrupt parent gets that privilege.  The
9  lawyers cannot waive the privilege.  That's
10 basically our position.
11        I would also say I don't see how
12 anything in the parent documents alone could
13 convert Delaware jurisdiction.  If there is
14 anything that converts Delaware jurisdiction,
15 that should be apparent in the Mahalo USA
16 documents or possibly in those documents where
17 both were copied, parent and Mahalo USA.
18        Anything to parent is Canadian, it
19 happens in Canada, it's between these Canadian
20 attorneys and the Canadian parent.
21        Further, if you look at Judge
22 Andrews' order, he sets out in Docket 35 what he
23 says the jurisdiction is based on for Delaware.
24 The first one is if you're an officer as defined

15

1  in the Delaware Code, neither of these
2  defendants are an officer defined in the
3  Delaware Code.
4         Lawson was not an officer of
5  Mahalo USA at all.  He was a director of parent.
6         MacKenzie was the corporate
7  secretary of Mahalo USA, and also the corporate
8  secretary of parent.  Secretary is not one of
9  the officers listed in Section 3114.
10        Plaintiff has said that he's
11 trying to go under the chief legal officer
12 designation, but he calls it de facto chief
13 legal officer.  We have, again, given all the
14 documents with respect to Mahalo USA.  If he can
15 find it in there to prove that, we are ready to
16 brief this jurisdiction issue.
17        So, no officer.
18        Secondly, whether they transact
19 business in the state.  We have again produced
20 all the Mahalo USA documents.  We have produced
21 the documents where both are stated on it.  If
22 there is transacting business, it should be in
23 those documents.  We submit to the Court, it's
24 not because there weren't.

16

1         THE COURT:  Did you send out all
2  the documents?  You said you did and I think you
3  did.  Did you send out all the documents that
4  involve -- that reference both the parent and
5  Mahalo?
6         MS. QUILLIN:  There may be parent
7  documents that actually reference Mahalo USA
8  that are in the privilege log that we have not
9  submitted.
10        THE COURT:  But you don't know
11 what those documents are right off the top?
12        MS. QUILLIN:  I do not, Your
13 Honor.
14        The other category that Judge
15 Andrews references as subjecting an individual
16 to jurisdiction is whether or not the individual
17 has caused tortious injury in the state.  And he
18 went on to talk about and must involve the
19 defendant filing of a corporate instrument in
20 Delaware that, quote, facilitated transactions
21 under challenge in the litigation.
22        Plaintiff has all of those.  We've
23 produced, again, all of the Mahalo USA
24 documents.  If it's a document that has to be

17

1  filed in the state, that would also be a matter
2  of public record.
3         Again, Your Honor, we're standing
4  as attorneys that are attorneys to a Canadian
5  parent. We're asserting an attorney/client
6  privilege because our former client has not
7  waived that privilege.
8         We offered to plaintiff to meet
9  with the successor parent and I believe
10  plaintiff actually contacted them. The
11  successor to parent said plaintiff could come
12  look at their documents subject to a review for
13  attorney/client privilege first. Plaintiff
14  refused that offer.
15         The successor to parent did not
16  waive the attorney/client privilege. That's the
17  only thing we're asserting.
18         THE COURT: So you're not
19  representing, your firm is not representing
20  Mahalo?
21         MS. QUILLIN: No.
22         THE COURT: All right.
23         MS. QUILLIN: And again, Your
24  Honor, we would submit if there is jurisdiction,

18

1  plaintiff should have the documents at this
2  point that would show jurisdiction.
3         THE COURT: I understand the basis
4  of your arguments and I guess what we're going
5  to have to do is go through each one of the
6  issues that are involved in each one of the
7  requests for production that is claimed that it
8  is insufficiently answered or responded to,
9  which is what I was trying to avoid. I was
10  trying to get groupings of documents that were
11  important and maybe we can deal with a grouping
12  of documents in that regard, but if we have to
13  do it on a request by request approach, then
14  we'll do it on a request by request approach.
15         MR. MOJDEHI: Let me try to
16  approach this in a slightly different manner,
17  Your Honor. Because really some of the
18  arguments made are perplexing. When we look at
19  the Teleglobe case, Judge Ambrose's decision, it
20  is very clear --
21         THE COURT: What do you rely upon
22  with the Teleglobe case?
23         MR. MOJDEHI: Well, the first
24  question, Your Honor, and if we could just --

19

1  maybe one way to do this --
2         THE COURT: Well, I point out on
3  this with the Teleglobe case, you tell me what
4  is very clear, I tell you whether I agree with
5  you on that.
6         MR. MOJDEHI: If there is joint
7  representation, and if the documents are within
8  the scope of that joint representation, they
9  should be produced.
10         THE COURT: No.
11         MR. MOJDEHI: They are not
12  privileged.
13         THE COURT: No. For this reason,
14  joint representation under the Teleglobe case,
15  the Court specifically stated, and I quote, the
16  great caveat of the joint client privilege is
17  that it only protects communications from
18  compelled disclosures to parties outside the
19  joint representation. When former co-clients
20  sue one another, when former co-clients sue one
21  another, the default rule that is all
22  communications made in the course of the joint
23  representation are discoverable.
24         The Teleglobe case differs from

20

1  this case because in that case, the subsidiary
2  sued the parent. And there had been a joint
3  representation involved between the parent and
4  the sub.
5         Here we have a sub, not joint
6  clients suing one another, it would be the
7  parent and the sub, it's one client is suing the
8  attorney for both clients. A waiver cannot
9  occur for the client who is not the party to the
10  suit. That client cannot lose.
11         In other words, if your argument
12  is we have a parent and a sub, the sub is now
13  suing counsel who allegedly represented both the
14  parent and the sub, that parent dose lose
15  attorney/client privilege just because the sub
16  has sued the attorney. That is a completely
17  different circumstance. And that's what I
18  understand we have here and what we didn't have
19  in the Teleglobe case.
20         MR. MOJDEHI: Well, no cases are
21  identical, Your Honor, but I would make two
22  observations. One, in Teleglobe, the key
23  problem was you had the second tier's subsidiary
24  suing. And the difficulty was that the joint

21

1   representation in that case was with the first
2   tier subsidiary, not the second one.  And that's
3   what created some ambiguity.
4           THE COURT:  Well, it didn't -- you
5   haven't answered what the Third Circuit said in
6   its opinion that I quoted.  And I still stand on
7   that.  You're saying to me, you're suggesting to
8   me that the parent has given up, somehow given
9   up any claim of attorney/client privilege in any
10  document that has any reference to Mahalo
11  because of the joint representation and Mahalo
12  now suing through the trustee, suing the
13  attorneys that represented it, along with the
14  parent.  I don't see how you can possibly on the
15  Teleglobe matter, even how that fits.
16          MR. MOJDEHI:  Let me address that
17  question which was the second point.  So
18  Teleglobe gives us the general rule, and then
19  the question is does this fall within that
20  general rule?
21          THE COURT:  And the answer is no.
22          MR. MOJDEHI:  And the answer is
23  you have to dig deeper.  So where does one dig?
24  One digs in Delaware Evidence Rule 502(d)(3).

23

1   were that the attorney had favored the interest
2   of the nonsuing client over the suing client.
3           And that's exactly what we are
4   saying here today in our suit.  That you had
5   lawyers who affirmatively favored one client at
6   the expense of another.  And 502(d)(3) says,
7   there is no privilege, quote, as to a
8   communication relevant to an issue of breach of
9   duty by the lawyer to the client or by the
10  client to the lawyer.
11          So you take Teleglobe, then you
12  take Delaware --
13          THE COURT:  But does that cover a
14  joint representation situation?  When you have a
15  Third Circuit recognizing that when you talk
16  about, when you create a joint client
17  relationship where you have one or two attorneys
18  representing the same parties, representing the
19  two same parties, those two parties, because
20  you're saying to me now Mahalo was looking to
21  those attorneys for representation and along
22  with it the parent was doing the same thing.
23          And --
24          MR. MOJDEHI:  Your Honor, that's

22

1   And we have cited for Your Honor a California
2   case that deals with these identical facts.  A
3   lawyer being sued.
4           THE COURT:  By one of the joint
5   clients.
6           MR. MOJDEHI:  Exactly.  And the
7   case is Anton versus Superior Court, 2015
8   Westlaw 405-18, California Court of Appeals.
9   And there, Your Honor --
10          THE COURT:  And how did the
11  California Court of Appeals privilege under its
12  privilege rule compare to Delaware's?
13          MR. MOJDEHI:  It has a rule that's
14  very similar to 502(d)(3).  And what the court
15  there says, Your Honor, is quote, It would be
16  unjust to allow the nonsuing client to thwart
17  the other client's suit by invoking privilege to
18  prevent introduction of relevant attorney/client
19  communications made in the course of the joint
20  representation.
21          Again, the risk of collusion
22  between the attorney and the nonsuing client
23  would be substantial.  Indeed, the risk would be
24  particularly significant if the alleged breach

24

1   an admitted fact.
2           THE COURT:  Fine.  Then it says
3   when co-clients and their common attorneys
4   communicate with one another both communications
5   are in confidence for privilege purposes.
6   Moreover, the waiving of attorney/client
7   privilege requires a consent.  That consent
8   regards to a client.  Under the statements there
9   are other laws governing lawyers.  And a client,
10  a client may unilaterally waive the privilege as
11  to its own communications with a joint attorney
12  so long as those communications concern only the
13  waiving client.  It may not, however,
14  unilaterally waive the privilege as to any other
15  joint client communication or to any of its
16  communications that relate to the joint clients.
17          And that was the finding by the
18  Third Circuit.  That was the finding of the law
19  that was applicable by the Third Circuit.
20          MR. MOJDEHI:  I get --
21          THE COURT:  And it was an
22  application here, so I am going to be guided by
23  that on the Teleglobe case.  And I do see there
24  is a difference in your case and the Teleglobe

25

1  case.

2       MR. MOJDEHI:  And I agree with

3  that, Your Honor, of course there is, because

4  we're not suing the parent.  But the question

5  is, if you're suing the lawyers, does it fall

6  within the rule?  We have a case and we have the

7  Delaware statute.

8       THE COURT:  You may have a case in

9  the Delaware statutes, but I am saying to you I

10 am going to follow the Teleglobe case on this,

11 because the Teleglobe case also considered that

12 Delaware statute in its applications and

13 findings.

14      MR. MOJDEHI:  But it wasn't

15 dealing with -- for the reasons you have stated,

16 so we have got to take the general rule in

17 Teleglobe and apply it to what we have here.

18      THE COURT:  But it has pointed

19 out, you cannot -- just because I decide to sue

20 my attorney who is jointly representing somebody

21 else, I cannot say -- I mean, this would put

22 attorney/client privilege on its head.  And I

23 don't agree with the California case.  And I

24 don't think the Third Circuit would, either.

Hawkins Reporting Service

715 North King Street - Wilmington, Delaware 19801

(302) 658-6697  FAX (302) 658-8418

26

1  And the California case wouldn't apply to

2  Delaware law.  So my ruling is what it is and it

3  stands and that's what's going to guide me today

4  as best I can.  Unless there is quote, a waiver.

5       MR. MOJDEHI:  No, Your Honor,

6  look, they haven't -- no one has come forward

7  with any precedent other than what we have.  And

8  if the Court is -- you know, wants to ignore it,

9  that's fine.

10      THE COURT:  I'm not ignoring

11 precedent, because I don't find the California

12 court necessarily on point with this.  I find

13 the Third Circuit's application of the law and

14 how joint privilege is -- how joint client

15 privilege is interpreted appropriate and I find

16 it appropriate in this circumstance.  That's my

17 ruling.  All right?  You may disagree with me,

18 and you can certainly bring it up with Judge

19 Andrews, but that's my ruling.

20      MR. MOJDEHI:  Well, in light of

21 that, I'm not sure what there is more to

22 discuss.

23      THE COURT:  Is everything that

24 you're requesting, then, everything that was

Hawkins Reporting Service

715 North King Street - Wilmington, Delaware 19801

(302) 658-6697  FAX (302) 658-8418

27

1  joint documents between the parent and Mahalo?

2       MR. MOJDEHI:  Your Honor, if I

3  understand your ruling, and let me make sure I

4  understand it, what Your Honor is saying is

5  because we are suing the lawyers and not the

6  parent, then the joint representation exception

7  doesn't apply?

8       THE COURT:  No, I didn't say that.

9  I did not say that.

10      MR. MOJDEHI:  Okay.  I'm glad I

11 asked.

12      THE COURT:  I said because of that

13 circumstance, because of that circumstance, I do

14 not believe the fact that one joint client

15 decides to sue the lawyers means that -- means

16 that the privilege that existed as between those

17 joint clients because of the sole or joint

18 representation by an attorney, and one joint

19 client decides to sue that attorney means that

20 suddenly the other joint client has lost all of

21 its privilege.  That's what I have decided in

22 that circumstance.  And that's what I said.

23      MR. MOJDEHI:  I'm sorry, Your

24 Honor.  I'm sorry to be slow on the uptake.  Let

Hawkins Reporting Service

715 North King Street - Wilmington, Delaware 19801

(302) 658-6697  FAX (302) 658-8418

28

1  me ask the question a different way.  Assuming

2  that we were suing the parent, how is that --

3  are you saying that that situation --

4       THE COURT:  Because in that

5  situation, then the joint representation ends.

6  The joint representation ends.  This is a

7  relationship not just with the attorney, it is

8  the parties' intent and expectations, and the

9  ability to waive the privilege.

10      When a lawsuit occurs between the

11 parent and sub, or the parent -- as it was in

12 the Teleglobe case, the joint representation

13 circumstance then evaporates, it is a situation

14 where there is a lawsuit, and that has the

15 effect.  But this is a different circumstance.

16 This is a party suing the attorney who was

17 involved and the attorney can't waive that

18 privilege, only the party who has the

19 attorney/client privilege can waive it.  That's

20 what I'm saying.

21      MR. MOJDEHI:  I get that.  And

22 what I'm saying is that's a legal issue.  And if

23 that's the Court's ruling, there is really no

24 reason to debate anything.  We disagree with it.

Hawkins Reporting Service

715 North King Street - Wilmington, Delaware 19801

(302) 658-6697  FAX (302) 658-8418

29

1    THE COURT: Fine.
2    MR. MOJDEHI: And because what
3 that -- the net result of what you're saying,
4 Your Honor, is that we're not entitled to any of
5 those documents.
6    THE COURT: No, not necessarily,
7 because I don't know -- don't put words in my
8 mouth, because I don't know based upon the
9 descriptions what documents could very well fall
10 outside that privilege. There are documents
11 that could.
12    Two things, one, is the document
13 relevant, first of all. Secondly, if it's
14 relevant, does the privilege apply to it. If
15 it's not relevant, we never get to the issue of
16 privilege. And relevance is to be determined
17 based upon the type of discovery that is
18 involved in this matter. And that's
19 jurisdiction.
20    MR. MOJDEHI: And I conceptually
21 again don't disagree with what you have said,
22 but if you invert the argument --
23    THE COURT: So what you're saying
24 to me is it's perfectly all right for one party

30

1 who has had a joint representation with another
2 party who decides to sue the attorney to sit
3 there and say the other party has given up all
4 of its attorney/client privilege that it had
5 with the attorney?
6    MR. MOJDEHI: We think the
7 reasoning of the California court and Delaware
8 502 is consistent with our position, Your Honor.
9    THE COURT: It's found at where?
10 502 is found where? What's the title? What's
11 the title?
12    MR. MOJDEHI: Just one second,
13 Your Honor. The evidence code, Your Honor.
14    THE COURT: What?
15    MR. MOJDEHI: It's the Delaware
16 evidence code.
17    THE COURT: Get me the Delaware
18 Rules of Evidence.
19    Has there been any Delaware case
20 decided on this?
21    MR. MOJDEHI: No. We researched
22 it to death, and there hasn't been. But if you
23 compare the California statute and the Delaware
24 statute --

31

1    THE COURT: Do you have a copy of
2 the California statute.
3    MR. MOJDEHI: I don't. I didn't
4 bring it with me. But I think we have provided
5 the Court with a copy of the California case,
6 and --
7    THE COURT: It wasn't in the
8 documents that I received from Judge Andrews.
9    MS. QUILLIN: I have got it
10 highlighted, if that's okay.
11    MR. MOJDEHI: Wonderful. Yes.
12    THE COURT: This is the Delaware?
13    MS. QUILLIN: The Delaware.
14    THE COURT: Thank you.
15    503(d), exceptions. And your
16 exception that you're relying upon is two, or
17 what?
18    MR. MOJDEHI: 502(d)(3), Your
19 Honor.
20    THE COURT: For breach of a duty
21 by a lawyer or client. What do you do about
22 502(6)? It says it is as to a communication
23 relevant to a matter of common interest between
24 or among two or more clients if the

32

1 communication was made by any of them to a
2 lawyer retained or consulted in common when
3 offered in an action between or among any of the
4 clients. This is not being offered in an action
5 between or among.
6    MR. MOJDEHI: No, I am not dis --
7    THE COURT: So it can't fall under
8 the joint client situation which is what I was
9 saying which is the reason why I think the
10 Teleglobe case is correct on that as far as the
11 law is concerned. That's it.
12    I think when we're talking about
13 breach of a duty by a lawyer or a client, I
14 think that has nothing to do with joint
15 representation by a lawyer to two clients or by
16 two lawyers to the same two clients. I think
17 that has to do with single lawyer or lawyer to
18 that one client. It has nothing to do with
19 joint representation.
20    MR. MOJDEHI: Your Honor, I guess
21 --
22    THE COURT: So if California
23 doesn't have this language in it, and I don't
24 agree that California ---

33

1  MR. MOJDEHI: I actually believe
2  that it doesn't. I'm sort of taken by your
3  comment that I guess I'm not sure what this
4  Court received and what it didn't.
5  THE COURT: I don't have a copy of
6  the case, the California case, I don't believe.
7  I have a copy of a number of things, but I don't
8  have the California case. It wasn't in the
9  materials that I received from Judge Andrews.
10  Now, you may have cited it, but I don't have a
11  copy of it sitting in front of me.
12  MR. MOJDEHI: We have, Your Honor.
13  And I would -- it was filed with the Court, Your
14  Honor.
15  THE COURT: It may have been.
16  MR. MOJDEHI: And let me -- and
17  I'll tell you, it was attached --
18  THE COURT: I don't have it off my
19  fingertips right now. But frankly, I felt I
20  should be more guided by Third Circuit law and
21  the Third Circuit application of the law.
22  MR. MOJDEHI: I would be happy to
23  hand it up.
24  THE COURT: You can, you can, it's

34

1  not a problem.
2  MR. MOJDEHI: But just for the
3  record, Your Honor, it was an attachment --
4  THE COURT: I don't doubt it was
5  probably very well attached, but I do not have
6  it in front of me right now. I'll accept that.
7  MR. MOJDEHI: May I approach?
8  THE COURT: Sure.
9  This looks like it was a common
10  interest doctrine and joint privilege, which are
11  two different things.
12  I'm trying to scan in here where
13  the citation was to the California code. I
14  think it's referencing Section 958 of the
15  California code. Let me see. It says, there is
16  California code provides under Section 958 there
17  is no privilege under this article, no
18  attorney/client privilege as to a communication
19  relevant to an issue of breach by a lawyer or by
20  a client of a duty arising out of the
21  lawyer/client relationship. It doesn't say
22  anything here about whether or not it had a
23  joint privilege.
24  MR. MOJDEHI: And that statute

35

1  that you just read, Your Honor, is similar to
2  502(d)(3) in Delaware.
3  THE COURT: It is. It is similar.
4  But it doesn't say to me whether it has
5  502(d)(6), which I think modifies 502(d)(3). In
6  other words, it directly -- it is specific and
7  directly addresses the joint privilege aspect.
8  I don't see anything, unless you can tell me
9  where it is in the case, about whether or not --
10  whether or not they have something about a joint
11  representation within their code or whether the
12  court when doing an analysis like the Third
13  Circuit was doing an analysis about joint
14  representation.
15  MR. MOJDEHI: If Your Honor would
16  give me ten minutes.
17  THE COURT: I don't see it.
18  MR. MOJDEHI: I will verify that.
19  THE COURT: Okay. That's fine.
20  How are you going to go about verifying it?
21  MR. MOJDEHI: I'm going to step
22  outside if I may.
23  THE COURT: You may step outside.
24  You may find in the courtroom you may have

36

1  better reception, which is fine.
2  MR. MOJDEHI: I'll try and I'll
3  come back. Thank you, Your Honor.
4  (A brief recess was taken.)
5  THE COURT: Yes.
6  MR. MOJDEHI: Your Honor, I had
7  forgotten about the disadvantage of time zone.
8  THE COURT: There is the three
9  hours, two hours, one hour.
10  MR. MOJDEHI: Three hours.
11  THE COURT: Three hours
12  difference. Where are you located?
13  MR. MOJDEHI: In southern
14  California. But we're -- my office is looking
15  at it and I just want to be careful in what I
16  represent. So I don't have an answer for you
17  yet, but I will.
18  THE COURT: I was trying to go
19  through the annotations. So I have got a
20  ruling, so how does that affect what happens,
21  unless the ruling gets modified, but how does
22  that affect what happens?
23  MR. MOJDEHI: You're absolutely
24  right that it doesn't affect any documents that

37

1  are not privileged, or alleged to be not -- that
2  are not privilege but alleged to be, and I can
3  give you an example of that.
4        THE COURT: Okay.
5        MR. MOJDEHI: For example, we have
6  billing statements related to D & O by --
7        THE COURT: Related to?
8        MR. MOJDEHI: The matter is called
9  D & O.
10       THE COURT: D & O?
11       MR. MOJDEHI: Yes.
12       THE COURT: I would assume
13  directors and officers or not.
14       MR. MOJDEHI: I would assume that
15  to be the case. But those have been redacted.
16  And the response there has been that was after
17  the bankruptcy and therefore it was not
18  relevant.
19       THE COURT: We got to talk about
20  whether -- we got to talk about the date issue,
21  too. There is a date issue out there from what
22  I understand about the bankruptcy. There is the
23  -- there is also the privilege log issues.
24       MR. MOJDEHI: Yes. So those are

39

1  case law still recognizes that some concerns,
2  there are going to be some and they emphasize
3  some, overlap with the merits. But if you're
4  going to end up having jurisdictional discovery
5  that operates along with full merits discovery,
6  then why do we have a jurisdictional discovery?
7  It doesn't make any sense, so it's that line and
8  that provision that I'm trying to come up.
9        MR. MOJDEHI: I take your point,
10  and I simply -- my only response there is that,
11  you know, the extent is context based. So in
12  one case, the jurisdictional discovery may be
13  more, and in another case where we have in this
14  case conspiracy is a basis, it's greater.
15       But let me address some of the
16  things that are not issues so we can get through
17  them.
18       THE COURT: The other thing, too,
19  is I couldn't find the privilege log. I know we
20  had it, but I can't find it. Do you have a copy
21  of the privilege log?
22       MR. MOJDEHI: I do.
23       THE COURT: Could you provide me
24  with a copy?

38

1  all issues, Your Honor, that we can wrestle
2  with. And the reason why we had approached it
3  in a different way was because we incorrectly
4  based on the Court's comments felt that the
5  exception applied.
6        And I still hope that I will be
7  able to provide you with California statute that
8  is similar to the Delaware one. Putting that
9  issue to the side, we thought if that was
10  established, then this exercise becomes
11  significantly simpler.
12       THE COURT: Not necessarily. The
13  first question is still the relevance, that's
14  the first issue. I think that's the thorniest
15  issue we have, I really do.
16       MR. MOJDEHI: And that is -- I
17  take your point, and I just want the Court to
18  know that we're always paranoid about the got
19  you argument.
20       THE COURT: I'm sure you are. I
21  understand that. I understand that. But I know
22  that what I'm trying to do is -- there is case
23  law definitely in Delaware that says you're
24  allowed to have jurisdictional discovery. The

40

1        MR. MOJDEHI: Yes.
2        THE COURT: Is that your only
3  copy?
4        MR. MOJDEHI: That's my only.
5        THE COURT: We'll copy it. Could
6  you give it to my clerk and that way he can do
7  that.
8        MR. MOJDEHI: Sure.
9        THE COURT: How many pages is it?
10  Substantial.
11       MR. MOJDEHI: Yes, it is
12  substantial. And also it is something frankly
13  that I had to get a magnifying glass, but that's
14  how we received it.
15       THE COURT: Counsel, it looks like
16  you have something to say.
17       MS. QUILLIN: I don't know if you
18  can pull it up or not. It is actually at Docket
19  54-5.
20       THE COURT: Oh, my gosh, there is
21  no way I can read that. Let me see if I can
22  pull it up.
23       So what you quoted was the -- what
24  was the DI number where it was found?

41

1    MS. QUILLIN:  Docket 54-5.
2    THE COURT:  Okay.  Thank you.
3    What I'm trying to do is just pull
4    it up on the docket so I can sit here and look
5    at it that way, not that I necessarily am going
6    to be reading it, but just so I can find it.
7    MR. MOJDEHI:  When the Court is
8    ready, I would like to address the nonissues so
9    we're not -- because that may simplify things to
10   some degree.
11   THE COURT:  Why don't you do that.
12   I have got the docket up.
13   MR. MOJDEHI:  So Judge, here is
14   our dilemma.  They have produced documents that
15   they claim was jointly -- where there was joint
16   representation by Mahalo U.S. and Mahalo Canada.
17   They have produced that.  So whether that's a
18   waiver or not, is another issue, but they have
19   made that production.
20   THE COURT:  They have made some
21   production of Mahalo U.S. and Mahalo Canada?
22   MR. MOJDEHI:  Correct.  They have
23   produced that.
24   THE COURT:  Produced certain

43

1    not -- I want to make absolutely clear because
2    Judge Andrews asked me the same question.  Are
3    you after, I think he said documents pertaining
4    to the pension plans of Canada.  I said
5    absolutely not.
6    THE COURT:  Well, you wouldn't get
7    those anyhow.
8    MR. MOJDEHI:  We're not.  What we
9    are interested and desire is documents that
10   pertain to, relate to, impact Mahalo U.S., but I
11   have no way of --
12   THE COURT:  Let me understand,
13   documents that relate to, pertain to.
14   MR. MOJDEHI:  Or effect Mahalo
15   U.S.
16   THE COURT:  Or impact.
17   MR. MOJDEHI:  Impact Mahalo U.S.,
18   those are the documents we are after.  And what
19   counsel has said to this Court is that we have
20   held back documents where the lawyers were
21   quote, solely representing the parent, Mahalo
22   Canada.
23   What they have not told us is how
24   they went about --

42

1    documents.
2    MR. MOJDEHI:  Right.  And I assume
3    that they have produced it because they felt
4    that our position had merit.  But whatever it is
5    --
6    THE COURT:  Or was there any
7    argument that they were privileged.
8    MR. MOJDEHI:  Well, we --
9    THE COURT:  Or contained, there
10   was an argument made by the defense -- obviously
11   there may not have been an argument made by the
12   defense that these documents were privileged.  I
13   don't know how many of these documents were
14   public documents, documents that had no
15   privilege, I don't know.
16   MR. MOJDEHI:  They claim, but
17   counsel can address it, but my understanding was
18   that they were -- they didn't believe they were
19   privileged because they fell within the
20   exception paragraph, so let me go with what
21   we're not after, the joint representations.  So
22   let me just address what we're not after.
23   THE COURT:  What you're not after?
24   MR. MOJDEHI:  Not after.  We are

44

1    THE COURT:  Determining that.
2    MR. MOJDEHI:  Determining that.
3    How one could possibly do that when the lawyers
4    were representing both clients?  How can one
5    possible do that when there is cross, or there
6    is identity board members and officers that is
7    the same?  And how can do you that when you have
8    Mr. MacKenzie saying, look, the parent did
9    everything for the U.S., the U.S. didn't have
10   any, according to Mr. MacKenzie, independent
11   existence.  It had independent existence, but
12   everything was done at the parent level.  That's
13   my point.
14   And that's according to
15   Mr. MacKenzie.  So in light of those -- and then
16   we also don't have any engagement letters.  We
17   don't have any letters limiting the scope of
18   engagement.  We don't have any of that.  We have
19   joint billings.  All the bills are sent to the
20   parent and that includes subsidiary work.
21   THE COURT:  This is argument that
22   you made I think in your letter.
23   MR. MOJDEHI:  Yes.  But I want to
24   come back -- so the universe, Your Honor, of the

45

1 documents, you're going to say where are they.
2 I have no idea, because I don't have the ability
3 to decipher that privilege log. So I can't tell
4 you what is the universe of documents that falls
5 in that category which I mentioned. So I don't
6 know whether it's ten, five, a hundred. One
7 category that I can put my arms around is the
8 billing statements that refer to D & O.
9           THE COURT: That refer to?
10           MR. MOJDEHI: D & O.
11           THE COURT: I'm sorry. That
12 issue, if it's all material, I will have to
13 accept the attorney's representation that when
14 they say to the court that it's all material
15 that arose after the bankruptcy filing, the
16 issue there is, is anything discoverable after
17 that date.
18           MR. MOJDEHI: And our view is if
19 an admission is made after the bankruptcy, then
20 you wouldn't be able to take any depositions.
21 The depositions are always taken after the fact.
22 So the fact that they occurred after the
23 bankruptcy doesn't mean anything.
24           Here we have on the question of

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

46

1 relevance, because if someone let's say
2 confesses after the bankruptcy, of course it's
3 relevant. And the temporal argument doesn't
4 really carry water.
5           And here what we have is notations
6 that said this is D & O.
7           Your Honor, Ms. Jones had the
8 wisdom to look at my phone and made the point
9 that my messages are unsent and they were in a
10 holding pattern, so she walked out.
11           THE COURT: Good idea. Good idea.
12           MR. MOJDEHI: Sorry about that.
13           THE COURT: So I understand that
14 we were talking about the D & O billing post
15 bankruptcy, and the adequacy of the privilege
16 log.
17           MR. MOJDEHI: And again, you know,
18 there are all those documents that have been
19 withheld. What I don't know, Your Honor, is in
20 that universe, what falls within that category
21 that relates to, impacts, references U.S., and
22 that's why I assume they have the ability to,
23 because they have documents, tell us what that
24 is.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

47

1           THE COURT: I had a case on
2 privilege logs and it's not here. I'm going to
3 have to take two minutes off the bench. I had
4 an idea it was on my desk. At least it was on
5 my desk last night. And check on what type of
6 information is generally expected on privilege
7 logs.
8           I will tell you the case I was
9 able to find in this jurisdiction dealt with
10 privilege log that was between -- by a third
11 party after being subpoenaed by a party to the
12 lawsuit. And then there was a hearing then as a
13 result of that to determine whether the
14 privilege log was to the third party, and what
15 type of information the court expects to see.
16           Now, I am pretty certain that I
17 have rarely seen anybody provide the type of
18 information this case is suggesting, ever, on a
19 privilege log. I certainly haven't seen it on a
20 patent privilege log. In fact, I'm lucky if I
21 get any information whatsoever.
22           So Robert, could you check on my
23 desk. There was supposed to be a folder that
24 had privilege log on it. If you could find it

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

48

1 for me, please. There was a case in it.
2           Yes.
3           MS. QUILLIN: Just to address
4 Mr. Mojdehi, he said that we haven't supplied
5 what our methodology was or how we decided what
6 went on the privilege log. We described our
7 methodology in Docket 57, and what we looked at
8 was when no action from Mahalo USA, when there
9 was no action for Mahalo USA to take, the
10 defendant lawyers were not acting for Mahalo
11 USA.
12           If -- this is a direct quote from
13 our Docket 57, page 3, if advice related to
14 something Mahalo USA was going to do or consider
15 doing, information was produced.
16           THE COURT: This is in the letter
17 itself or in an exhibit?
18           MS. QUILLIN: Yes, Docket 57, page
19 3.
20           And so what that entailed was we
21 produced, again, every document that was
22 strictly Mahalo USA, whether it was relevant or
23 not. We just didn't want to keep having that
24 argument for jurisdictional purposes.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

49

1 We also produced under this
2 methodology anything that also had -- that it
3 was given to Mahalo Canada as well as Mahalo
4 USA.
5 We also produced anything that
6 jointly showed it was distributed to the parent,
7 Canadian parent as well as Mahalo USA. The only
8 documents on that privilege log are documents
9 strictly to or from parent.
10 And again, with respect to the
11 relevance issue for jurisdiction, not only do we
12 have the privilege argument, we as the lawyers
13 can't weigh that, but for relevance, what could
14 possibly be relevant in Canadian lawyers'
15 communication with a Canadian parent that would
16 give jurisdiction in Delaware? That's the
17 universe of documents that we're talking about.
18 The other question was documents
19 that were created after the bankruptcy. Nothing
20 is relevant after the bankruptcy petition date.
21 THE COURT: Why in the argument
22 that plaintiff makes in their complaint, and
23 there are many in the complaint, they state that
24 this conspiracy and the activities and the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697 FAX (302) 658-8418

50

1 injury and the claims continued on after the
2 filing of the bankruptcy.
3 MS. QUILLIN: Plaintiff's
4 authority to pursue this case is listed as a
5 designated avoidance action. The definition of
6 the designated avoidance action is in Docket
7 96-1, page A027.
8 What that says, a designated
9 avoidance action is a claim arising from any act
10 or omission occurring before the bankruptcy
11 petition date other than those related to the
12 filing and prosecution of the bankruptcy. The
13 plaintiff could not pursue anything related to
14 what happened in the bankruptcy. He's limited.
15 There is an absolute cutoff date. That's why in
16 his initial request, discovery request, he put
17 the May 21, 2009 date in there, that's the
18 bankruptcy petition date.
19 He has no authority, and of course
20 his authority is gone anyway, but he certainly
21 has no authority even under what he cites in the
22 petition to pursue anything after May 21, 2009.
23 And I'm happy to answer any other questions, but
24 basically that's our position.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697 FAX (302) 658-8418

51

1 MR. MOJDEHI: Your Honor, just on
2 that last point, it makes no difference.
3 THE COURT: Why, if we're talking
4 about -- we're talking about the trustee; right?
5 MR. MOJDEHI: Yes, Your Honor.
6 THE COURT: And the trustee had
7 jurisdiction that was granted by the court, the
8 bankruptcy court.
9 MR. MOJDEHI: Yes, Your Honor.
10 But let's assume hypothetically after the
11 bankruptcy Mr. MacKenzie sent an E-mail that
12 says, you know, I'm subject to jurisdiction in
13 Delaware. If one buys their line of
14 reasoning --
15 THE COURT: Well, then, you could
16 possibly, possibly limit it to such things, but
17 not everything.
18 MR. MOJDEHI: What we have
19 identified is D & O, something that is
20 absolutely germane in this case, D & 0 matters.
21 What could it pertain to? Frankly they don't
22 identify who they were representing. We have
23 Canadian lawyers billing to D & O matters.
24 Obviously they weren't representing the parent

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697 FAX (302) 658-8418

52

1 because the parent wasn't sued.
2 THE COURT: Well, were they still
3 doing work with the parent?
4 MR. MOJDEHI: Yes. But here --
5 THE COURT: Wait a minute. If
6 they're doing work for the parent that's
7 unrelated to anything in this case, then it
8 doesn't matter. I mean, you're saying to me
9 that -- are you saying to me that when the
10 bankruptcy was filed, then the representation by
11 the counsel that's been sued in this case should
12 have just ended?
13 MR. MOJDEHI: That's not what I'm
14 saying. What I am saying is that evidence that
15 exist after the bankruptcy is tested by
16 relevance, is it relevant for jurisdictional
17 purposes in this context. It isn't tested by
18 what time was that document created. Because I
19 can have a document that is created two years
20 later that again the best example is an
21 admission, an admission comes about two years
22 later, and of course it is relevant, and it doesn't
23 matter that it was after the bankruptcy.
24 THE COURT: What about the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697 FAX (302) 658-8418

53

1  jurisdiction that the trustee actually had,
2  doesn't that have an effect?
3          MR. MOJDEHI:  No, the trustee --
4          THE COURT:  So you're saying the
5  trustee can continue to sue on beyond the
6  jurisdiction he was given?
7          MR. MOJDEHI:  No, that's not what
8  I'm saying.  I'm saying that evidence that comes
9  into being after the bankruptcy that's relevant
10 to the claims the trustee has.
11         THE COURT:  But it has to be
12 relevant to the claims at the time of before the
13 bankruptcy.
14         MR. MOJDEHI:  Exactly.
15         THE COURT:  If there are comments
16 made about whatever, it has to be relevant to
17 before.  You can make comments and make
18 admissions out the wazoo, but if it's not
19 relevant to what activities occurred before the
20 bankruptcy, before the filing of the bankruptcy.
21         MR. MOJDEHI:  Yes, I totally agree
22 with you.  And the answer is simple, in the
23 bankruptcy there was a report filed about
24 claims, claims against officers and directors.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

54

1  This is during the bankruptcy.  This is about
2  claims that exist pre-bankruptcy.  And then we
3  have, surprise, surprise, at about the same time
4  --
5          THE COURT:  I mean, this is --
6  what report was filed by whom?
7          MR. MOJDEHI:  It's referenced in
8  our papers, Your Honor.  It was filed by the
9  creditors committee.  There is a motion to put
10 it under seal, and shortly after we have time
11 entries, D & O matters, so the only things that
12 those time entries could logically relate to is
13 D & O of the U.S., because that was the only
14 company that was in bankruptcy where claims had
15 been asserted, that's all.
16         THE COURT:  Why couldn't they have
17 been D & O matters dealing with the parent?
18         MR. MOJDEHI:  The timing is the --
19 I'm not aware of any D & O claims dealing with
20 the parent.
21         THE COURT:  Why does it have to be
22 D & O claims?  You're saying D & O matters.  You
23 haven't said D & O claims, you said D & O
24 matters.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

55

1          MR. MOJDEHI:  It's D & O --
2          THE COURT:  You know, there could
3  be a ton of D & O matters.  Was the corporation
4  continuing on?
5          MR. MOJDEHI:  Yes, it was, at that
6  time.
7          THE COURT:  Yes.
8          MR. MOJDEHI:  And then it became a
9  liquidating trustee.
10         THE COURT:  No.  What is happening
11 with the parent corporation at that time?
12         MR. MOJDEHI:  The parent
13 corporation was in its own bankruptcy.  But what
14 you have in the U.S. a report being filed in the
15 bankruptcy court.
16         THE COURT:  And you didn't get a
17 copy of the report?
18         MR. MOJDEHI:  What's that.
19         THE COURT:  You didn't get a copy
20 of the report, or did you receive a copy of the
21 report?
22         MR. MOJDEHI:  We do.  We
23 represented the committee in the bankruptcy.
24 And what we have is immediately thereafter time

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

56

1  entries pertaining to D & O.
2          THE COURT:  So are you saying that
3  there is no attorney/client privilege at that
4  time that the parent to those two gentlemen, if
5  these two gentlemen were somehow involved in it
6  or if this law firm was somehow involved in it?
7          MR. MOJDEHI:  What I'm saying is
8  the only claim that the trustee of Mahalo USA
9  could assert is claims belonging to the U.S.
10 entity.  And he is the holder of the privilege,
11 the trustee is, of the U.S. entity.
12         THE COURT:  Yes, I understand
13 that.
14         MR. MOJDEHI:  And these time
15 entries appear immediately after that report was
16 filed.
17         THE COURT:  But you're saying the
18 billing goes to Mahalo USA?
19         MR. MOJDEHI:  This billing is done
20 in the normal manner, they send it to Canada,
21 but that's what they always do.  There is one
22 other comment --
23         THE COURT:  But you don't know
24 which entity was billed?  You don't know how the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

57

1  entries -- what you don't know is whether the
2  entries applied to the parents or whether the
3  entries applied to Mahalo USA.
4       MR. MOJDEHI:  What I do know is
5  the timing is -- they can tell us, counsel can
6  tell us.
7       THE COURT:  I think she already
8  has.  I think what has been said by counsel is
9  that everything that they have held had to do
10 with the parent.
11      MR. MOJDEHI:  Not with respect to
12 those documents, Your Honor.
13      THE COURT:  I misunderstood, then,
14 but I thought I did.
15      MR. MOJDEHI:  Counsel can correct
16 me.
17      MS. QUILLIN:  If it's on the
18 privilege log, then it's parent.
19      MR. MOJDEHI:  No, it's not on the
20 privilege log, it's on the bills that had been
21 redacted, Your Honor, these are bills that have
22 been redacted.
23      THE COURT:  These were documents
24 that were produced.

59

1  wearing multiple hats, either one must be a mind
2  reader or have capabilities certainly beyond
3  what I have to be able to say all right, what
4  hat were these guys wearing and when.  Which is
5  what they --
6       THE COURT:  Excuse me, what hat?
7       MR. MOJDEHI:  What hat were they
8  wearing and when, because you have lawyers
9  wearing multiple hats.  You have officers and
10 directors wearing multiple hats.
11      THE COURT:  Are you saying that
12 this was done basically by outside counsel or by
13 counsel that's been sued?
14      MR. MOJDEHI:  They can tell us the
15 answer to that question.
16      THE COURT:  In the methodology
17 when it was described, what did you understand
18 it to be?
19      MR. MOJDEHI:  What I understand it
20 to be was that counsel looked at it and made
21 that determination.
22      THE COURT:  Which counsel?
23      MR. MOJDEHI:  The trial counsel.
24 But I don't know the answer to that, Your Honor.

58

1       MR. MOJDEHI:  There is a simple
2  way, Your Honor, you can look at it in camera so
3  we don't --
4       THE COURT:  I don't particularly
5  care to deal with it.
6       MR. MOJDEHI:  It's looking at
7  billing entries.
8       THE COURT:  Billing entries and
9  what, I'm going to look at it in camera and see
10 what, stuff with blank pages on it?
11      MR. MOJDEHI:  I don't know whether
12 they brought it, but it's not a lot of entries.
13      THE COURT:  Let me ask you this.
14 When they were redacted, was that redaction then
15 put on the privilege log?
16      MR. MOJDEHI:  No.
17      THE COURT:  So you just see a
18 redaction and you inform privilege?
19      MR. MOJDEHI:  Yes.  And counsel
20 said something about their methodology that I
21 just want to note they said well, we looked at
22 it and then we decided that this was for Canada.
23 What I'm suggesting to Your Honor, and as we
24 have argued repeatedly, where you have people

60

1       THE COURT:  So if counsel made
2  that determination, trial counsel made that
3  determination, they would not be wearing
4  multiple hats; right?
5       MR. MOJDEHI:  No, but they would
6  be making a judgment about individuals wearing
7  multiple hats.  And even if those clients were
8  making those judgements, I would suggest that
9  with the benefit of, you know, sit here six
10 years, however long it's been later and say, you
11 know, I was doing that when I was wearing this
12 hat, or you know, I was doing it when I was
13 doing that hat, and I go back to Mr. McKenzie's
14 own words, and I'll read it to you, Your Honor,
15 because I think this is -- this is an E-mail
16 that is attached to our complaint.
17      THE COURT:  Which one?
18      MR. MOJDEHI:  It is an E-mail from
19 Mr. Grant to Peter Mosely.
20      THE COURT:  Which complaint, the
21 amended or original?
22      MR. MOJDEHI:  I'm sorry, the first
23 amended complaint.
24      THE COURT:  Thank you.  Exhibit

61

1  what?
2          MR. MOJDEHI:  This is exhibit --
3          THE COURT:  I don't think they
4  were necessarily numbered sequentially either.
5  There were different Bates numbers at the
6  bottom.
7          MR. MOJDEHI:  Exhibit I.
8          THE COURT:  I.
9          MR. MOJDEHI:  Yes.
10         THE COURT:  I have got Exhibit I
11 in front of me.
12         MR. MOJDEHI:  This is the one
13 that's from Mr. Grant to Peter Mosely.
14         THE COURT:  Wait a minute.  I
15 thought I had Exhibit I.  I have got Exhibit I.
16 Okay.
17         MR. MOJDEHI:  It is page 85 of 96
18 at the top.
19         THE COURT:  Well, I don't have
20 that.  I don't have that.  So it's Peter Mosely,
21 did you say?
22         MR. MOJDEHI:  Yes, Your Honor.
23         THE COURT:  To?
24         MR. MOJDEHI:  It's Grant MacKenzie

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

62

1  to Peter Mosely.
2          THE COURT:  From Grant MacKenzie
3  to Peter Mosely?
4          MR. MOJDEHI:  Yes, Your Honor.
5          THE COURT:  Okay.  So they're
6  relying on Peter, further to our previous
7  conversations please find attached copies of the
8  minutes which the Canadian parent company passed
9  had this direct correlation to the U.S.
10 subsidiary which operated on the direction of
11 the board of directors of the parent company.
12         MR. MOJDEHI:  Yes, Your Honor.
13 The key words which operated under the direction
14 of the board of directors of the parent company.
15 I will represent to you that the U.S. never had
16 a single board meeting.
17         THE COURT:  I know they didn't,
18 everything was done by resolution according to
19 the defense.
20         MR. MOJDEHI:  And everything was
21 done at the direction of the board of the
22 parent, according to Mr. MacKenzie.  So --
23         THE COURT:  Not everything.
24 Probably the minutes that were for that

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

63

1  particular time, it doesn't say everything.
2          MR. MOJDEHI:  The corporate
3  governance issues that we're interested in.
4          My point again comes back to, you
5  know, the difficulty and really, you know, we
6  don't have any declarations that the defense has
7  put forward saying yes, I grant Mr. MacKenzie
8  went through all these documents and all these
9  were done while I was wearing this hat.  We have
10 what we have is just this argument by lawyers.
11 And there is no evidence.  All the evidence goes
12 in our favor in terms of how this worked.
13         There is no engagement letters,
14 nothing that limits the scope, so we have
15 absolutely no evidence for someone under oath to
16 say this is the hat I wore.
17         THE COURT:  Okay.  Thank you.
18         MS. QUILLIN:  I really don't have
19 anything to respond other than what I've already
20 told you.
21         THE COURT:  I think the argument
22 that is being made is this, how do you know what
23 was the parent materials versus materials that
24 involved Mahalo USA.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

64

1          MS. QUILLIN:  And again, I direct
2  the Court back to the methodology we used which
3  was when there wasn't an action required of
4  Mahalo USA, then we weren't acting for Mahalo
5  USA.  If there was advice that related to
6  something --
7          THE COURT:  In other words, you
8  would view the materials themselves.  You
9  checked to see if there was anything that
10 involved Mahalo USA in those materials.  If it
11 didn't involve Mahalo USA, it involved the
12 parent, there was nothing else to suggest
13 otherwise.
14         MS. QUILLIN:  Exactly.  And the
15 E-mail in my mind confirms that.  Mr. MacKenzie
16 is saying here is the resolution that referenced
17 Mahalo USA.
18         THE COURT:  And my understanding
19 is you produced all resolutions.
20         MS. QUILLIN:  And that's produced,
21 yes.
22         MR. MOJDEHI:  So I'm trying to see
23 whether we have an argument -- other than the D
24 & O matters, what I'm not getting from counsel

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

65

1 is this. Have they withheld any documents on
2 the asserted grounds that is solely the parent
3 where those documents refer to, relate to,
4 impact Mahalo U.S.? That's -- I'm not getting
5 that.
6          THE COURT: I think they have
7 clearly answered the question. Impact, relate
8 to and impact, I don't know.
9          MS. QUILLIN: Under plaintiff's
10 definition of relate to and impact, he wants the
11 entire parent, and we have --
12          THE COURT: I know he does.
13          MS. QUILLIN: We have a privilege.
14 If I could waive it, we would save a lot of
15 trouble. But my clients cannot waive that
16 privilege.
17          THE COURT: Your clients aren't
18 waiving the privilege.
19          MS. QUILLIN: Because, yeah,
20 because exactly, because a successor parent is
21 the only one that has the privilege to waive.
22          THE COURT: Do you know whether or
23 not -- if the documents mentioned Mahalo USA,
24 were they produced?

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

66

1          MS. QUILLIN: I hesitate to tell
2 the Court that yes, every single one was
3 produced. There may be documents that mention
4 Mahalo USA, you'll notice on the privilege log,
5 the E docks --
6          THE COURT: Wait a minute. I got
7 out of the privilege log.
8          MS. QUILLIN: I'm sorry, it's the
9 very first page of the privilege log.
10          THE COURT: I have to go back to
11 the privilege log. 54-5.
12          MS. QUILLIN: Right.
13          THE COURT: 224 pages worth of
14 privilege log. I'm on the privilege log.
15          MS. QUILLIN: The very first page,
16 plaintiff had complained that we didn't have a
17 to or from on a lot of those documents and
18 you'll see the ones that didn't are designated
19 as an E doc in the column. A lot of those
20 documents are drafts. We couldn't find that
21 they were ever given to anybody one way or the
22 other. Probably not only attorney/client
23 privilege, but attorney work product would apply
24 to those.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

67

1 Those documents I can't tell you
2 for sure if none of them ever referenced Mahalo
3 USA. Any other documents that Mahalo was in,
4 and I hesitate because there might be, you know
5 that slipped through. The only ones to my
6 recollection, and I haven't looked at all of
7 them obviously, is there may be some in the E
8 docs that we don't know who they went to, where
9 they went to and again it looks like drafts.
10          THE COURT: So your argument was
11 it's under -- is it section -- is it Rule 26
12 that you're making your argument under for the
13 drafts?
14          MS. QUILLIN: Yes.
15          THE COURT: Okay. I can't
16 remember the specific section that deals with
17 drafts, for example.
18          MS. QUILLIN: But I will represent
19 to the Court to the best of our ability, who
20 went through these documents, my office did at
21 the time Craig Fitzgerald also represented these
22 two individuals, and their director and officer
23 capacities because they were also sued in that
24 capacity at that time. His office went through,

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

68

1 we divided up the work, that was our
2 methodology. That's what we were looking for.
3 It was not our clients that were willy nilly
4 selected, let's produce this document and let's
5 not produce that one.
6          THE COURT: Did you provide what
7 I'll call a crib sheet for who each person was?
8          MS. QUILLIN: No, not to the Court
9 we did not.
10          THE COURT: But the plaintiff's
11 counsel. In other words, who Nancy Smith,
12 Esquire was. Obviously she was an attorney, but
13 I don't know, was she with a particular law
14 firm, whatever.
15          MS. QUILLIN: Right.
16          THE COURT: Or who Milt Porter
17 was. It's listed as Mahalo Energy, but who was
18 he at Mahalo Energy? I do think that type of
19 information should be provided, absolutely. One
20 way of doing it is you sit there and you do it
21 at every block.
22          The other way of doing it is to
23 sit there and have a list of individuals as to
24 who they are, put it I would hope in probably

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**69**

1 alphabetical order would probably be easier,
2 would it not?
3        MR. MOJDEHI:  Yes, Your Honor, it
4 would.
5        THE COURT:  Because I think
6 identification of who they are is something that
7 needs to be included.
8        MS. QUILLIN:  We can do that.
9        MR. MOJDEHI:  And Your Honor, the
10 recipients.
11        THE COURT:  Well, if they know the
12 recipients, yes, the recipients would be
13 included, too.  It would be anybody who is
14 listed in the from or to category, to the extent
15 that they know who they are, that would be
16 included, that would include everybody.  That's
17 going to be substantial, potentially, or there
18 are a lot of repeats.  Because I freely admit to
19 you, I did not go through page by page on this.
20        I remember now seeing it and then
21 deciding I wasn't going to become legally blind
22 from reading it.
23        On the E docs, I think we need to
24 -- there is no from or to on any of them.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**70**

1        MS. QUILLIN:  No, ma'am.  They
2 weren't E-mails, they were stored as an
3 electronic document.  And we don't have --
4        THE COURT:  Do you know which
5 computer they came from?
6        MS. QUILLIN:  It's the Burnett
7 Duckworth Palmer, it's the law firm computer.
8 The only documents we have are the law firm's
9 documents.
10        THE COURT:  All right.  Do you
11 know which attorney's computer they came from?
12        MS. QUILLIN:  I would have to
13 check.  I don't know if it was a central -- we
14 had tech people who are a lot techier than I am.
15        THE COURT:  I think if you can
16 find out as to which counsel's computer it came
17 from.  It may have been just on a general server
18 and that's going to be problematic, but the E
19 docs I think would be helpful to find out.  And
20 I think you need to indicate again on a sheet
21 that whenever E doc is referenced, that means
22 there was no to, from, date sent, whatever else
23 was not in there for every one of them based
24 upon review.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**71**

1        MR. MOJDEHI:  Your Honor, one
2 other point that I neglected to mention, and in
3 our complaint, we allege spoliation.
4        THE COURT:  We'll get to
5 spoliation.  I mean, I know it's out there.
6        MR. MOJDEHI:  But I want to just,
7 because it goes back to the jurisdictional
8 discovery and breath and context.  So here what
9 we have is lawyers who were aware of these
10 claims were coming, and they knew it because it
11 was filed in the bankruptcy, and then we have
12 again, I can't swear a hundred percent --
13        THE COURT:  I really would like to
14 get done with the privilege log, take a break,
15 and then have the spoliation arguments.  If you
16 don't mind, that will -- when we go back to look
17 at this record, should anybody file objections,
18 I want Judge Andrews to have a record that has
19 some organization to it, instead of saying Judge
20 Thynge must have been hitting the baseballs
21 right and left.
22        It is required for you to have an
23 author if there is an author available.  Who
24 that person is, such as a position with the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**72**

1 company whether that author is an agent or an
2 agent of an attorney.  The same thing would also
3 apply to recipient, the recipient's position in
4 the company, or whoever it was, whoever it was
5 going to.  And I think also the position when
6 we're talking about the author's position or the
7 recipients, who that person is in the company,
8 maybe an understanding of what their
9 responsibilities were, just a short listing of
10 their duties.
11        Again, you can do that with each
12 person, do it one time, get it over with.
13 Unless of course their duties changed and their
14 position changed later on.
15        I don't have a problem with the
16 privilege type being listed, I think that's
17 sufficient.
18        The concern -- and I understand
19 the concern that the parties have when they
20 start listed about document description, and one
21 of the concerns I've heard repeatedly is we're
22 hesitant to put too much in because now we may
23 have waived the privilege by doing that.
24        From what I'm able to tell, and

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

73

1  like I said, I haven't read -- I mean, were
2  there any things specific that you found
3  problematic in that category, document
4  description?
5         MR. MOJDEHI:  We did, Your Honor,
6  and we have a letter detailing it.  Let me just
7  pull that.
8         THE COURT:  I know, you had a lot
9  of letter detailing stuff.  And then after a
10  while it was difficult to jump back and forth as
11  to what those were.  Both sides did.
12         You know what, we did an outline,
13  so maybe I can find it in the outline.
14         There was one question that I did
15  have.  The documents that dealt with -- you're
16  saying that these are the parent documents.  Did
17  any of these documents reference, relate to the
18  daily operation of Mahalo USA?
19         MS. QUILLIN:  I don't believe so.
20  I think again, like the resolution, anything
21  that required an action from Mahalo USA was
22  produced.
23         THE COURT:  I can't tell you what
24  document it was, what letter it was in, but I

74

1  can tell you that I made an outline concerning
2  the letters.
3         MS. QUILLIN:  If I may, Your
4  Honor.  I know that plaintiff at Doc 54 at page
5  5 listed some of the entries from the privilege
6  log.
7         THE COURT:  54, page 5.
8         MS. QUILLIN:  54, page 5, and some
9  of those are references that we have already
10  talked about.  But those are the ones that I saw
11  that they specifically listed numbers on.  I
12  didn't mean to usurp Mr. Mojdehi, but I saw
13  that.
14         MR. MOJDEHI:  Usurp away.  Counsel
15  is correct, Your Honor.
16         THE COURT:  I remember one of them
17  was Apollo Energy LTD, which was a parent;
18  right?
19         MR. MOJDEHI:  Yes.
20         THE COURT:  What you wanted was,
21  my understanding was, your concern was you
22  needed clarification from defendant on whether
23  these communications had anything to do with
24  Mahalo USA.

75

1         MR. MOJDEHI:  On that one, yes.
2         THE COURT:  My understand is I'm
3  not certain what else can be done since it's
4  been represented here and it's also been
5  represented in the letters, the response, that
6  the advice relates only to the Canadian parent's
7  IPO, and the dockets were related to the
8  Canadian parent.  Documents were related to the
9  Canadian parent.
10         MR. MOJDEHI:  Our only point, Your
11  Honor, was the timing just didn't make sense to
12  us.
13         THE COURT:  What was the concern
14  about the timing?
15         MR. MOJDEHI:  That these are years
16  after the IPO, we just asked this they confirm
17  whether these communications had anything to do
18  with Mahalo U.S.
19         THE COURT:  Well, I'm going to ask
20  you to do it, just confirm it and make sure.
21         MS. QUILLIN:  Okay.
22         THE COURT:  But I also am not
23  certain whether it's relevant to the
24  jurisdictional discovery, but they can at least

76

1  confirm that.
2         Now, there were entries referring
3  to the CT Corporation, which was supposedly --
4  at least I understand CT Corporation was the
5  agent in the United States for Mahalo Energy
6  USA.  And what you're looking for are the
7  documents relating to its incorporation in
8  Delaware.
9         MR. MOJDEHI:  Or really any CT
10  related documents.
11         THE COURT:  Well, with CT they're
12  a registered agent for service and process, it
13  wouldn't have to be because -- well, yeah,
14  Mahalo would have an agent, probably, but what
15  was CT Corporation?
16         MS. QUILLIN:  CT Corporation for
17  Mahalo USA actually filed the certificate of
18  incorporation, the papers.
19         THE COURT:  Have you got any
20  documents, like the incorporation documents and
21  records that would be --
22         MS. QUILLIN:  We supplied all of
23  Mahalo USA incorporation documents, everything
24  for Mahalo USA that was filed with Delaware.

77

1   THE COURT:  All right.  All the
2   public documents, did you get the documents from
3   CT Corporation, whether they had anything on
4   record, I don't know.
5   MS. QUILLIN:  We should have
6   supplied everything with respect to Mahalo USA.
7   THE COURT:  Why don't you check to
8   confirm that you got everything from CT
9   Corporation concerning Mahalo USA.
10  MR. SEMPLE:  Your Honor, can I
11  clarify what you're asking?
12  THE COURT:  It was basically
13  documents relating to their incorporation, those
14  types of documents.
15  MR. SEMPLE:  That are in the files
16  of the law firm with --
17  THE COURT:  I see what you're
18  saying.  How do you get it from CT Corporation,
19  they're not parties to the litigation, you have
20  to subpoena them.
21  MR. MOJDEHI:  The law firm has
22  them.  You know what Mr. MacKenzie did was he
23  incorporated Mahalo U.S., he used CT
24  Corporation, and they continued to use CT

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

78

1   Corporation.  And on their privilege log which
2   is the bullet point number --
3   THE COURT:  I have to keep going
4   back and forth with the privilege log.
5   MR. MOJDEHI:  I'm sorry, in our
6   letter --
7   THE COURT:  Wait a minute.  Let me
8   go back to the letter now.  Page five.
9   MR. SEMPLE:  So the record is
10  clear, what letter?  There are several letters.
11  MR. MOJDEHI:  I-54, page five of the
12  letter, the I-54 has the letter regarding the
13  privilege log and attached to it as a number of
14  attachments, but attached to Exhibit 5 is the
15  privilege log.
16  Yes.  I got CT Corporation.
17  MR. MOJDEHI:  So they were the
18  agent according to Mr. MacKenzie, and there
19  appear to be certain documents that have been
20  withheld.
21  THE COURT:  That was document
22  number 53, 128 and 131; right?
23  MR. MOJDEHI:  Correct.
24  THE COURT:  Could you read off

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

79

1   what's described in description?  I gave you
2   back your -- do you want a magnifying glass?
3   MR. MOJDEHI:  Yes, Your Honor.
4   THE COURT:  I think eyes that are
5   age twenty-five can't read this, let alone
6   almost sixty-five.  It was 53, what does that
7   say?
8   MR. MOJDEHI:  Yes, Your Honor, it
9   says letter from counsel providing legal advice
10  RE:  Correspondence from CT Corporation.
11  THE COURT:  And what about 128?
12  MR. MOJDEHI:  That's 53.
13  THE COURT:  No, what about 128.
14  MR. MOJDEHI:  128.
15  Similar, letter from counsel
16  providing legal advice RE:  Correspondence
17  received from CT Corporation.
18  THE COURT:  All right.  And what
19  about 131?
20  MR. MOJDEHI:  Same thing, Your
21  Honor.
22  THE COURT:  Okay.
23  MR. MOJDEHI:  Letter from counsel
24  providing legal advice to correspondence

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

80

1   received from CT Corporation.
2   THE COURT:  Do we know whether CT
3   Corporation was used for anything else besides
4   Mahalo USA?
5   MS. QUILLIN:  I don't know.
6   THE COURT:  So it would seem that
7   it would be -- if we're talking about legal
8   advice, wouldn't it be related to Mahalo USA
9   rather than the parent?
10  MS. QUILLIN:  All I know about
11  those documents is that it was the RE line was
12  for the parent, Mahalo Energy Limited was to
13  Willie De Brodowski who was the CEO I believe at
14  the time of the parent.  It doesn't state that
15  it's for Mahalo USA.
16  THE COURT:  Was Mahalo USA
17  referenced in the letter?  I think you need to
18  go back and double-check on these two items.  To
19  the extent there is reference to Mahalo USA, I
20  think they need to be produced, however, if
21  there is reference that is solely to Mahalo, the
22  parent, the Court will consider redaction if
23  there is some concerns about the parent
24  privilege being waived or something with the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

81

1  parent privilege, but I think matters that
2  relate to Mahalo USA concerning CT Corporation
3  or telling CT Corporation what to do for Mahalo
4  USA is something that I think needs to be
5  produced.
6        MS. QUILLIN:  Okay.
7        MR. MOJDEHI:  Your Honor, that
8  just again, underscores our concern.  So what we
9  have heard is that they saw a label, Mahalo --
10       THE COURT:  I'm not going to make
11  them go back through everything.  I think we
12  have some things, we will take it step by step.
13  Okay.
14       There are these press releases.
15  Why were the press -- I think it's one item,
16  isn't it, it's just 838 where it deals with
17  advice regarding draft press release.  Were the
18  press releases produced?
19       MS. QUILLIN:  Yes, the final press
20  releases were produced.
21       THE COURT:  The final ones?
22       MS. QUILLIN:  Yes.
23       THE COURT:  This was a draft press
24  release.

82

1        MS. QUILLIN:  I believe that these
2  are drafts.
3        THE COURT:  And do these press
4  releases solely reference -- not the question.
5  Do they have a reference to Mahalo USA?
6        MS. QUILLIN:  There is a
7  possibility in the drafts that they do.  Press
8  releases were for the Canadian parent in
9  response to Canadian parent was traded on the
10  Toronto stock exchange.  Press releases were
11  made due to disclosure of information.
12       So that was all advice to parent
13  basically of what needs to be in a press release
14  to comply with Canadian law to be sure we don't
15  get in trouble about the Toronto stock exchange.
16  To the extent the final press release were
17  public information, the ones that the law firm
18  had, those have been produced.  To the extent
19  there would have been drafts, our analysis of it
20  was that's information strictly to the parent.
21       MR. MOJDEHI:  And we, again,
22  invite the Court to look at the press releases
23  because it --
24       THE COURT:  It's not the press

83

1  releases, it's the draft press release that is
2  provided -- it's a letter that goes to -- you
3  know what, I'll look at this press release, the
4  838 one and review, and if you have it available
5  and can print it today, I'll review it today.
6        MS. QUILLIN:  I'm sorry, what was
7  the number again?
8        THE COURT:  838.
9        MS. QUILLIN:  838.
10       MR. MOJDEHI:  But what the press
11  release tells us, Your Honor, is remarkably
12  consistent with what we have been saying over
13  and over again.  Which is that the parent didn't
14  make any distinction between the U.S. --
15       THE COURT:  No, I don't agree with
16  you on that.
17       MR. MOJDEHI:  In the press
18  releases.
19       THE COURT:  I don't know.  In the
20  draft of a press release, if what has been said
21  that legal advice was being given to the parent
22  as to what the draft needed to contain, I don't
23  think you get that.  This 838 I understand is a
24  press release that refers to advice regarding

84

1  draft press release.
2        MR. MOJDEHI:  My only point was
3  that the press release that has been at issue,
4  we have looked at a number of them, the final
5  ones, the published ones, if you analyze those,
6  you'll see that there is no distinction made
7  between the parent or the subsidiary.  They
8  filed consolidated financial's, and --
9        THE COURT:  Which is not unusual
10  for corporations to do.
11       MR. MOJDEHI:  In fact it isn't,
12  but in this context it's significant.
13       THE COURT:  Or more importantly
14  I'm not even certain how this relates to
15  jurisdictional discovery.  I'm having a problem
16  with that to begin with on this particular
17  thing, especially when you got the press
18  releases at the end.  There is nothing to
19  suggest that the press releases that you're
20  talking about had anything to do with
21  jurisdictional discovery, or the need for
22  jurisdictional discovery.
23       This is one where I sat here and
24  wrote a note when I was going through it, how is

85

1  this relevant.  So I got a problem there.  But
2  if you have 838, I will look over 838 just to
3  get a flavor as to what the document is, and
4  hopefully it's not going to be that long.
5        MS. QUILLIN:  I don't have it with
6  me, but I can E-mail my paralegal and have her
7  E-mail it to me.
8        THE COURT:  Do you want to have
9  her E-mail it to me?
10       MS. QUILLIN:  That would be great.
11       THE COURT:  We're going to take a
12  short break.
13       (A brief recess was taken.)
14       THE COURT:  Please be seated.  All
15  right.  We were now up to the agreement with
16  Paragren, who was a separate entity at one time
17  and then became I think absorbed by the parent;
18  correct, there was a merger, was there not.
19       MS. QUILLIN:  That's correct, Your
20  Honor.  And again, our position on the Paragren
21  documents, first of all, it's a transaction
22  between two Canadian companies, a Canadian
23  parent, Paragren is also a Canadian.
24       THE COURT:  There is an argument,

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

86

1  though, that the complaint alleges from the
2  outset that Paragren defendants and others
3  determined to shift its debt which was about 14
4  million to Mahalo USA for which Mahalo USA
5  received the benefit.  And they claimed this
6  happened when Mahalo USA existing credit
7  facility was the Union Bank of California was
8  amended on August 16th, 2006 to pay off
9  Paragren's $14 million debt.
10       MS. QUILLIN:  We would also argue
11  it doesn't go to jurisdiction in Delaware.  We
12  have provided all of the debt documents with
13  respect to Mahalo USA.  We have provided -- so
14  that would have been the union, I believe debt
15  documents we provided, all of the Ableco credit
16  facility documents, my recollection all of the
17  Ableco credit facility documents which is what
18  plaintiff says is the real thing that took
19  Mahalo USA down.
20       Again, two Canadian corporations,
21  however it affected or didn't affect Mahalo USA
22  down the line, it's not relevant.  Plus the
23  parent companies succeeded to any
24  attorney/client privilege that Paragren would

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

87

1  have had when those companies merged.
2        THE COURT:  What about the fact
3  that under general jurisdiction, one of the
4  considerations is having activity that occurs
5  outside the state that causes harm within?
6        MS. QUILLIN:  I understood
7  plaintiff today that he is seeking specific
8  jurisdiction with specific to just these two
9  lawyers, not even the entire law firm.
10       THE COURT:  All right.  What's the
11  argument that the plaintiff has?
12       MR. MOJDEHI:  One, Paragren was
13  merged into Mahalo Canada, so we're talking
14  about Mahalo Canada.  And that transaction
15  impacted Mahalo U.S.  As I indicated, Your
16  Honor, this case is simply about breaches of
17  fiduciary duty where lawyers are favoring one
18  client at the expense of others.  And this is a
19  very similar to the Sample v. Morgan case, the
20  famous Sample v. Morgan case out of the chancery
21  court.
22       THE COURT:  On that case, let me
23  just check my notes.  I had some concerns about
24  that.  Was there any certificate or any work for

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

88

1  any activities or any document filed in here in
2  Delaware related to the Paragren, related to the
3  Paragren merger.
4        MR. MOJDEHI:  There may have --
5  the answer is, Your Honor, I don't know.  But as
6  I indicated in my opening remarks, that due
7  process prong of jurisdiction analysis is
8  implicated, even if you have statutory
9  jurisdiction, and that's why Sample is
10  significant.  In that case, Your Honor, the
11  court said under Delaware law, quote when a
12  Delaware resident, i.e., a Delaware corporation
13  is injured by breach of fiduciary duty, it is
14  injured in the chosen place of legal residence,
15  after all, it is precisely for purposes of
16  internal affairs that corporations which are not
17  physical beings chose a legal residence.
18       And in Sample, the plaintiffs --
19  as in Sample, we acknowledge that Mahalo U.S.
20  was injured in Delaware by the infidelity of the
21  defendants who affirmatively inserted themselves
22  into the internal affairs of a Delaware
23  corporation in order to advance the interest of
24  parties other than their client.  And this

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

89

1   language from Sample, in that case, the lawyers
2   there were making a similar argument, and they
3   were saying, gee, we were not involved.
4           And the court there said, quote,
5   for sophisticated counsel to argue that they did
6   not realize that acting as a de facto outside
7   general counsel to a Delaware corporation and
8   regularly providing advice about Delaware law
9   about matters important to the corporation and
10  its stockholders might expose it to Delaware
11  jurisdiction fails the straight face test.
12          This is exactly what the
13  defendants are saying.  In their declarations,
14  again, they have filed the declarations saying
15  we never practiced Delaware law.  And they point
16  I will say misleadingly to lawyers in the US,
17  but when the question is asked, who advised the
18  board, who advised on corporate governance, who
19  advised on fiduciary duty, they can't point to a
20  single lawyer.  And, in fact, the lawyers in the
21  U.S. weren't retained by the client, they were
22  retained by this law firm, BDP.
23          THE COURT:  To provide advice to
24  the client; right?

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

90

1           MR. MOJDEHI:  They were the ones,
2   they served, they insulated -- you can't -- we
3   haven't been able to find a U.S. lawyer who said
4   I talked to the board.  That was all done by --
5           THE COURT:  This wasn't -- this is
6   based on -- when I look at this, it was based on
7   transacting business or performed in a character
8   in the state or causes tortious injury in the
9   state by act or omission in the state.  And what
10  the court was saying was that under the due
11  process clause, when it's happening in the state
12  because of the attorney's conduct in the state,
13  not the attorney's conduct outside the state
14  that may have caused the problem, then you have
15  -- then you have some specific jurisdiction and
16  the due process clause is met.
17          What I'm hearing now is that this
18  is conduct outside the state that they were
19  doing during the merger that was happening with
20  Paragren between Paragren and Mahalo Canada that
21  may have caused injury to Mahalo USA.
22          MR. MOJDEHI:  With respect to that
23  specific transaction, Your Honor, I don't know
24  whether they filed, in Ableco, for example, with

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

91

1   respect to the Ableco transaction, they did,
2   they filed a UCC and they're going to claim
3   that, well, these lawyers didn't do it, we're
4   going to say it was a conspiracy because they
5   knew that it was being done because they got the
6   authorization for the UCC filing.
7           THE COURT:  Did you get a copy of
8   the UCC filing?
9           MR. MOJDEHI:  Yes.
10          THE COURT:  Then that should be
11  satisfied, that should be enough.
12          MR. MOJDEHI:  That satisfies, in
13  our view that satisfies one piece of the puzzle.
14  But what --
15          THE COURT:  I'm still looking at
16  it from a jurisdictional question.  And I know
17  you talked to me about due process, I know once
18  we get out of specific jurisdiction and go into
19  a general jurisdiction argument, which is what
20  you are making, I got to sit there and consider,
21  Daimler AG, I got to consider Goodyear Dunlap
22  Tires, I got to consider the latest decision by
23  Chief Justice Strine.  And this is a different
24  situation.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

92

1           There is no any indication to me
2   that activity occurred in this state by either
3   of these two gentlemen in relationship to this.
4   If activity actually occurred in the state but
5   there was any filing in this state related to
6   this, then those obviously have to be produced,
7   but I'm not requiring the production at this
8   stage for the -- at this stage, the production
9   of documents and everything that was setup in
10  Canada.
11          MR. MOJDEHI:  With respect to the
12  Paragren?
13          THE COURT:  With respect to the
14  Paragren, yes.  So to the extent that there are
15  documents that were filed in this state
16  regarding relating to the Paragren merger, that
17  would explain how the 14 million debt was,
18  whether there are any documents filed here with
19  the secretary of state or any other bank, then,
20  yeah, those need to be produced.
21          MS. QUILLIN:  To the extent
22  anything has been filed in Delaware, those have
23  all been produced.
24          THE COURT:  Including anything

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

93

1 that would have dealt with the Paragren matter?
2        MS. QUILLIN:  I would say yes.  I
3 can't imagine there was anything that would have
4 dealt with the Paragren matter, again, since it
5 was between two Canadian corporations.
6        THE COURT:  All right.  The next
7 issue is the Ernst & Young.  I know that the
8 argument would be made by plaintiff that the
9 financial reporting was done on a consolidated
10 basis, parent's financial reporting was done on
11 a consolidated basis in which Ernst & Young
12 served as auditors, and the consolidation of the
13 financial's was with Mahalo USA.
14        But again, I have no understanding
15 of how this is relevant for Delaware
16 jurisdiction.  I understand the arguments as to
17 proving, arguments that can be made as to why it
18 would be important as to proving the underlying
19 claims, but I don't understand how it is
20 relevant to showing jurisdiction, these
21 attorneys -- these attorneys being subject to
22 jurisdiction here in Delaware when there is no
23 evidence that suggest that any financial
24 accounting or reporting occurred here, or that

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

95

1 wasn't rendered under a general jurisdiction
2 decision, and if it were, as I said to you
3 before, that's what, C4, the problem is that has
4 changed and I brought out to you, I don't think
5 it would meet the due process requirements.
6        Now, it may meet the due process
7 requirements before, but I'm not certain that it
8 would meet due process requirements now.  So I'm
9 not going to let you have the Ernst & Young
10 documents for the purpose of -- this is all
11 limited to the jurisdictional argument.  There
12 is also entries relating to Avanere.  What's the
13 basis for this?
14        MR. MOJDEHI:  Sample v. Morgan,
15 again, Your Honor.
16        THE COURT:  Well, what about
17 Instituto Bancario?  What type of documents are
18 you looking for related to Avanere.
19        MR. MOJDEHI:  Your Honor, with
20 this, with respect to Avanere and with respect
21 to Paragren, what we want to again show is their
22 tight link to corporate governance.  Avanere was
23 a related entity that these individuals
24 represented.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

94

1 these defendants were involved in it.
2        MR. MOJDEHI:  Well, the picture
3 for jurisdiction that we would like to present
4 to the Court is that these were individuals that
5 were intimately involved in the internal
6 corporate affairs of the corporation.  They were
7 the only lawyers who were advising about
8 corporate governance, or not advising as the
9 case may be.
10        And so I can't -- you know, with
11 respect to the Ernst & Young documents, how does
12 that relate to that?  It comes back to the same
13 argument that I made earlier which is under
14 Sample, yes, there was a filing there, but there
15 was also a second piece of Sample that not only
16 looked at the filing, but actually looked at the
17 conduct in terms of harm to the corporation.
18 And those other pieces --
19        THE COURT:  But it was decided
20 because there was context.
21        MR. MOJDEHI:  That's one piece of
22 it.
23        THE COURT:  That's the reason why
24 the decision was rendered the way it was.  It

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

96

1        With respect to the Paragren
2 transaction, I just want -- we know that one of
3 the lawyers said, you know, you need independent
4 advice with respect to that one.  We wanted to
5 get those documents to then show if that's true,
6 if you were given that advice in one
7 transaction, why didn't you do it with respect
8 to the transactions that impacted Mahalo U.S.
9        Avanere is a related party
10 transaction that was again rubber stamped and we
11 believe that again shows the consistent
12 pattern of fiduciaries favoring one client as
13 opposed to another, and we think it's
14 jurisdictionally significant under Sample.
15        THE COURT:  Well, I find it to not
16 necessarily be jurisdictionally significant even
17 under Sample and certain more recent case law.
18 I think it goes much more to the merits and much
19 more emphasis on the merits as well as any
20 arguments that have been made.  And do not find
21 them specifically relevant to determining
22 Delaware jurisdiction over the legal malpractice
23 claims that have been raised against these two
24 Canadian attorneys.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

97

1    Entries that refer to credit
2 facilities, some that reference the U.S. credit
3 facilities.  My understanding is that defendants
4 determined that there may have been some
5 documents that listed that related to both
6 entities, and were those documents produced?
7    MS. QUILLIN:  Yes, Your Honor, we
8 supplemented, so, in fact, I think there is 800
9 to 900 documents that were originally on the
10 privilege log that were subsequently produced.
11 So we produced --
12    THE COURT:  This would be a log
13 that's since postdated this one?
14    MS. QUILLIN:  That's correct.  The
15 postdated log I don't believe has been filed
16 with the court.  But yes, we did produce all
17 those documents.
18    THE COURT:  And you went through
19 all the documents to check to make sure that
20 they were -- that there weren't any documents
21 that -- did you go through all the documents and
22 checked and made sure that there weren't any
23 other documents related to this that when it
24 talks about the U.S. credit facility aspect of

99

1    THE COURT:  Were those resolutions
2 produced?
3    MR. MOJDEHI:  Yes, those
4 resolutions were produced, but what I don't
5 know -- this is a facility that impacts both the
6 U.S. and Canada.  What I don't know is whether
7 they have produced all the documents or have
8 held things back and said oh, this is Canada, we
9 think that is inappropriate.
10    THE COURT:  From what I have heard
11 today, I don't think that's happened.  To the
12 extent that they have supplemented, I'm not
13 going to require them to supplement this
14 particular aspect on the jurisdictional, under a
15 jurisdictional argument.
16    MR. MOJDEHI:  Just to be clear,
17 Your Honor, is the representation that's being
18 made to the Court that they have produced
19 everything pertaining to the Ableco documents?
20    THE COURT:  No, that's not the
21 representation.  The representation is on the
22 documents that they have looked at -- what they
23 said was that -- my understanding is that they
24 went back, realized that there were documents

98

1 it, that it wasn't -- to confirm that Mahalo
2 USA, that all of the -- all the application
3 toward Mahalo USA, that documents that relate to
4 the application of Mahalo USA were included,
5 were subsequently produced?
6    MS. QUILLIN:  Yes, Your Honor.
7    THE COURT:  Have you had a chance
8 to review those documents?
9    MR. MOJDEHI:  The answer is as I
10 sit here, no.  But that one, that transaction,
11 Your Honor, our first amended complaint just so
12 the Court is aware, says 50 million of debt was
13 shifted from the parent to the U.S., and we say
14 there was a conspiracy with respect to the UCC
15 filings.  And that the UCC filing, the
16 authorization came from resolutions emanating
17 from Mr. MacKenzie.
18    THE COURT:  Were they resolutions
19 from the parent?
20    MR. MOJDEHI:  No, they were
21 resolutions from the U.S.
22    THE COURT:  It was the U.S. with
23 Mahalo?
24    MR. MOJDEHI:  Yes.

100

1 that include Mahalo USA, that these documents
2 related to both entities, and that these
3 documents were produced as to the issues that
4 were raised, page six, bottom of the page, am I
5 correct on that, of the letter?
6    MS. QUILLIN:  Yes.
7    THE COURT:  And went over to page
8 seven.  And I assume that the documents that
9 were listed -- Del Boca Family Facility, what
10 they didn't do was they didn't produce documents
11 I'm assuming that referenced only the parent
12 corporation.
13    MR. MOJDEHI:  And again, this was
14 a facility that was done together.
15    THE COURT:  Well, if there were
16 documents that referenced the parent corporation
17 without references Mahalo USA, I see nothing
18 there to suggest that the documents should be
19 produced for the purposes of jurisdictional
20 aspect.  Since you can't tell me based upon the
21 other documents that were produced, whether
22 those documents suggested to you that there are
23 some things that are missing that would be
24 related to Mahalo USA, I'm not going to require

101

1  them to do any more at this time.
2          MR. MOJDEHI:  So on this, Your
3  Honor, let me just ---
4          THE COURT:  Just one more thing.
5  When were they produced?
6          MS. QUILLIN:  I don't recall.
7  It's been months and months.
8          THE COURT:  All right.  Go ahead.
9          MR. MOJDEHI:  We identified on the
10  privilege log various documents that have been
11  withheld.  What I don't know and maybe is
12  whether all of those have been produced.
13          THE COURT:  I don't know the
14  answer to that, but I think you could certainly
15  check the privilege log and find out because the
16  numbers didn't change.  I mean, when you produce
17  these documents, did you provide -- were they
18  stamped in some way to indicate that this was
19  privilege log document number 137?
20          MS. QUILLIN:  I don't know.
21  Again, that was not handled by our office, that
22  was handed by Mr. Fitzgerald's office that took
23  the lead on that.  And honestly I don't know.  I
24  can't represent to the Court.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

103

1          If you get a privilege log that
2  shows -- I don't know how you get a privilege
3  log to show, in coordinating it with what
4  plaintiff had with the letter, I don't know how
5  you do that at all if you produce documents.
6          The next one was legal advice
7  related to board of directors meeting minutes,
8  with some variant of that description.
9          My understanding is that all board
10  minutes that related to Mahalo USA have been
11  produced.
12          MS. QUILLIN:  Yes, Your Honor.
13          THE COURT:  I'm assuming all
14  committee, and I got to find that out.  Have all
15  committees been -- that relate to Mahalo --
16  committee minutes that relate to Mahalo USA,
17  have those been produced?
18          MS. QUILLIN:  There were no board
19  meetings for Mahalo USA.  All the resolution,
20  all the minutes, all of the corporate documents
21  of Mahalo USA, those have all been produced.
22  Any E-mails back and forth regarding, you know,
23  should Mahalo USA vote on this and do this or do
24  that or file this, that's all been produced.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

102

1          THE COURT:  And you can't
2  represent to the Court that all the document
3  numbers that were listed in the Ableco facility
4  documents have been referred to as -- all the
5  documents that were listed in the plaintiff's
6  letter were necessarily produced?
7          MS. QUILLIN:  Right.  What I can
8  do, since we have control of all of those
9  documents now, Mr. Fitzgerald is out of the
10  case, is have my paralegal look, if they were
11  not produced with a stamped number, she can put
12  together a log that shows where those would have
13  fallen in the original privilege log.
14          THE COURT:  That would be helpful
15  and that would tell us something.  But I am
16  going to operate from the assumption right now
17  based upon the information that has been
18  provided to me that the documents as far as I
19  know, the documents regarding Ableco that were
20  related to both entities, those documents were
21  produced.
22          MS. QUILLIN:  Yes, Your Honor.
23          THE COURT:  But you will be told
24  which ones.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

104

1  Did I understand your question?
2          THE COURT:  Were there any
3  committees that, committee meeting minutes that
4  were retained that related to the parent that
5  would have involved Mahalo USA?
6          MS. QUILLIN:  I don't know.
7          THE COURT:  That's something you
8  need to check.  And if they did, those committee
9  meeting minutes should be produced.
10          MS. QUILLIN:  To the extent they
11  relate to Mahalo USA?
12          THE COURT:  Yes.  I'll allow you
13  to put an argument on there about any
14  limitation.
15          MR. MOJDEHI:  Your Honor, I think
16  our letter speaks for itself on this and the
17  other issues.  And we just have logs that say
18  legal advice to the board.
19          THE COURT:  Well, I think the
20  advice needs to be -- I think it needs to be
21  clarified on the privilege log who is receiving
22  legal advice to whom.
23          MS. QUILLIN:  Anything that's on
24  the privilege log is going to be to the parent,

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

105

1  but I will put together a chart that shows who
2  these people are.
3          MR. MOJDEHI:  But here is the
4  fallacy in this.  I come back again to
5  Mr. McKenzie's E-mail.  The U.S. was controlled
6  by the parent.  The parent did everything for
7  the U.S. as far as we can tell.
8          THE COURT:  It doesn't mean that
9  every time the board met they did something for
10  the Mahalo USA?
11         MR. MOJDEHI:  I understand.  But
12  to the extent they did things that affected the
13  U.S. or transactions in which the U.S. was
14  involved in, they can't sort of hide behind the
15  fact that this was Canada.
16         THE COURT:  Again, I am concerned,
17  as I said to you at the beginning of this
18  discussion, part of my concern was going to be
19  exactly how far you would be allowed to go into
20  the merits.  And I do really think that far into
21  the merits, under your interpretation,
22  practically anything that was ever done that
23  basically you're looking for full discovery in
24  this case.  And again I'm going to be guided by

106

1  what Judge Andrews indicated in his order and
2  I'm trying to stay within that, so that A, we
3  can get this discovery done, you got information
4  to raise the issues and move forward on anything
5  that has -- for this Court to determine whether
6  it's got jurisdiction over these two defendants.
7          MR. MOJDEHI:  Your Honor, I fully
8  realize that, and as I said, the argument that
9  they will make is going to be, they have had
10  jurisdictional discovery, and even to the
11  extent, you know, that it's -- that you're
12  limiting it, it at least gives us the ability to
13  say we didn't get all the documents that we
14  think we should have gotten.  So I'm fine with
15  -- we have laid out our reasoning and the
16  difficulty.  You keep asking me questions.
17         THE COURT:  I ask you some
18  questions because you have gotten -- how many
19  documents have you got in this case?
20         MR. MOJDEHI:  But --
21         THE COURT:  No, no, roughly.
22         MR. MOJDEHI:  I have no idea.
23  They claim 20,000.
24         MS. QUILLIN:  Over 20,000.

107

1  MR. MOJDEHI:  But that's --
2          THE COURT:  No, no, stay with me
3  on this.  That's a substantial amount.  It
4  should tell you a fair amount about what's going
5  on.  More importantly it should also tell you
6  where you feel that you have got evidence that
7  you could have brought up to me that you feel
8  information has not been provided that goes to
9  the jurisdictional, that goes to the heart of
10  jurisdictional discovery.
11         MR. MOJDEHI:  Your Honor, will
12  they file a declaration saying we see nothing,
13  we know nothing, we did nothing, we are just
14  Canadian lawyers sitting in Canada minding our
15  own business.
16         THE COURT:  I don't think we need
17  to quite put it that way.
18         MR. MOJDEHI:  It wasn't that
19  language, but the substance is the same.  We, I
20  believe, should be able to say if that's the
21  case, then what are all these documents where
22  you were giving corporate governance advice.
23         THE COURT:  If the corporate
24  governance advice went to the parent and was not

108

1  related to Mahalo USA.  It wasn't corporate
2  governance to Mahalo USA, how is it relevant to
3  the issue of jurisdiction?  I'm not arguing
4  that, if jurisdiction is found, I'm not saying
5  to you it isn't necessarily relevant to your
6  claim, but I'm trying to parse out a little bit
7  so that we don't have full blown discovery on
8  the claims in this case which is what -- which
9  is not what Judge Andrews ordered.
10         MR. MOJDEHI:  All I'm saying is
11  that some of this is helpful for impeachment,
12  but there is a link to the U.S. and it deals
13  with the transaction involving the U.S., or the
14  U.S. in any way, because as I repeat, the U.S.
15  for whatever reasons didn't have its own board
16  meetings.
17         We have the statement that the
18  Canadian parent controlled everything.  So what
19  we're fearful of is given that, then they turn
20  around and say well, this was just Canada and
21  you're not entitled to it.  So if they go back
22  and make sure that doesn't impact the U.S., it
23  doesn't involve the transaction the U.S. is
24  involved in.

109

1         THE COURT:  If it involves a
2 transaction the U.S. is involved in, then it
3 would have been produced, that's what I
4 understand.  That's what I understand they have
5 represented all along.  I am -- you know, I can
6 sit there and make them go back over 50,000
7 pages of documents and I think it's going to be
8 a colossal waste of time.  I have got nothing to
9 suggest that -- counsel has come back where they
10 haven't been able to do something and say okay,
11 check, double-check, but what has been
12 represented to me overall is that if it was --
13 if a transaction involved the U.S., it would
14 have been produced.
15         MR. MOJDEHI:  Your Honor, all
16 we're hearing is some other law firm did this,
17 they don't know anything, they're telling you
18 based on hearsay what some other lawyers said.
19         THE COURT:  So I'm supposed to sit
20 there and assume --
21         MR. MOJDEHI:  But that's what
22 we're hearing.
23         THE COURT:  Not every one of them.
24         MR. MOJDEHI:  What's that?

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

111

1 corporate governance relating to the
2 corporations corporate governance involved
3 advice to the counsel and parent and not Mahalo
4 USA, then it has no relevance to jurisdiction
5 over the defendants in Delaware.
6         All right.  From what I
7 understand, that is what has been represented to
8 me by counsel, that the steps that were taken to
9 confirm, the steps and the efforts that were
10 made to make that determination.  We have gone
11 through the privilege log, I think I have
12 indicated and I hope it's now consistent
13 someplace in this what I have required defendant
14 to do, and things to do to augment that log to
15 make it more complete so we have a better
16 description.
17         What is -- we haven't discussed
18 discovery in the post bankruptcy period, right,
19 that's one aspect.  And spoliation.
20         MR. MOJDEHI:  Yes.  And I did
21 get -- hear back from California.
22         THE COURT:  Okay.  Do you have the
23 --
24         MR. MOJDEHI:  I do.  May I

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

110

1         THE COURT:  Not every one of them.
2         MR. MOJDEHI:  But there is nothing
3 from the client, there is no evidence, it's just
4 argument.
5         THE COURT:  I don't think the
6 client -- if you want, I don't think the client
7 has to sit there and say anything in an
8 affidavit at this stage, or a declaration.
9         MR. MOJDEHI:  I just harken back
10 to the conversation we had about CT Corporation,
11 and the argument that was made --
12         THE COURT:  I had a problem
13 overall with CT Corporation after there was
14 documents that I have authorized that I said
15 they had to go back and check, I think in that
16 case, but I also limited it to a certain package
17 or grouping or area or topic to check, because I
18 don't think everything that CT Corporation
19 necessarily did, if everything it did involved
20 Mahalo USA, then everything is going to be
21 produced.
22         I run into the same situation with
23 legal advice you gave regarding corporate
24 governance.  If the legal advice regarding

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

112

1 approach?
2         THE COURT:  Yes, you may.
3         MR. MOJDEHI:  So, Your Honor, what
4 I have handed you is the --
5         THE COURT:  That's kind of
6 interesting because it didn't even address Code
7 962, which was kind of interesting exceptions.
8         MR. MOJDEHI:  So the case that we
9 cited to you actually wrestles with those two
10 statutes.
11         THE COURT:  Where is it?
12         MR. MOJDEHI:  The case?
13         THE COURT:  Yes, where is it in
14 the case?  Too much paper on my area.  Where did
15 it wrestle with it, where?
16         MR. MOJDEHI:  Your Honor, on page
17 four, it starts the discussion, basically just
18 to summarize this, and I don't want to -- the
19 Court can take its time whenever it's
20 appropriate, the court said that the statute
21 does not resolve the dispute because there is
22 still a -- there is still -- it's still
23 confidential as to third parties.
24         Then it goes on to say that why

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

113

1   there is no privilege when the lawyer is sued,
2   and it's because of the statutory exclusion for
3   any suit against lawyers.
4           And Delaware has the similar
5   statute.
6           THE COURT:  Well, Delaware has a
7   similar statute.  I also think that part of
8   this, the reason why this exception was made was
9   the fact that when, for example, when a client
10  sues a lawyer, the client cannot make the
11  argument that the lawyer cannot use in his or
12  her defense any confidential information that
13  was provided by the lawyer to the client.
14          That's part of what happens under
15  this breach of duty by the lawyer or client
16  aspect of it.  But I could go back, the
17  Teleglobe case speaks volumes on this, and the
18  Teleglobe case also addressed these points more
19  directly than certainly this case did as far as
20  the issues.
21          It was a thorough analysis and I'm
22  standing by that.  I understand what was said by
23  the Court of Appeals in California, and that's
24  fine, that's their own interpretation.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

115

1   conclusions or a lot of my analysis has been
2   based on the extent of your requests, and on the
3   issue of do they really relate to jurisdiction,
4   or are they more tangentially related to
5   jurisdiction and really going to the merits.
6           MR. MOJDEHI:  I get that.  I get
7   that's part of it.  But this is part of it, too.
8   And again, for our purposes, we would like to be
9   in a position to, so when they make all their
10  arguments about look at all the discovery that
11  they have had, to be able to say well, you know,
12  this Court said no, and part of it was this
13  Court's reading of Teleglobe and disagreeing
14  with our view.
15          THE COURT:  Well, you have
16  fourteen days in which to file your objections
17  to my decision to Judge Andrews.  Let me explain
18  to you why we're having this.  Judge Andrews and
19  I discussed the fact that the defendant filed I
20  think a second motion for lack of personal
21  jurisdiction.
22          And before we even got the letter,
23  we talked about it, about the fact that there
24  are issues out there that haven't been decided

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

114

1           And you think that when it comes
2   to the joint clients common interest that that's
3   a different situation?
4           MR. MOJDEHI:  So, Your Honor --
5           THE COURT:  Because otherwise you
6   just basically eviscerate the attorney/client
7   privilege for that one party who has nothing to
8   do with the action, who has not waived its
9   rights, who has not waived anything at all, who
10  is not involved in the lawsuit.  So I'm going to
11  be -- I stand on that.  You can disagree with
12  me, I understand that, but I am not going to be
13  ordering --
14          MR. MOJDEHI:  So that is for the
15  discrete legal issue that I think it would be
16  good to deal with because we're going to --
17  because --
18          THE COURT:  What are you saying?
19  I'm trying to figure out what you're suggesting.
20          MR. MOJDEHI:  That's clearly
21  impacting as far as I can tell how the Court is
22  viewing this.
23          THE COURT:  To some extent, not
24  completely.  If you notice a lot of my

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

116

1   which is the reason why I have issued my order
2   and asked the parties to try to narrow down
3   things.  That was kind of unsuccessful, but
4   that's okay.  And he wanted me to move forward
5   on this, make decisions, render them before he
6   even starts addressing this, because if out of
7   this, which has happened to some extent, further
8   discovery was required, you are going to get
9   that discovery before that briefing was going to
10  be allowed.  Okay?
11          So that's where we are at.  So if
12  you have -- if you disagree with my analysis or
13  you disagree with my findings, you have the
14  right to file no more than ten pages, double
15  spaced within fourteen days of this decision.
16          Robert, could you do me a favor.
17  I can't remember the standing order that we
18  have, the standing order, if at the end of the
19  every report and recommendation, the standard
20  language, if you could pull that off.  And the
21  standard that you would be under I think would
22  be -- this is not an R & R, this actually is a
23  memorandum decision, because it does not decide
24  any -- it's not case dispositive, so it falls

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

117

1  under 72 -- I want to make sure that I have the
2  right section, 72(a) of the Rules of Civil
3  Procedure.  And that outlines -- that outlines
4  the standard that Judge Andrews goes by.  And
5  then deciding on any objections.  So as an
6  objection to my memorandum decision.
7          MR. MOJDEHI:  My point was this is
8  a discrete -- I mean, you can put a box around
9  it issue.
10         THE COURT:  That's fine.  That's
11  fine.  It is.  And you are limited to no more
12  than ten pages and it has to be filed within
13  fourteen days.  Now, that fourteen days also
14  includes, because we still go with Rule 6, so
15  technically it's 17.
16         And my standard approach is not to
17  sit there and issue a separate order in this
18  case.  In matters like this one, I take the time
19  out to have it either done by telephone or in
20  court.  The transcript will serve as the order
21  of the court.
22         MR. MOJDEHI:  Thank you.
23         THE COURT:  And the findings and
24  stuff will serve as the order of the court
Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

118

1  that's contained in the transcript.
2          What I want to do is to try to --
3  there is a standing order that the Court has and
4  it's called the standing order in non-pro se
5  matters for objections filed under Federal Rule
6  of Civil Procedure 72.  The date of that
7  standing order is November 16th, 2009.  It's on
8  the Court's website.
9          I think most of it deals with
10 reports and recommendations, but it does tell
11 you, it covers any decision made by magistrate
12 judges.
13         And would you please return the
14 document to defense counsel.  Thank you.  I'm
15 going to hold on to the California code you have
16 provided to me.  Thank you.
17         Let's go to the next issues.  The
18 big issue I think is the discovery of the post
19 bankruptcy period as being relevant to the issue
20 of jurisdictional facility.  I know that you
21 made some arguments before, but it might be nice
22 to put them all together in one location.
23         MR. MOJDEHI:  Sure.  The first
24 question is maybe defense counsel can tell us
Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

119

1  whether those entries relate solely to Canada or
2  not.
3          THE COURT:  The discovery in the
4  post bankruptcy period?
5          MR. MOJDEHI:  Yes, those entries
6  in the bills.
7          THE COURT:  Entries in the bills.
8  That's the D & O entries?
9          MR. MOJDEHI:  Yes.
10         MS. QUILLIN:  I don't have them.
11         THE COURT:  I think you need to
12 check and find out.
13         MS. QUILLIN:  I will find out.
14         THE COURT:  Find out on anything
15 that relates to Mahalo USA, that will be
16 produced.
17         MS. QUILLIN:  Sure.
18         THE COURT:  But I think there were
19 other concerns.  This was in your February 2015
20 I think discovery request, wasn't it dealing
21 with the idea that previously the request had
22 been filed, the first set of requests I think
23 had been filed and it was limited up to May
24 21st, 2009.  I think there were other requests
Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

120

1  that were filed that extended beyond May 21st,
2  2009.
3          Am I correct in understanding that
4  the defendant uniformly did not provide any
5  documents that -- any documents after May 21st,
6  2009?
7          MS. QUILLIN:  I think for the most
8  part that's true.  I think there actually were
9  some Mahalo USA corporate documents that were
10 produced after that date.  It could have been
11 E-mails related to those corporate documents.
12 But the Court is correct, we filed a general
13 objection that the bankruptcy date was the
14 cutoff date.
15         THE COURT:  And no basis for --
16 and the base for why the -- counsel for the
17 plaintiff has explained that the documents as
18 examples, was that somebody made an admission
19 about Mahalo USA; right, counsel?
20         MR. MOJDEHI:  I'm sorry, yes, Your
21 Honor.
22         THE COURT:  Cleaning up.
23         MR. MOJDEHI:  Yes, because I have
24 made a mess over there.
Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

121

1   THE COURT:  Do you want to take a
2   five-minute break and do some clean up and
3   rearrange stuff?
4   MR. MOJDEHI:  I would appreciate
5   it very much.
6   THE COURT:  That's fine.  No
7   problem.  I probably should do the same thing.
8   Take a short break, counsel, five to ten
9   minutes.
10   (A brief recess was taken.)
11   THE COURT:  Please be seated.
12   Mr. Mojdehi, are you ready?
13   MR. MOJDEHI:  Yes, Your Honor.
14   THE COURT:  This deals with where
15   we left off dealt with the timing, the discovery
16   of documents information at this stage post May
17   2009.
18   MR. MOJDEHI:  Right.  And our
19   position, Your Honor, is that there has been a
20   blanket objection, so, for example, if there are
21   documents in the post bankruptcy period that
22   refer or relate to, impact the U.S. and that
23   relate to the plaintiff's causes of action that
24   are prebankruptcy, then they need to be

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

122

1   produced, even if they came into existence after
2   the bankruptcy.
3   So if there is communications, if
4   there is E-mails, if there is -- because, again,
5   just so that the Court has the timing context,
6   in the course of the bankruptcy, these
7   defendants became aware of the potential claims.
8   And we'll find out when defense checks whether
9   the D & O matters relate to the U.S., but that's
10   just an example of the type of documents that we
11   believe we are entitled to, assuming again, that
12   it pertains, impacts, refers, relates to the
13   U.S.
14   But I don't have any way of
15   wrestling it to the ground because it's a
16   blanket objection.
17   THE COURT:  Well, one of the
18   things that they are offering is that this
19   really potentially goes to the merits of the
20   case and to the some extent some of your
21   argument does go to this.  When the bankruptcy
22   was filed on May 21, 2009, did the law firm or
23   these defendants file any claims against Mahalo
24   U.S.?

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

123

1   MR. MOJDEHI:  Yes, they did.
2   THE COURT:  Who did, the law firm,
3   the defendants, what?
4   MR. MOJDEHI:  No, I'm sorry, the
5   Canadian parent did.
6   THE COURT:  The Canadian parent
7   did, but not these individuals?
8   MR. MOJDEHI:  Not these
9   individuals.  But they were participating, that
10   law firm was around.  In fact, the resolution
11   for the filing of the bankruptcy was prepared by
12   Mr. MacKenzie, or he had some role in that.
13   THE COURT:  The resolution on
14   behalf of Mahalo USA was prepared?
15   MR. MOJDEHI:  Correct.
16   THE COURT:  And that has been
17   produced?
18   MR. MOJDEHI:  Yes.  That has been
19   produced.  So their involvement continued.  And
20   because -- and one of the big issues, Your
21   Honor, during the course of the bankruptcy that
22   we fought was who did the causes of action
23   belong to.  And we felt that the cause of action
24   belonged to the unsecured creditors, and that we

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

124

1   prevailed on that argument.  So they were well
2   aware, and were, in fact, I'll say encouraging
3   the argument to the contrary during the course
4   of the bankruptcy.  Again, it was not like they
5   were oblivious to these potential claims.
6   THE COURT:  What you're saying is
7   that they were aware, or should have been aware?
8   MR. MOJDEHI:  Yes.
9   THE COURT:  Ms. Quillin, when
10   you're making the argument that the bankruptcy,
11   the May 21, 2009 date should be the cutoff, when
12   you're making the argument at this stage.
13   MS. QUILLIN:  At this stage, yes,
14   and again, we have produced all of these
15   documents up to this point.  If Mr. Mojdehi is
16   looking for, which I doubt there is any, oh,
17   yeah, we did all this stuff in Delaware, we just
18   never had it in any of these other documents
19   before, it defies common sense.
20   THE COURT:  Well, it does, but
21   people can be stupid and that's something you
22   have to fix.
23   MS. QUILLIN:  He's got everything
24   that was Mahalo USA up to the date of

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

125

1  bankruptcy. If he's saying that defendants were
2  aware of the claims that might be filed against
3  them, I would say at that point any of those
4  documents would be documents prepared in
5  anticipation of litigation.
6       THE COURT: Potential.
7       MS. QUILLIN: Potential.
8       I mean, given the definition of
9  the actions that plaintiff has empowered to
10 pursue, the cutoff date was clear.
11      THE COURT: There are some things,
12 though, I can see on this argument, that if
13 there were documents related to Mahalo USA about
14 events that had occurred prior to the
15 bankruptcy, I could see how those could be
16 relevant, and so I'm going to require you to
17 check and produce those.
18      MS. QUILLIN: Okay.
19      THE COURT: But basically I'm
20 looking at May 21, 2009 as the cutoff date for
21 the jurisdictional discovery.
22      There is one other question. Were
23 the defendants in this case at all involved --
24 what was their involvement, if any, in the

126

1  Delaware bankruptcy.
2       MS. QUILLIN: It was an Oklahoma
3  bankruptcy.
4       THE COURT: Oklahoma bankruptcy.
5  How did it end up in Oklahoma?
6       MS. QUILLIN: That's where
7  plaintiff said all the harm occurred. It was
8  coal bed methane production in Oklahoma. So
9  creditors were in Oklahoma, companies were in
10 Oklahoma. Oklahoma counsel was hired as
11 bankruptcy counsel for Mahalo USA. The Canadian
12 lawyers did not do the bankruptcy.
13      THE COURT: For the purposes of
14 jurisdictional discovery I'm going to limit as I
15 have indicated, that has absolutely no effect,
16 and this ruling has no effect should a decision
17 be rendered that personal jurisdiction exist
18 over these defendants for the merits of
19 discovery because that could be something
20 different. And I'm not making a ruling on that
21 as far as the date of May 21, 2009, except for
22 the extent that there were references regarding
23 Mahalo USA that related to events prior to the
24 filing of the bankruptcy, that was done post,

127

1  documents that were prepared, E-mails that were
2  prepared post May 21st, 2009.
3       MS. QUILLIN: Yes, Your Honor.
4       THE COURT: And then we'll find
5  out about the D & O aspect. That door is still
6  open to some extent as far as that's concerned.
7       Spoliation of evidence. What
8  happened there, from your understanding?
9       MR. MOJDEHI: The server for the
10 company was cleaned.
11      THE COURT: The servers for which
12 company?
13      MR. MOJDEHI: For Mahalo Energy
14 and Mahalo U.S., consistent with custom and
15 practice of this company, everything was on one
16 server that the parent kept. And during the
17 course of the litigation, we found out, Your
18 Honor, that the servers had been cleaned, or
19 they're no longer around, however --
20      THE COURT: The server is no
21 longer available, clean, what, are they still
22 there?
23      MR. MOJDEHI: They don't have it,
24 and the servers were destroyed.

128

1       THE COURT: Okay.
2       MR. MOJDEHI: This is during the
3  course of the litigation.
4       THE COURT: During the course of
5  this litigation?
6       MR. MOJDEHI: Yes.
7       THE COURT: When were they
8  destroyed?
9       MR. MOJDEHI: I don't have the
10 date of when they were destroyed, but we know
11 that they were destroyed after the defendants
12 became aware of potential claims. So the timing
13 of when is after the date the defendants became
14 aware.
15      THE COURT: So when did they
16 become aware of the potential claims, do you
17 have any time frame?
18      MR. MOJDEHI: Sure. No, I do.
19 And let me --
20      THE COURT: And is your concern
21 limited to MacKenzie rather than Lawson, because
22 it seemed to me that what I saw was directed
23 predominantly towards MacKenzie.
24      MR. MOJDEHI: Yes, it is, but they

129

1  both were aware of it, and they both in our view
2  as lawyers had an obligation under Delaware law
3  to take steps to at least advise their clients
4  that servers should be protected.
5        THE COURT:  Do you want to check.
6        MR. MOJDEHI:  Let me get you the
7  date, Your Honor.
8        So what we do have, Your Honor, is
9  an E-mail, and I'm reading from our April 2nd
10 letter which is document 63 on page three, where
11 we say that we have an E-mail from
12 Mr. MacKenzie, it's that same E-mail that was
13 attached to the complaint, Your Honor.
14       THE COURT:  Yes.
15       MR. MOJDEHI:  It says this E-mail
16 from January -- postdates -- no, I'm sorry, Your
17 Honor.
18       THE COURT:  You got the wrong --
19       MR. MOJDEHI:  I have the --
20       THE COURT:  This is a repeat.
21       MR. MOJDEHI:  I'm sorry.
22       THE COURT:  That's okay.  I'm so
23 glad you say you have the difficulty of keeping
24 your stuff straight and you have been involved

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

131

1  64, it's the actual document.
2        MR. MOJDEHI:  64, it's the actual
3  declaration.
4        THE COURT:  Okay.
5        MR. MOJDEHI:  It goes back to your
6  question about dates.
7        THE COURT:  Okay.
8        MR. MOJDEHI:  So we have a report
9  about the claims being filed in the bankruptcy
10 February 1, 2010, and then we also have
11 documents that show that the servers were still
12 in existence at least as of May 19th, 2010.
13 Because we have E-mails from the Mahalo Energy
14 address.
15       THE COURT:  So again, I'm trying
16 to understand what your request is.
17       MR. MOJDEHI:  So our request is
18 obviously we would like -- you know, when we
19 learn about this, the advice under D & O
20 matters, maybe that will shed some light on
21 this.  We would like to know what defendants
22 knew about the circumstances of the server
23 destruction, when he knew it, what he did to try
24 to prevent it, and this goes to show that in a

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

130

1  with stuff for the last two or three years.
2        (Discussion off the record.)
3        THE COURT:  Spoliation of evidence
4  is on page four.
5        MR. MOJDEHI:  Yes.  So the dates,
6  Your Honor, that I have is that Mr. MacKenzie
7  had actual notice of the anticipated litigation
8  as of February 1, 2010, at the latest.  And that
9  the Mahalo servers were not destroyed until
10 sometime after that point.
11       The exact date and circumstances
12 of the destruction is something that defense
13 counsel would be in a better position to
14 address.
15       THE COURT:  I didn't know if you
16 had some independent information.  So what are
17 you looking for to address this concern?
18 Spoliation goes beyond jurisdictional discovery.
19       MR. MOJDEHI:  Yes.  And, Your
20 Honor, let me make one other point, just so that
21 the record is clear.  In the declaration that I
22 -- this is document 64, page three, paragraph
23 five.
24       THE COURT:  Is it Exhibit 1 -- no,

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

132

1  normal case where a party is seeking
2  jurisdictional discovery, the court may
3  rightfully say well, gee, you can go get that
4  discovery from someone else.  Here we don't have
5  that.  Here all the electronic documents have
6  disappeared, which makes discovery from these
7  defendants even more necessary.
8        THE COURT:  Okay.  I have a little
9  bit of a disconnect.  I understand what you're
10 saying about what you want to know from
11 defendant, but I don't know if I can express it
12 correctly.  It may suggest the urgency of
13 certain discovery in this case, particularly on
14 the merits aspect of it.
15       But, okay, how does that relate --
16 let me just go back a little bit.  How does this
17 -- recognizing that I have limited some of the
18 discovery that you're going to be able to get,
19 how does this relate to jurisdiction?  I mean,
20 how does what you're looking for relate to
21 jurisdiction?  That is having a combination --
22       MR. SEMPLE:  Your Honor, the
23 allegations here don't involve defendants.  The
24 parent corporation -- we didn't have anything to

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

133

1   do with it.
2         THE COURT:  I think what he's
3   saying is there was some obligation of MacKenzie
4   because he was representing both the parent and
5   the USA.  Of course, I don't know how much he
6   was representing USA after they became -- after
7   they filed bankruptcy in 2009.
8         MS. QUILLIN:  Exactly.  This is
9   after the bankruptcy was filed, they have
10  bankruptcy counsel, they have an entity taking
11  over a lot of Mahalo USA's assets.  We produced
12  everything that we had regarding the computers
13  or the servers.
14        THE COURT:  And the computers and
15  the servers would have been checked, Mahalo USA
16  server, parent server, and also the lawyer's.
17        MS. QUILLIN:  The lawyer's servers
18  is what all of these documents that we produced
19  are.  I mean, that's all we have got.  And so
20  you know, we didn't spoliate anything.  This is
21  over a year, a year-and-a-half after the
22  bankruptcy has been filed, for whatever reason,
23  we don't know, the servers were junked, the
24  successor companies they didn't want them, the

134

1   bankruptcy lawyers didn't do anything to
2   preserve them, the trustee in bankruptcy who had
3   access, assuming, didn't do anything to preserve
4   them.  You're right, this has nothing to do with
5   jurisdiction in Delaware over two Canadian
6   lawyers here.
7         THE COURT:  I don't see it.  It
8   may be something that he can raise later, and
9   certainly obviously I would imagine counsel now,
10  you have advised the law firm as well as the
11  attorneys to keep those -- to preserve those
12  servers, including documents that I have not
13  allowed to be produced or required to be
14  produced for the jurisdictional discovery.  So
15  I'm having a hard time on this one whether there
16  is any obligation on the part of MacKenzie at
17  the time the servers would have gone out of
18  existence, because at that time I think he was
19  representing them.  There is no evidence that he
20  was.  Both companies were in bankruptcy; right,
21  they had bankruptcy counsel involved; is that
22  correct?
23        MS. QUILLIN:  Yes.
24        THE COURT:  So that's problematic.

135

1   Somebody maybe in that group should have
2   advised, or the trustee, the trustee has got to
3   be thinking about these adversarial, potential
4   adversarial claims.  When was the lawsuit
5   against these defendants filed?  Was it filed in
6   2014?  There is a 2014 number on the case filing
7   here, but I don't know whether there was
8   anything filed in another jurisdiction.
9         MS. QUILLIN:  In Delaware it was
10  filed in 2014.  It was filed in Oklahoma in
11  2011.  And the attorney claims were dismissed
12  for jurisdictional issues.
13        THE COURT:  Okay.  I can't even
14  say that there was necessarily spoliation
15  responsibility that falls on these defendants.
16  But again, I don't think it's an issue involved
17  here except to reconfirm that these defendants
18  are obligated to keep what they have preserved,
19  including people that has not been permitted to
20  be discovered at this stage on the
21  jurisdictional issues.
22        If there is other evidence that
23  comes to play or comes to be known or reaction
24  to get the merits part of this, maybe the

136

1   spoliation issue has some legs to it, but it
2   doesn't sound at this stage that it has --
3   because again, this is the parent, it's the
4   parent corporation had control over the server,
5   which is what has been said.  That is the parent
6   corporation's attorney's responsibility.  When
7   did they go into bankruptcy?
8         MS. QUILLIN:  The parent filed
9   bankruptcy the same day.
10        THE COURT:  As the sub?
11        MS. QUILLIN:  Under Canadian.
12        THE COURT:  Under the Canadian,
13  and anybody has been through the Nortel case
14  knows exactly how much fun that is.
15        All right.  Is there anything
16  else?
17        MR. MOJDEHI:  Your Honor, there is
18  an outstanding interrogatory.
19        THE COURT:  That was rather
20  substantial as far as all the subparts.
21        MR. MOJDEHI:  And basically, Your
22  Honor, as -- just on the server issue, again,
23  what we have is consistency of it was again the
24  parent.  You know, that's their defense, that's

137

1  respecting the server.
2         THE COURT:  When you're talking
3  about, even if it was Mahalo USA, there is no
4  indication to me, and certainly you haven't
5  indicated, suggested it, that either MacKenzie
6  or Lawson were at all involved in that
7  bankruptcy and representing Mahalo USA.  They
8  had separate bankruptcy counsel.
9         At that time the control of that
10  server, whether the parent or the sub or both of
11  them, and if there was going to be any
12  preservation of what was on that server, it
13  should have been done at that time.
14         MR. MOJDEHI:  MacKenzie was the
15  corporate secretary of U.S., in addition to
16  being the lawyer.  And as I indicated, during
17  the course of the bankruptcy, the parent
18  controlled the U.S. entity.  That's how it
19  worked.
20         THE COURT:  If I understand, the
21  corporate secretary is basically a title, and he
22  may have -- but again, we're talking about
23  entities that were in bankruptcy that had
24  bankruptcy counsel, and you certainly had a

138

1  trustee established, did you not, for the --
2         MR. MOJDEHI:  No, that's after the
3  fact, Your Honor.
4         THE COURT:  That was after?
5         MR. MOJDEHI:  Right.
6         THE COURT:  The trustee was
7  established for the US entity when?
8         MR. MOJDEHI:  The trustee came in
9  once the plan, once the plan was confirmed.
10         THE COURT:  The trustee wasn't
11  there before?
12         MR. MOJDEHI:  When was the plan
13  confirmed.
14         MS. QUILLIN:  April 20, I believe,
15  2010.
16         THE COURT:  Well, that's pretty
17  early.  And why if the trustee was involved and
18  if the trustee was thinking ahead he was
19  thinking that there were potential claims
20  against these two defendants, why weren't
21  efforts being made at that time?  The trustee
22  then had control.
23         MS. QUILLIN:  The trustee I would
24  assume was a liquidated trustee was appointed

139

1  before them, but for our purposes.
2         THE COURT:  For the purposes of
3  this, for this litigation, yes.
4         MR. MOJDEHI:  I don't --
5         THE COURT:  I think there were too
6  many -- well, I don't see it relates to the
7  issues as I understand them for the
8  jurisdictional aspect of this case at this
9  stage.  Whether there is a spoliation issue, and
10  what's being requested, I don't think is
11  relevant, particularly relevant to the issues on
12  jurisdiction.
13         MR. MOJDEHI:  So I move to the
14  last point which is the interrogatory.
15         THE COURT:  What are you looking
16  for?  The biggest complaint on this is your
17  definition of everything that kind of makes the
18  interrogatory all encompassing for everything
19  that ever happened, is what defendant is
20  suggesting.
21         MR. MOJDEHI:  Right.  Maybe they
22  can -- our theory as the Court has now heard
23  more than once is that these defendants were
24  beholding to the parent and affiliates.  And

140

1  this interrogatory seeks to see the breath and
2  depth of that beholdingness.
3         So what we have asked for is over
4  the legal fees, who did you represent in terms
5  of the officers and directors.  And if you do a
6  Google search, you'll find the chairman of the
7  Canadian parent, Mr. Gallagher, is a famous
8  millionaire, and we suspect there was a certain
9  beholdingness by this law firm and these
10  lawyers.  And that falls squarely within the
11  sample case.  That's what we're after.
12         THE COURT:  Parse it down even
13  more.  I understand, I think I understand what
14  you're after.  Pretty broad, but we'll talk.
15  Okay.
16         MS. QUILLIN:  Your Honor, again,
17  he wants to know everything substantive.  The
18  definitions alone include all the Canadian
19  corporations, Avanar, Paragren, as well as
20  Canadian parent, relationships of all of the
21  officers and directors of parent as well.
22         It's on page 3 of Docket 65 where
23  I go through what the definitions mean and how
24  that compounds this interrogatory.  It doesn't

141

1 go to what happened in Delaware that would
2 confer Delaware jurisdiction on these two
3 individual attorneys.  We're not even talking
4 about the entire law firm of BDP.  Plaintiff
5 hasn't sued the entire law firm, just two
6 lawyers.
7          It's way too broad for
8 jurisdictional purposes.
9          THE COURT:  Well, I think this can
10 be -- I'm throwing out all the definitions.  I
11 do think you could answer that for Lawson and
12 MacKenzie for them to each describe their
13 relationship and the relationship of BDP and I
14 recognize you're already there, but there is a
15 reason for that, to the officers, to each of the
16 officers and directors of Mahalo USA.  Period.
17          In the time period that we have up
18 to the May 21st, 2009 date, fees generated in
19 relationship to Mahalo USA.  And the fees
20 generated in relationship to Mahalo USA that
21 were charged by either Lawson, by MacKenzie, by
22 their firm.
23          MS. QUILLIN:  Okay.
24          THE COURT:  And that would include

142

1 obviously association, legal representation, any
2 service of any board of directors or other
3 governing body for Mahalo USA.  I'm not going to
4 comment any further on the interrogatory, the
5 two interrogatories, and whether it -- whether
6 they are necessarily appropriate even on merits
7 discovery.  That's something for another day.
8          MR. MOJDEHI:  Your Honor, just on
9 this one, here is just to be clear what we're
10 after.  It's really the fees that these
11 individuals and the law firm charged to the
12 parties who we believe they favored.  That's
13 what we're after.  Being the Canadian entity, we
14 just want the number, we don't care --
15          THE COURT:  Beyond how it has any
16 relationship to subject matter -- to subject
17 matter, to personal jurisdiction.  I'm not
18 saying you can't have it later on, but it seems
19 to me -- let me just -- you know, it seems to me
20 the merits, but let me ask this, how difficult
21 is that going to be to find out and the question
22 is whether or not -- the question out there is
23 whether or not there is any type of privilege
24 attributed to this.

143

1          So you'll get it for what was for
2 Mahalo USA, and for what, you know -- I don't
3 know if -- what the fees were annually, whether
4 they billed them monthly.
5          MR. MOJDEHI:  That number really
6 doesn't -- because the way this company worked,
7 Your Honor, what they did was they had an
8 inner-company account, so they charged each
9 other through that inner-company account.
10          THE COURT:  Okay.  So explain
11 that.
12          MR. MOJDEHI:  So we have the bills
13 and --
14          THE COURT:  You have the bills for
15 Mahalo USA?
16          MR. MOJDEHI:  I believe we do,
17 redacted bills, let me add.
18          THE COURT:  Is that the D & O
19 situation?
20          MR. MOJDEHI:  That's the D & O
21 situation and other situations that we can't
22 decipher, of course, because we have just a
23 redacted bill and these bills are to the parent
24 for reasons that I have explained, which is

144

1 there is no distinction made between the two.
2          THE COURT:  I got a question.
3 This is just off the record.  Why haven't these
4 parties been sued in Canada?
5          MR. MOJDEHI:  Well, Your Honor, we
6 sued them in Oklahoma, and when we went -- in
7 the complaint, we allege that the defendants is
8 estopped from asserting that there is no
9 jurisdiction, because when Judge Frizzell threw
10 the case out for lack of jurisdiction.
11          THE COURT:  I think it was lack of
12 personal jurisdiction under these two
13 individuals; right?
14          MR. MOJDEHI:  Everywhere.  And
15 then the Third Circuit reversed.
16          THE COURT:  The Third Circuit?
17          MR. MOJDEHI:  I'm sorry, the Tenth
18 Circuit.  Getting my circuits crossed.  The
19 Third Circuit has a broad reach but not that
20 broad.
21          So the Tenth Circuit reversed and
22 sent it back and I have made a distinction that
23 yes, you have jurisdiction over MacKenzie and
24 Lawson as officers and directors, but you don't

145

1  have jurisdiction over them as lawyers.
2          And then Judge Frizzell in his
3  wisdom decided that there was no pending
4  jurisdiction, even though all these cases, these
5  claims all arise from the same facts.
6          And at the Tenth Circuit when this
7  matter was argued, the question was asked, and
8  if you read the Tenth Circuit's opinion, you see
9  the Tenth Circuit believed that Delaware had
10  jurisdiction, they say it's DICTA, and it was
11  represented to the Tenth Circuit that Delaware
12  had jurisdiction.
13         THE COURT:  By whom?
14         MR. MOJDEHI:  By counsel for the
15  defendants.
16         THE COURT:  You can't give the
17  court either subject matter, jurisdiction or
18  personal jurisdiction.
19         MR. MOJDEHI:  But you can't waive
20  it.  And there is -- and we have so said, one of
21  the grounds for jurisdiction, but --
22         THE COURT:  So you're going to
23  make me waive her argument here?
24         MR. MOJDEHI:  Yes.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

146

1          THE COURT:  But it still doesn't
2  answer my question, how come you didn't sue them
3  in Canada?  It would have saved you a whole lot
4  of effort.
5          MR. MOJDEHI:  Let me put it this
6  way.  We have supreme confidence in the U.S.
7  legal system.
8          THE COURT:  I don't know how it
9  differs from Canada, but I mean, I know that
10  Canada is a little bit different.
11         Okay.  I think we have covered
12  everything.  Is anything left?  Is there any
13  stone that has not been unturned?  I'm sure
14  everybody is so happy with the decisions.  I do
15  -- I'm amazed, I am very amazed that we got this
16  done by ten after 3:00.  I'm impressed because
17  there was a lot of materials to cover in this.
18         As I said to you, counsel, the
19  transcript will serve as the order of the Court.
20  I'm not going to sit there and try to do another
21  order.  I have learned in the past that when I
22  do, you always screw up something.  I prefer for
23  the judge, for myself, for you, to see it in
24  context.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

147

1          Yes, Mr. Semple?
2          MR. SEMPLE:  For purpose of the
3  appeal of this to Judge Andrews, does the timing
4  run from the date we get the transcript or the
5  date it's prepared?
6          THE COURT:  It's actually -- well
7  that's a good question, is it -- I have no idea.
8  I really have no idea.  Because I think the way
9  it's -- we can make it so it's that, if counsel
10  would prefer.
11         MR. SEMPLE:  I just think for how
12  we should conduct ourselves, how we should
13  conduct ourselves I think it would be helpful if
14  we had it clarified by the Court as to when that
15  time runs.
16         THE COURT:  My question is this,
17  I'm the one who controls your time, your page
18  limitation, it all comes back to me.  Okay?  So
19  do you want to have the time start to run from
20  the date the transcript is issued?
21         MR. MOJDEHI:  I think that seems
22  reasonable, Your Honor.
23         THE COURT:  I don't have a problem
24  with it.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

148

1          MS. QUILLIN:  I agree.
2          THE COURT:  I don't have a problem
3  with it, if both sides are in agreement.
4          MR. MOJDEHI:  Frankly part of this
5  exercise is -- which is my next question to the
6  Court, is when are we going to get --
7          THE COURT:  That was -- you're
8  right.  That was one thing that I forgot.  And I
9  wanted to confirm in that regard.  There is
10  certain things that I have required defendants
11  to do, and the timing as to when that
12  information is going to be completed.
13         MR. MOJDEHI:  And there is one I
14  would like to ask for priority.  It's the most
15  easy one, which is for them to figure out if D &
16  O matters relate to the U.S. or not.
17         THE COURT:  All right.
18         MR. MOJDEHI:  And produce that if
19  they would forthwith if it does pertain to the
20  U.S.
21         THE COURT:  By forthwith, what is
22  your suggested time?
23         MR. MOJDEHI:  It's only three or
24  four pages, Your Honor.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

149

1         MS. QUILLIN: But you're talking
2 about --
3         MR. MOJDEHI: The D & O matters.
4         MS. QUILLIN: On the billing?
5         MR. MOJDEHI: Yes.
6         MS. QUILLIN: If you can get me
7 the page number where that is, that would help.
8         THE COURT: Didn't I just --
9 whatever. That was three or four. So I'm
10 thinking ten days from tomorrow. Let's just
11 make it two weeks. Ten days operates that way
12 anyhow. Two weeks for that. The other stuff,
13 how much time do you think you're going to need?
14 You're not going to be filing a brief or doing
15 any of this stuff anyhow until Judge Andrews
16 knows that this matter is completely done.
17         MS. QUILLIN: To the extent you
18 put together the chart, could I have thirty
19 days? I mean, I hate to -- it's going to be my
20 paralegal trying to match up those.
21         THE COURT: I'll definitely --
22 what I'm going to suggest is --
23         MS. QUILLIN: Especially with
24 regard to the 964 documents that we had that may

150

1 take some time, that's been produced, and I
2 don't know for sure how those have been
3 collated.
4         THE COURT: I'll give you thirty
5 days.
6         MR. SEMPLE: Thirty days is July
7 10th. I think July 11th would be better.
8         THE COURT: Thirty days starting
9 tomorrow.
10         MR. SEMPLE: Could we just decide
11 on July 11, if that's agreeable, that way
12 everybody knows a specific date.
13         THE COURT: I understand what
14 you're saying, Mr. Semple, because you're right.
15 I used to hate it when we had just dates, days,
16 just give me a date so I know when I have to do
17 it and get it done, it's on my calendar then.
18 What day of the week is July 11th?
19         MR. SEMPLE: Monday, Your Honor.
20         THE COURT: If you start running
21 into problems, please get to me. I would also
22 appreciate that if problems do exist, you can
23 also do -- if problems start existing you might
24 want to consider rolling discovery in that

151

1 regard so that you have it, you have it, but at
2 this time I want to try to get this done sooner
3 rather than later.
4         MR. MOJDEHI: So there is one
5 other issue, Your Honor. In our request to
6 Judge Andrews, we had reserved the right to take
7 depositions.
8         THE COURT: I didn't sit there and
9 say that you didn't. Did he say that you could
10 or could not?
11         MR. MOJDEHI: His orders were not
12 framed in terms of what kind of discovery.
13 Whether we take depositions or want to take
14 them, we haven't made that decision because we
15 wanted to get the documents first.
16         THE COURT: First to be able to
17 make that determination.
18         MR. MOJDEHI: So I just wanted to
19 alert the Court that --
20         THE COURT: That may be another
21 issue looming out there.
22         MR. MOJDEHI: Right.
23         THE COURT: I'm not going to
24 comment right now on that at all. I could tell

152

1 you in other cases I have allowed it, but it has
2 always been very limited as to who is being
3 deposed. And it's also limited towards the
4 subject matter, which of course may cause some
5 consternation during the actual depositions
6 occurring. I'm not closing that door, but it
7 will in part depend upon what you seek.
8         MR. MOJDEHI: Thank you very much,
9 Your Honor.
10         THE COURT: Thank you all. I
11 appreciate you all being here. I do appreciate
12 that you made a long trip from California and
13 from Oklahoma. And have a wonderful weekend.
14         We are adjourned.
15         (Court adjourned at 3:14 p.m.)
16
17
18
19
20
21
22
23
24

1  State of Delaware )
          )
2  New Castle County )

3
4
5          CERTIFICATE OF REPORTER
6
7          I, Dale C. Hawkins, Registered Merit
8  Reporter, Certified Shorthand Reporter, and Notary
9  Public, do hereby certify that the foregoing record,
10 is a true and accurate transcript of my stenographic
11 notes taken on June 9, 2016, in the above-captioned
12 matter.

13
14         IN WITNESS WHEREOF, I have hereunto set my
15 hand and seal this 20th day of June 2016, at
16 Wilmington.

17
18
19           _/s/ Dale C. Hawkins_
20           Dale C. Hawkins, RMR

21
22
23
24

          Hawkins Reporting Service
   715 North King Street - Wilmington, Delaware 19801
        (302) 658-6697  FAX (302) 658-8418

**$14** [1] - 86:9
**/s** [1] - 153:19
**0** [1] - 51:20
**1** [3] - 130:8, 130:24, 131:10
**10** [1] - 5:19
**10th** [1] - 150:7
**11** [1] - 150:11
**11:00** [1] - 1:11
**11th** [2] - 150:7, 150:18
**128** [4] - 78:22, 79:11, 79:13, 79:14
**131** [2] - 78:22, 79:19
**137** [1] - 101:19
**14** [2] - 86:3, 92:17
**14th** [1] - 7:17
**16th** [2] - 86:8, 118:7
**17** [1] - 117:15
**19th** [1] - 131:12
**1:14-cv-00842-RGA-MPT** [1] - 1:6
**20** [1] - 138:14
**20,000** [2] - 106:23, 106:24
**2006** [1] - 86:8
**2009** [14] - 50:17, 50:22, 118:7, 119:24, 120:2, 120:6, 121:17, 122:22, 124:11, 125:20, 126:21, 127:2, 133:7, 141:18
**2010** [4] - 130:8, 131:10, 131:12, 138:15
**2011** [2] - 6:11, 135:11
**2014** [4] - 6:11, 135:6, 135:10
**2015** [2] - 22:7, 119:19
**2016** [3] - 1:10, 153:11, 153:15
**20th** [1] - 153:15
**21** [6] - 50:17, 50:22, 122:22, 124:11, 125:20, 126:21
**21st** [5] - 119:24, 120:1, 120:5, 127:2, 141:18
**224** [1] - 66:13
**26** [1] - 67:11
**2nd** [1] - 129:9
**3** [3] - 48:13, 48:19, 140:22
**3114** [1] - 15:9
**35** [1] - 14:22
**3:00** [1] - 146:16
**3:14** [1] - 152:15
**405-18** [1] - 22:8

**5** [4] - 74:5, 74:7, 74:8, 78:14
**50** [1] - 98:12
**50,000** [1] - 109:6
**502** [2] - 30:8, 30:10
**502(6** [1] - 31:22
**502(d)(3** [2] - 23:6, 31:18, 35:2
**502(d)(3)** [3] - 21:24, 22:14, 35:5
**502(d)(6** [1] - 35:5
**503(d** [1] - 31:15
**53** [3] - 78:22, 79:6, 79:12
**54** [3] - 74:4, 74:7, 74:8
**54-5** [3] - 40:19, 41:1, 66:11
**57** [3] - 48:7, 48:13, 48:18
**6** [1] - 117:14
**63** [1] - 129:10
**64** [3] - 130:22, 131:1, 131:2
**65** [1] - 140:22
**72** [2] - 117:1, 118:6
**72(a** [1] - 117:2
**800** [1] - 97:8
**838** [7] - 81:16, 83:4, 83:8, 83:9, 83:23, 85:2
**844** [1] - 1:12
**85** [1] - 61:17
**9** [2] - 1:10, 153:11
**900** [1] - 97:9
**958** [2] - 34:14, 34:16
**96** [1] - 61:17
**96-1** [1] - 50:7
**962** [1] - 112:7
**964** [1] - 149:24
**a.m** [1] - 1:11
**A027** [1] - 50:7
**ability** [5] - 28:9, 45:2, 46:22, 67:19, 106:12
**able** [13] - 9:24, 11:15, 38:7, 45:20, 47:9, 59:3, 72:24, 90:3, 107:20, 109:10, 115:11, 132:18, 151:16
**Ableco** [7] - 86:15, 86:17, 90:24, 91:1, 99:19, 102:3, 102:19
**above-captioned** [1] - 153:11
**absolute** [1] - 50:15
**absolutely** [7] - 36:23, 43:1, 43:5, 51:20, 63:15, 68:19, 126:15
**absorbed** [1]

**accept** [2] - 34:6, 45:13
**access** [1] - 134:3
**according** [5] - 44:10, 44:14, 62:18, 62:22, 78:18
**account** [2] - 143:8, 143:9
**accounting** [1] - 93:24
**accurate** [1] - 153:10
**acknowledge** [1] - 88:19
**acknowledged** [1] - 4:22
**act** [2] - 50:9, 90:9
**acting** [3] - 48:10, 64:4, 89:6
**action** [13] - 32:3, 32:4, 48:8, 48:9, 50:5, 50:6, 50:9, 64:3, 73:21, 114:8, 121:23, 123:22, 123:23
**actions** [1] - 125:9
**activities** [3] - 49:24, 53:19, 88:1
**activity** [3] - 87:4, 92:2, 92:4
**actual** [4] - 130:7, 131:1, 131:2, 152:5
**add** [1] - 143:17
**addition** [2] - 7:12, 137:15
**address** [10] - 21:16, 39:15, 41:8, 42:17, 42:22, 48:3, 112:6, 130:14, 130:17, 131:14
**addressed** [1] - 113:18
**addresses** [1] - 35:7
**addressing** [1] - 116:6
**adequacy** [1] - 46:15
**adjourned** [2] - 152:14, 152:15
**admission** [4] - 45:19, 52:21, 120:18
**admissions** [1] - 53:18
**admit** [1] - 69:18
**admitted** [1] - 24:1
**advance** [1] - 88:23
**adversarial** [2] - 135:3, 135:4
**advice** [25] - 48:13, 64:5, 75:6, 79:9, 79:16, 79:24, 80:8, 81:17, 82:12, 83:21, 83:24, 89:8, 89:23,

104:18, 104:20, 104:22, 107:22, 107:24, 110:23, 110:24, 111:3, 131:19
**advise** [2] - 12:21, 129:3
**advised** [6] - 13:22, 89:17, 89:18, 89:19, 134:10, 135:2
**advising** [2] - 94:7, 94:8
**affairs** [3] - 88:16, 88:22, 94:6
**affect** [4] - 36:20, 36:22, 36:24, 86:21
**affected** [2] - 86:21, 105:12
**affidavit** [2] - 11:22, 110:8
**affiliates** [1] - 139:24
**affirmatively** [2] - 23:5, 88:21
**AG** [1] - 91:21
**age** [1] - 79:5
**agent** [6] - 72:1, 72:2, 76:5, 76:12, 76:14, 78:18
**agree** [7] - 19:4, 25:2, 25:23, 32:24, 53:21, 83:15, 148:1
**agreeable** [1] - 150:11
**agreement** [3] - 10:18, 85:15, 148:3
**ahead** [2] - 101:8, 138:18
**al** [2] - 1:4, 1:7
**alert** [1] - 151:19
**Ali** [2] - 3:11, 3:16
**ALI** [1] - 1:23
**allegations** [1] - 132:23
**allege** [2] - 71:3, 144:7
**alleged** [4] - 8:20, 22:24, 37:1, 37:2
**allegedly** [1] - 20:13
**alleges** [1] - 86:1
**allow** [3] - 11:9, 22:16, 104:12
**allowed** [5] - 38:24, 105:19, 116:10, 134:13, 152:1
**allows** [1] - 4:21
**almost** [1] - 79:6
**alone** [3] - 14:12, 79:5, 140:18
**alphabetical** [1] - 69:1
**amazed** [2] - 146:15
**ambiguity** [1] - 21:3

**amended** [4] - 60:21, 60:23, 86:8, 98:11
**Amendment** [1] - 7:17
**amount** [2] - 107:3, 107:4
**analysis** [8] - 8:10, 35:12, 35:13, 82:19, 88:7, 113:21, 115:1, 116:12
**analyze** [1] - 84:5
**Andrews** [16] - 4:18, 10:8, 16:15, 26:19, 31:8, 33:9, 43:2, 71:18, 106:1, 108:9, 115:17, 115:18, 117:4, 147:3, 149:15, 151:6
**Andrews'** [1] - 14:22
**animal** [1] - 7:22
**annotations** [1] - 36:19
**annually** [1] - 143:3
**answer** [12] - 21:21, 21:22, 36:16, 50:23, 53:22, 59:15, 59:24, 88:5, 98:9, 101:14, 141:11, 146:2
**answered** [3] - 18:8, 21:5, 65:7
**anticipated** [1] - 130:7
**anticipation** [1] - 125:5
**Anton** [1] - 22:7
**anyhow** [3] - 43:7, 149:12, 149:15
**anyway** [1] - 50:20
**Apollo** [1] - 74:17
**apparent** [1] - 14:15
**appeal** [1] - 147:3
**Appeals** [3] - 22:8, 22:11, 113:23
**appear** [2] - 56:15, 78:19
**APPEARANCES** [2] - 1:18, 2:1
**applicable** [1] - 24:19
**application** [5] - 24:22, 26:13, 33:21, 98:2, 98:4
**applications** [1] - 25:12
**applied** [3] - 38:5, 57:2, 57:3
**apply** [6] - 25:17, 26:1, 27:7, 29:14, 66:23, 72:3
**appointed** [1] - 138:24
**appreciate** [4] - 121:4, 150:22, 152:11
**approach** [7] - 10:24,

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697   FAX (302) 658-8418
06/22/2016 08:14:27 AM

40 of 56 sheets

18:13, 18:14, 18:16, 34:7, 112:1, 117:16
**approached** [1] - 38:2
**appropriate** [5] - 4:11, 26:15, 26:16, 112:20, 142:6
**April** [2] - 129:9, 138:14
**area** [2] - 110:17, 112:14
**argue** [2] - 86:10, 89:5
**argued** [2] - 58:24, 145:7
**arguing** [1] - 108:3
**argument** [45] - 5:4, 5:6, 6:9, 7:19, 11:2, 11:5, 11:9, 11:11, 11:13, 20:11, 29:22, 38:19, 42:7, 42:10, 42:11, 44:21, 46:3, 48:24, 49:12, 49:21, 63:10, 63:21, 64:23, 67:10, 67:12, 85:24, 87:11, 89:2, 91:19, 93:8, 94:13, 95:11, 99:15, 104:13, 106:8, 110:4, 110:11, 113:11, 122:21, 124:1, 124:3, 124:10, 124:12, 125:12, 145:23
**arguments** [9] - 10:10, 18:4, 18:18, 71:15, 93:16, 93:17, 96:20, 115:10, 118:21
**arise** [1] - 145:5
**arising** [2] - 34:20, 50:9
**arms** [1] - 45:7
**arose** [1] - 45:15
**article** [1] - 34:17
**aspect** [10] - 5:14, 35:7, 97:24, 99:14, 100:20, 111:19, 113:16, 127:5, 132:14, 139:8
**aspects** [2] - 7:16, 10:13
**assert** [1] - 56:9
**asserted** [2] - 54:15, 65:2
**asserting** [3] - 17:5, 17:17, 144:8
**assets** [1] - 133:11
**assistance** [1] - 10:22
**association** [1] - 142:1
**assume** [8] - 37:12, 37:14, 42:2, 46:22,

51:10, 100:8, 109:20, 138:24
**assuming** [5] - 28:1, 100:11, 103:13, 122:11, 134:3
**assumption** [1] - 102:16
**attached** [8] - 13:4, 33:17, 34:5, 60:16, 62:7, 78:13, 78:14, 129:13
**attachment** [1] - 34:3
**attachments** [2] - 12:23, 78:14
**attorney** [17] - 20:8, 20:16, 22:22, 23:1, 24:11, 25:20, 27:18, 27:19, 28:7, 28:16, 28:17, 30:2, 30:5, 66:23, 68:12, 72:2, 135:11
**attorney's** [5] - 45:13, 70:11, 90:12, 90:13, 136:6
**attorney/client** [15] - 17:5, 17:13, 17:16, 20:15, 21:9, 22:18, 24:6, 25:22, 28:19, 30:4, 34:18, 56:3, 66:22, 86:24, 114:6
**attorneys** [13] - 13:14, 14:20, 17:4, 21:13, 23:17, 23:21, 24:3, 93:21, 96:24, 134:11, 141:3
**attributed** [1] - 142:24
**auditors** [1] - 93:12
**augment** [1] - 111:14
**August** [1] - 86:8
**author** [3] - 71:23, 72:1
**author's** [1] - 72:6
**authority** [4] - 50:4, 50:19, 50:20, 50:21
**authorization** [2] - 91:6, 98:16
**authorized** [2] - 4:19, 110:14
**available** [3] - 71:23, 83:4, 127:21
**Avanar** [1] - 140:19
**Avanere** [5] - 95:12, 95:18, 95:20, 95:22, 96:9
**avoid** [1] - 18:9
**avoidance** [2] - 50:5, 50:6, 50:9
**aware** [13] - 7:6, 54:19, 71:9, 98:12, 122:7, 124:2, 124:7,

125:2, 128:12, 128:14, 128:16, 129:1
**backdoor** [1] - 10:10
**backdooring** [1] - 10:11
**Bancario** [1] - 95:17
**Bank** [1] - 86:7
**bank** [1] - 92:19
**bankrupt** [1] - 14:8
**bankruptcy** [67] - 37:17, 37:22, 45:15, 45:19, 45:23, 46:2, 46:15, 49:19, 49:20, 50:2, 50:10, 50:12, 50:14, 50:18, 51:8, 51:11, 52:10, 52:15, 52:23, 53:9, 53:13, 53:20, 53:23, 54:1, 54:2, 54:14, 55:13, 55:15, 55:23, 71:11, 111:18, 118:19, 119:4, 120:13, 121:21, 122:2, 122:6, 122:21, 123:11, 123:21, 124:4, 124:10, 125:1, 125:15, 126:1, 126:3, 126:4, 126:11, 126:12, 126:24, 131:9, 133:7, 133:9, 133:10, 133:22, 134:1, 134:2, 134:20, 134:21, 136:7, 136:9, 137:7, 137:8, 137:17, 137:23, 137:24
**base** [1] - 120:16
**baseballs** [1] - 71:20
**based** [13] - 6:16, 14:23, 29:8, 29:17, 38:4, 39:11, 70:23, 90:6, 100:20, 102:17, 109:18, 115:2
**basis** [6] - 18:3, 39:14, 93:10, 93:11, 95:13, 120:15
**Bates** [1] - 61:5
**BDP** [10] - 12:13, 12:14, 12:18, 12:21, 13:6, 13:7, 13:15, 89:22, 141:4, 141:13
**became** [6] - 55:8, 85:17, 122:7, 128:12, 128:13, 133:6
**become** [2] - 69:21, 128:16

**becomes** [1] - 38:10
**bed** [1] - 126:8
**BEFORE** [1] - 1:15
**begin** [1] - 84:16
**beginning** [2] - 5:13, 105:17
**behalf** [4] - 3:8, 3:24, 4:5, 123:14
**behind** [1] - 105:14
**beholding** [1] - 139:24
**beholdingness** [2] - 140:2, 140:9
**beings** [1] - 88:17
**belong** [1] - 123:23
**belonged** [1] - 123:24
**belonging** [1] - 56:9
**bench** [1] - 47:3
**benefit** [2] - 60:9, 86:5
**best** [3] - 26:4, 52:20, 67:19
**better** [4] - 36:1, 111:15, 130:13, 150:7
**between** [16] - 14:19, 20:3, 22:22, 27:1, 27:16, 28:10, 31:23, 32:3, 32:5, 47:10, 83:14, 84:7, 85:22, 90:20, 93:5, 144:1
**beyond** [5] - 53:5, 59:2, 120:1, 130:18, 142:15
**big** [2] - 118:18, 123:20
**biggest** [1] - 139:16
**bill** [1] - 143:23
**billed** [2] - 56:24, 143:4
**billing** [9] - 37:6, 45:8, 46:14, 51:23, 56:18, 56:19, 58:7, 58:8, 149:4
**billings** [1] - 44:19
**bills** [9] - 44:19, 57:20, 57:21, 119:6, 119:7, 143:12, 143:14, 143:17, 143:23
**bit** [4] - 108:6, 132:9, 132:16, 146:10
**blank** [1] - 58:10
**blanket** [2] - 121:20, 122:16
**blind** [1] - 69:21
**block** [1] - 68:21
**blown** [1] - 108:7
**board** [14] - 44:6, 62:11, 62:14, 62:16, 62:21, 89:18, 90:4, 103:7, 103:9,

105:9, 108:15, 142:2
**Boca** [1] - 100:9
**body** [1] - 142:3
**bottom** [2] - 61:6, 100:4
**box** [3] - 8:2, 11:14, 117:8
**breach** [7] - 22:24, 23:8, 31:20, 32:13, 34:19, 88:13, 113:15
**breaches** [1] - 87:16
**break** [4] - 71:14, 85:12, 121:2, 121:8
**breath** [4] - 8:23, 9:21, 71:8, 140:1
**brief** [5] - 15:16, 36:4, 85:13, 121:10, 149:14
**briefing** [1] - 116:9
**bring** [3] - 5:19, 26:18, 31:4
**broad** [4] - 140:14, 141:7, 144:19, 144:20
**broadens** [1] - 8:23
**broader** [1] - 10:24
**Brodowski** [1] - 80:13
**brought** [3] - 58:12, 95:4, 107:7
**brush** [1] - 10:24
**bullet** [1] - 78:2
**Burnet** [1] - 12:14
**Burnett** [1] - 70:6
**business** [4] - 15:19, 15:22, 90:7, 107:15
**buys** [1] - 51:13
**BY** [4] - 1:20, 1:23, 2:4, 2:7
**C4** [1] - 95:3
**calendar** [1] - 150:17
**California** [24] - 22:1, 22:8, 22:11, 25:23, 26:1, 26:11, 30:7, 30:23, 31:2, 31:5, 32:22, 32:24, 33:6, 33:8, 34:13, 34:15, 34:16, 36:14, 38:7, 86:7, 111:21, 113:23, 118:15, 152:12
**camera** [2] - 58:2, 58:9
**Canada** [22] - 14:19, 41:16, 41:21, 43:4, 43:22, 49:3, 56:20, 58:22, 87:13, 87:14, 90:20, 92:10, 99:6, 99:8, 105:15, 107:14, 108:20, 119:1, 144:4, 146:3, 146:9, 146:10

**Canadian** [40] - 12:22, 13:3, 13:8, 13:19, 13:22, 14:6, 14:7, 14:18, 14:19, 14:20, 17:4, 49:7, 49:14, 49:15, 51:23, 62:8, 75:6, 75:8, 75:9, 82:8, 82:9, 82:14, 85:22, 85:23, 86:20, 93:5, 96:24, 107:14, 108:18, 123:5, 123:6, 126:11, 134:5, 136:11, 136:12, 140:7, 140:18, 140:20, 142:13

**cannot** [4] - 14:9, 20:8, 20:10, 25:19, 25:21, 65:15, 113:10, 113:11

**capabilities** [1] - 59:2

**capacities** [1] - 67:23

**capacity** [1] - 67:24

**captioned** [1] - 153:11

**care** [2] - 58:5, 142:14

**careful** [1] - 36:15

**carry** [1] - 46:4

**Case** [1] - 1:6

**case** [79] - 6:2, 6:10, 6:12, 8:16, 9:8, 10:3, 18:19, 18:22, 19:3, 19:14, 19:24, 20:1, 20:19, 21:1, 22:2, 22:7, 24:23, 24:24, 25:1, 25:6, 25:8, 25:10, 25:11, 25:23, 26:1, 28:12, 30:19, 31:5, 32:10, 33:6, 33:8, 35:9, 37:15, 38:22, 39:1, 39:12, 39:13, 39:14, 47:1, 47:8, 47:18, 48:1, 50:4, 51:20, 52:7, 52:11, 87:16, 87:19, 87:20, 87:22, 88:10, 89:1, 94:9, 96:17, 102:10, 105:24, 106:19, 107:21, 108:8, 110:16, 112:8, 112:12, 112:14, 113:17, 113:18, 113:19, 116:24, 117:18, 122:20, 125:23, 132:1, 132:13, 135:6, 136:13, 139:8, 140:11, 144:10

**cases** [5] - 6:16, 7:20, 20:20, 145:4, 152:1

**Castle** [1] - 153:2

**category** [6] - 16:14, 45:5, 45:7, 46:20, 69:14, 73:3

**caused** [3] - 16:17, 90:14, 90:21

**causes** [4] - 87:5, 90:8, 121:23, 123:22

**caveat** [1] - 19:16

**central** [1] - 70:13

**CEO** [1] - 80:13

**certain** [15] - 3:5, 4:10, 10:13, 41:24, 47:16, 75:3, 75:23, 78:19, 84:14, 95:7, 96:17, 110:16, 132:13, 140:8, 148:10

**certainly** [9] - 26:18, 47:19, 50:20, 59:2, 101:14, 113:19, 134:9, 137:4, 137:24

**certificate** [2] - 76:17, 87:24

**CERTIFICATE** [1] - 153:5

**Certified** [1] - 153:8

**certify** [1] - 153:9

**chairman** [1] - 140:6

**challenge** [1] - 16:21

**chance** [1] - 98:7

**chancery** [1] - 87:20

**change** [1] - 101:16

**changed** [3] - 72:13, 72:14, 95:4

**character** [1] - 90:7

**charged** [3] - 141:21, 142:11, 143:8

**chart** [2] - 105:1, 149:18

**check** [17] - 8:2, 47:5, 47:22, 70:13, 77:7, 80:18, 87:23, 97:19, 101:15, 104:8, 109:11, 110:15, 110:17, 119:12, 125:17, 129:5

**checked** [3] - 64:9, 97:22, 133:15

**checks** [1] - 122:8

**Chief** [2] - 6:12, 91:23

**chief** [2] - 15:11, 15:12

**chose** [1] - 88:17

**chosen** [1] - 88:14

**Circuit** [16] - 21:5, 23:15, 24:18, 24:19, 25:24, 33:20, 33:21, 35:13, 144:15, 144:16, 144:18, 144:19, 144:21, 145:6, 145:9, 145:11

**Circuit's** [2] - 26:13, 145:8

**circuits** [1] - 144:18

**circumstance** [7] - 20:17, 26:16, 27:13, 27:22, 28:13, 28:15

**circumstances** [2] - 130:11, 131:22

**citation** [1] - 34:13

**cited** [3] - 22:1, 33:10, 112:9

**cites** [1] - 50:21

**Civil** [2] - 117:2, 118:6

**claim** [8] - 21:9, 41:15, 42:16, 50:9, 56:8, 91:2, 106:23, 108:6

**claimed** [2] - 18:7, 86:5

**claims** [26] - 50:1, 53:10, 53:12, 53:24, 54:2, 54:14, 54:19, 54:22, 54:23, 56:9, 71:10, 93:19, 96:23, 108:8, 122:7, 122:23, 124:5, 125:2, 128:12, 128:16, 131:9, 135:4, 135:11, 138:19, 145:5

**clarification** [1] - 74:22

**clarified** [2] - 104:21, 147:14

**clarify** [1] - 77:11

**clause** [2] - 90:11, 90:16

**clean** [2] - 121:2, 127:21

**cleaned** [2] - 127:10, 127:18

**cleaning** [1] - 120:22

**clear** [8] - 18:20, 19:4, 43:1, 78:10, 99:16, 125:10, 130:21, 142:9

**clearly** [2] - 65:7, 114:20

**clerk** [1] - 40:6

**client** [39] - 17:6, 19:16, 20:7, 20:9, 20:10, 22:16, 22:22, 23:2, 23:5, 23:9, 23:10, 23:16, 24:8, 24:9, 24:10, 24:13, 24:15, 26:14, 27:14, 27:19, 27:20, 31:21, 32:8, 32:13, 32:18, 34:20, 87:18, 88:24, 89:21, 89:24, 96:12, 110:3, 110:6, 113:9, 113:10, 113:13, 113:15

**client's** [1] - 22:17

**clients** [19] - 19:19, 19:20, 20:6, 20:8, 22:5, 24:3, 24:16, 27:17, 31:24, 32:4, 32:15, 32:16, 44:4, 60:7, 65:15, 65:17, 68:3, 114:2, 129:3

**closing** [1] - 152:6

**co** [3] - 19:19, 19:20, 24:3

**co-clients** [3] - 19:19, 19:20, 24:3

**coal** [1] - 126:8

**code** [7] - 30:13, 30:16, 34:13, 34:15, 34:16, 35:11, 118:15

**Code** [4] - 5:19, 15:1, 15:3, 112:6

**collated** [1] - 150:3

**collusion** [1] - 22:21

**colossal** [1] - 109:8

**column** [1] - 66:19

**combination** [1] - 132:21

**coming** [1] - 71:10

**comment** [4] - 33:3, 56:22, 142:4, 151:24

**comments** [3] - 38:4, 53:15, 53:17

**committee** [6] - 54:9, 55:23, 103:14, 103:16, 104:3, 104:8

**committees** [2] - 103:15, 104:3

**common** [6] - 24:3, 31:23, 32:2, 34:9, 114:2, 124:19

**communicate** [1] - 24:4

**communication** [6] - 23:8, 24:15, 31:22, 32:1, 34:18, 49:15

**communications** [1] - 19:17, 19:22, 22:19, 24:4, 24:11, 24:12, 24:16, 74:23, 75:17, 122:3

**companies** [6] - 85:22, 86:23, 87:1, 126:9, 133:24, 134:20

**company** [13] - 54:14, 62:8, 62:11, 62:14, 72:1, 72:4, 72:7, 127:10, 127:12, 127:15, 143:6, 143:8, 143:9

**compare** [2] - 22:12, 30:23

**compared** [1] - 6:15

**compelled** [1] - 19:18

**complained** [1] - 66:16

**complaint** [13] - 12:3, 12:5, 49:22, 49:23, 60:16, 60:20, 60:23, 71:3, 86:1, 98:11, 129:13, 139:16, 144:7

**complete** [1] - 111:15

**completed** [1] - 148:12

**completely** [4] - 10:10, 20:16, 114:24, 149:16

**comply** [2] - 13:2, 82:14

**compounds** [1] - 140:24

**computer** [4] - 70:5, 70:7, 70:11, 70:16

**computers** [2] - 133:12, 133:14

**conceptually** [1] - 29:20

**concern** [9] - 24:12, 72:18, 72:19, 74:21, 75:13, 81:8, 105:18, 128:20, 130:17

**concerned** [3] - 32:11, 105:16, 127:6

**concerning** [4] - 6:13, 74:1, 77:9, 81:2

**concerns** [5] - 39:1, 72:21, 80:23, 87:23, 119:19

**conclusions** [1] - 115:1

**conduct** [7] - 8:22, 90:12, 90:13, 90:18, 94:17, 147:12, 147:13

**confer** [1] - 141:2

**confesses** [1] - 46:2

**confidence** [2] - 24:5, 146:6

**confidential** [2] - 112:23, 113:12

**confirm** [7] - 75:16, 75:20, 76:1, 77:8, 98:1, 111:9, 148:9

**confirmed** [2] - 138:9, 138:13

**confirms** [1] - 64:15

**consent** [3] - 8:5, 24:7

**consider** [6] - 48:14, 80:22, 91:20, 91:21,

91:22, 150:24
**considerations** [1] - 87:4
**considered** [1] - 25:11
**consistency** [1] - 136:23
**consistent** [5] - 30:8, 83:12, 96:11, 111:12, 127:14
**consolidated** [3] - 84:8, 93:9, 93:11
**consolidation** [1] - 93:12
**conspiracy** [5] - 8:18, 39:14, 49:24, 91:4, 98:14
**consternation** [1] - 152:5
**constitution** [1] - 7:13
**constitutional** [2] - 7:16, 8:11
**construction** [1] - 9:11
**consulted** [1] - 32:2
**contacted** [1] - 17:10
**contain** [1] - 83:22
**contained** [2] - 42:9, 118:1
**context** [11] - 7:19, 8:4, 9:2, 9:22, 39:11, 52:17, 71:8, 84:12, 94:20, 122:5, 146:24
**continue** [1] - 53:5
**CONTINUED** [1] - 2:1
**continued** [3] - 50:1, 77:24, 123:19
**continuing** [1] - 55:4
**continuous** [1] - 7:19
**contrary** [1] - 124:3
**control** [5] - 14:4, 102:8, 136:4, 137:9, 138:22
**controlled** [3] - 105:5, 108:18, 137:18
**controls** [1] - 147:17
**conversation** [1] - 110:10
**conversations** [1] - 62:7
**convert** [2] - 8:19, 14:13
**converts** [1] - 14:14
**Cooch** [1] - 3:24
**COOCH** [1] - 2:4
**Cooley** [1] - 3:12
**COOLEY** [1] - 1:22
**coordinating** [1] - 103:3
**copied** [1] - 14:17
**copies** [1] - 62:7

**copy** [13] - 31:1, 31:5, 33:5, 33:7, 33:11, 39:20, 39:24, 40:3, 40:5, 55:17, 55:19, 55:20, 91:7
**corporate** [19] - 15:6, 15:7, 16:19, 63:2, 89:18, 94:6, 94:8, 95:22, 103:20, 107:22, 107:23, 108:1, 110:23, 111:1, 111:2, 120:9, 120:11, 137:15, 137:21
**Corporation** [19] - 76:3, 76:4, 76:15, 76:16, 77:3, 77:9, 77:18, 77:24, 78:1, 78:16, 79:10, 79:17, 80:1, 80:3, 81:2, 81:3, 110:10, 110:13, 110:18
**corporation** [14] - 14:7, 55:3, 55:11, 55:13, 88:12, 88:23, 89:7, 89:9, 94:6, 94:17, 100:12, 100:16, 132:24, 136:4
**corporation's** [1] - 136:6
**corporations** [8] - 6:3, 6:5, 84:10, 86:20, 88:16, 93:5, 111:2, 140:19
**correct** [13] - 32:10, 41:22, 57:15, 74:15, 78:23, 85:18, 85:19, 97:14, 100:5, 120:3, 120:12, 123:15, 134:22
**correctly** [1] - 132:12
**correlation** [1] - 62:9
**correspondence** [3] - 79:10, 79:16, 79:24
**Counsel** [2] - 1:24, 2:8
**counsel** [45] - 4:8, 6:4, 20:13, 40:15, 42:17, 43:19, 52:11, 57:5, 57:8, 57:15, 58:19, 59:12, 59:13, 59:20, 59:22, 59:23, 60:1, 60:2, 64:24, 68:11, 74:14, 79:9, 79:15, 79:23, 89:5, 89:7, 109:9, 111:3, 111:8, 118:14, 118:24, 120:16, 120:19, 121:8, 126:10, 126:11, 130:13,

133:10, 134:9, 134:21, 137:8, 137:24, 145:14, 146:19, 147:9
**counsel's** [1] - 70:16
**County** [1] - 153:2
**course** [19] - 7:12, 8:3, 19:22, 22:19, 25:3, 46:2, 50:19, 52:22, 72:13, 122:6, 123:21, 124:3, 127:17, 128:3, 128:4, 135:5, 137:17, 143:22, 152:4
**court** [20] - 22:14, 26:12, 30:7, 35:12, 45:14, 47:15, 51:7, 51:8, 55:15, 87:21, 88:11, 89:4, 90:10, 97:16, 112:20, 117:20, 117:21, 117:24, 132:2, 145:17
**Court** [42] - 4:21, 6:11, 7:15, 10:8, 12:24, 15:23, 19:15, 22:7, 22:8, 22:11, 26:8, 31:5, 33:4, 33:13, 38:17, 41:7, 43:19, 64:2, 66:2, 67:19, 68:8, 80:22, 82:22, 94:4, 98:12, 99:18, 101:24, 102:2, 106:5, 112:19, 113:23, 114:21, 115:12, 118:3, 120:12, 122:5, 139:22, 146:19, 147:14, 148:6, 151:19, 152:15
**COURT** [366] - 1:1, 3:1, 3:13, 3:19, 4:7, 6:23, 7:7, 7:14, 8:7, 8:13, 9:5, 10:7, 11:6, 12:7, 12:19, 13:14, 13:24, 16:1, 16:10, 17:18, 17:22, 18:3, 18:21, 19:2, 19:10, 19:13, 21:4, 21:21, 22:4, 22:10, 23:13, 24:2, 24:21, 25:8, 25:18, 26:10, 26:23, 27:8, 27:12, 28:4, 29:1, 29:6, 29:23, 30:9, 30:14, 30:17, 31:1, 31:7, 31:12, 31:14, 31:20, 32:7, 32:22, 33:5, 33:15, 33:18, 33:24, 34:4,

34:8, 35:3, 35:17, 35:19, 35:23, 36:5, 36:8, 36:11, 36:18, 37:4, 37:7, 37:10, 37:12, 37:19, 38:12, 38:20, 39:18, 39:23, 40:2, 40:5, 40:9, 40:15, 40:20, 41:2, 41:11, 41:20, 41:24, 42:6, 42:9, 42:23, 43:6, 43:12, 43:16, 44:1, 44:21, 45:9, 45:11, 46:11, 46:13, 47:1, 48:16, 49:21, 51:3, 51:6, 51:15, 52:2, 52:5, 52:24, 53:4, 53:11, 53:15, 54:5, 54:16, 54:21, 55:2, 55:7, 55:10, 55:16, 55:19, 56:2, 56:12, 56:17, 56:23, 57:7, 57:13, 57:23, 58:4, 58:8, 58:13, 58:17, 59:6, 59:11, 59:16, 59:22, 60:1, 60:17, 60:20, 60:24, 61:3, 61:8, 61:10, 61:14, 61:19, 61:23, 62:2, 62:5, 62:17, 62:23, 63:17, 63:21, 64:7, 64:18, 65:6, 65:12, 65:17, 65:22, 66:6, 66:10, 66:13, 67:10, 67:15, 68:6, 68:10, 68:16, 69:5, 69:11, 70:4, 70:10, 70:15, 71:4, 71:13, 73:8, 73:23, 74:7, 74:16, 74:20, 75:2, 75:13, 75:19, 75:22, 76:11, 76:19, 77:1, 77:7, 77:12, 77:17, 78:3, 78:7, 78:11, 78:21, 78:24, 79:4, 79:11, 79:13, 79:18, 79:22, 80:2, 80:6, 80:16, 81:10, 81:21, 81:23, 82:3, 82:24, 83:8, 83:15, 83:19, 84:9, 84:13, 85:8, 85:11, 85:14, 85:24, 87:2, 87:10, 87:22, 89:23, 90:5, 91:7, 91:10, 91:15, 92:13, 92:24, 93:6, 94:19, 94:23, 95:16, 96:15, 97:12, 97:18, 98:7, 98:18, 98:22, 99:1, 99:10, 99:20, 100:7, 100:15, 101:4,

102:1, 102:14, 102:23, 103:13, 104:2, 104:7, 104:12, 104:19, 105:8, 105:16, 106:17, 106:21, 107:2, 107:16, 107:23, 109:1, 109:19, 109:23, 110:1, 110:5, 110:12, 111:22, 112:2, 112:5, 112:11, 112:13, 113:6, 114:5, 114:18, 114:23, 115:15, 117:10, 117:23, 119:3, 119:7, 119:11, 119:14, 119:18, 120:15, 120:22, 121:1, 121:6, 121:11, 121:14, 122:17, 123:2, 123:6, 123:13, 123:16, 124:6, 124:9, 124:20, 125:6, 125:11, 125:19, 126:4, 126:13, 127:4, 127:11, 127:20, 128:1, 128:4, 128:7, 128:15, 128:20, 129:5, 129:14, 129:18, 129:20, 129:22, 130:3, 130:15, 130:24, 131:4, 131:7, 131:15, 132:8, 133:2, 133:14, 134:7, 134:24, 135:13, 136:10, 136:12, 136:19, 137:2, 137:20, 138:4, 138:6, 138:10, 138:16, 139:2, 139:5, 139:15, 140:12, 141:9, 141:24, 142:15, 143:10, 143:14, 143:18, 144:2, 144:11, 144:16, 145:13, 145:16, 145:22, 146:1, 146:8, 147:6, 147:16, 147:23, 148:2, 148:7, 148:17, 148:21, 149:8, 149:21, 150:4, 150:8, 150:13, 150:20, 151:8, 151:16,

151:20, 151:23, 152:10
**Court's** [4] - 28:23, 38:4, 115:13, 118:8
**courtroom** [2] - 7:3, 35:24
**cover** [2] - 23:13, 146:17
**covered** [1] - 146:11
**covers** [1] - 118:11
**Craig** [1] - 67:21
**create** [1] - 23:16
**created** [4] - 21:3, 49:19, 52:18, 52:19
**credit** [6] - 86:6, 86:15, 86:17, 97:1, 97:2, 97:24
**creditors** [3] - 54:9, 123:24, 126:9
**crib** [1] - 68:7
**cross** [1] - 44:5
**crossed** [1] - 144:18
**CT** [21] - 76:3, 76:4, 76:9, 76:11, 76:15, 76:16, 77:3, 77:8, 77:18, 77:23, 77:24, 78:16, 79:10, 79:17, 80:1, 80:2, 81:2, 81:3, 110:10, 110:13, 110:18
**custom** [1] - 127:14
**cutoff** [5] - 50:15, 120:14, 124:11, 125:10, 125:20
**cutting** [1] - 11:8
**daily** [1] - 73:18
**Daimler** [1] - 91:21
**Dale** [3] - 153:7, 153:19, 153:20
**date** [28] - 37:20, 37:21, 45:17, 49:20, 50:11, 50:15, 50:17, 50:18, 70:22, 118:6, 120:10, 120:13, 120:14, 124:11, 124:24, 125:10, 125:20, 126:21, 128:10, 128:13, 129:7, 130:11, 141:18, 147:4, 147:5, 147:20, 150:12, 150:16
**dates** [3] - 130:5, 131:6, 150:15
**DAVID** [1] - 1:4
**Davis** [1] - 3:10
**DAVIS** [1] - 1:20
**days** [11] - 115:16, 116:15, 117:13, 149:10, 149:11,

149:19, 150:5, 150:6, 150:8, 150:15
**de** [2] - 15:12, 89:6
**De** [1] - 80:13
**deal** [5] - 8:11, 14:5, 18:11, 58:5, 114:16
**dealing** [6] - 7:20, 8:6, 25:15, 54:17, 54:19, 119:20
**deals** [6] - 22:2, 67:16, 81:16, 108:12, 118:9, 121:14
**dealt** [7] - 4:10, 4:12, 47:9, 73:15, 93:1, 93:4, 121:15
**death** [1] - 30:22
**debate** [1] - 28:24
**debt** [6] - 86:3, 86:9, 86:12, 86:14, 92:17, 98:12
**decide** [4] - 5:7, 25:19, 116:23, 150:10
**decided** [7] - 27:21, 30:20, 48:5, 58:22, 94:19, 115:24, 145:3
**decides** [2] - 27:15, 27:19, 30:2
**deciding** [2] - 69:21, 117:5
**decipher** [2] - 45:3, 143:22
**decision** [11] - 18:19, 91:22, 94:24, 95:2, 115:17, 116:15, 116:23, 117:6, 118:11, 126:16, 151:14
**decisions** [2] - 7:15, 116:5, 146:14
**declaration** [6] - 11:24, 12:2, 107:12, 110:8, 130:21, 131:3
**declarations** [5] - 9:18, 10:1, 63:6, 89:13, 89:14
**deeper** [1] - 21:23
**default** [1] - 19:21
**defendant** [9] - 6:19, 16:19, 48:10, 74:22, 111:13, 115:19, 120:4, 132:11, 139:19
**defendants** [33] - 4:1, 4:6, 9:17, 12:12, 13:20, 14:4, 15:2, 86:2, 88:21, 89:13, 94:1, 97:3, 106:6, 111:5, 122:7, 122:23, 123:3, 125:1, 125:23,

126:18, 128:11, 128:13, 131:21, 132:7, 132:23, 135:5, 135:15, 135:17, 138:20, 139:23, 144:7, 145:15, 148:10
**Defendants** [2] - 1:8, 2:8
**defense** [12] - 5:8, 11:10, 42:10, 42:12, 62:19, 63:6, 113:12, 118:14, 118:24, 122:8, 130:12, 136:24
**defies** [1] - 124:19
**defined** [2] - 14:24, 15:2
**definitely** [2] - 38:23, 149:21
**definition** [4] - 50:5, 65:10, 125:8, 139:17
**definitions** [3] - 140:18, 140:23, 141:10
**degree** [3] - 4:23, 5:1, 41:10
**Del** [1] - 100:9
**DELAWARE** [1] - 1:2
**Delaware** [60] - 1:13, 4:17, 5:19, 7:9, 8:17, 14:13, 14:14, 14:23, 15:1, 15:3, 16:20, 21:24, 23:12, 25:7, 25:9, 25:12, 26:2, 30:7, 30:15, 30:17, 30:19, 30:23, 31:12, 31:13, 35:2, 38:8, 38:23, 49:16, 51:13, 76:8, 76:24, 86:11, 88:2, 88:11, 88:12, 88:20, 88:22, 89:7, 89:8, 89:10, 89:15, 92:22, 93:15, 93:22, 96:22, 111:5, 113:4, 113:6, 124:17, 126:1, 129:2, 134:5, 135:9, 141:1, 141:2, 145:9, 145:11, 153:1
**Delaware's** [1] - 22:12
**denying** [1] - 5:9
**deposed** [1] - 152:3
**depositions** [5] - 45:20, 45:21, 151:7, 151:13, 152:5
**depth** [1] - 140:2
**describe** [1] - 141:12
**described** [3] - 48:6, 59:17, 79:1
**description** [5] -

72:20, 73:4, 79:1, 103:8, 111:16
**descriptions** [1] - 29:9
**designated** [4] - 50:5, 50:6, 50:8, 66:18
**designation** [1] - 15:12
**desire** [2] - 9:14, 43:9
**desk** [3] - 47:4, 47:5, 47:23
**destroyed** [5] - 127:24, 128:8, 128:10, 128:11, 130:9
**destruction** [2] - 130:12, 131:23
**detailing** [2] - 73:6, 73:9
**determination** [6] - 5:17, 59:21, 60:2, 60:3, 111:10, 151:17
**determine** [2] - 47:13, 106:5
**determined** [3] - 29:16, 86:3, 97:4
**determining** [3] - 44:1, 44:2, 96:21
**devoid** [1] - 9:20
**DI** [1] - 40:24
**DICTA** [1] - 145:10
**difference** [4] - 6:5, 24:24, 36:12, 51:2
**different** [12] - 7:22, 18:16, 20:17, 28:1, 28:15, 34:11, 38:3, 61:5, 91:23, 114:3, 126:20, 146:10
**differently** [1] - 7:24
**differs** [2] - 19:24, 146:9
**difficult** [2] - 73:10, 142:20
**difficulty** [5] - 9:1, 20:24, 63:5, 106:16, 129:23
**dig** [2] - 21:23
**digs** [1] - 21:24
**dilemma** [1] - 9:3
**direct** [3] - 48:12, 62:9, 64:1
**directed** [1] - 128:22
**direction** [5] - 6:17, 6:19, 62:10, 62:13, 62:21
**directly** [3] - 35:6, 35:7, 113:19
**director** [2] - 15:5, 67:22
**directors** [12] - 8:5, 27:12, 52:4, 59:10,

62:11, 62:14, 103:7, 140:5, 140:21, 141:16, 142:2, 144:24
**dis** [1] - 32:6
**disadvantage** [1] - 36:7
**disagree** [6] - 26:17, 28:24, 29:21, 114:11, 116:12, 116:13
**disagreeing** [1] - 115:13
**disappeared** [1] - 132:6
**disclosure** [1] - 82:11
**disclosures** [1] - 19:18
**disconnect** [1] - 132:9
**discoverable** [2] - 19:23, 45:16
**discovered** [1] - 135:20
**discovery** [50] - 4:19, 4:23, 5:1, 5:10, 8:24, 9:10, 9:21, 9:23, 10:4, 10:6, 10:9, 11:16, 29:17, 38:24, 39:4, 39:5, 39:6, 39:12, 50:16, 71:8, 75:24, 84:15, 84:21, 84:22, 105:23, 106:3, 106:10, 107:10, 108:7, 111:18, 115:10, 116:8, 116:9, 118:18, 119:3, 119:20, 121:15, 125:21, 126:14, 126:19, 130:18, 132:2, 132:4, 132:6, 132:13, 132:18, 134:14, 142:7, 150:24, 151:12
**discrete** [2] - 114:15, 117:8
**discuss** [1] - 26:22
**discussed** [2] - 111:17, 115:19
**discussing** [1] - 6:3
**discussion** [2] - 105:18, 112:17
**Discussion** [1] - 130:2
**dismiss** [7] - 9:3, 9:19, 9:20, 11:24, 12:1, 12:6, 12:10
**dismissed** [1] - 135:11
**disposition** [1] - 12:17
**dispositive** [1] -

116:24
**dispute** [1] - 112:21
**distinction** [6] - 7:5, 7:6, 83:14, 84:6, 144:1, 144:22
**distributed** [1] - 49:6
**DISTRICT** [2] - 1:1, 1:2
**divided** [1] - 68:1
**Doc** [1] - 74:4
**doc** [2] - 66:19, 70:21
**docket** [3] - 41:1, 41:4, 41:12
**Docket** [7] - 14:22, 40:18, 48:7, 48:13, 48:18, 50:6, 140:22
**dockets** [1] - 75:7
**docks** [1] - 66:5
**docs** [3] - 67:8, 69:23, 70:19
**doctrine** [1] - 34:10
**document** [20] - 16:24, 21:10, 29:12, 48:21, 52:18, 52:19, 68:4, 70:3, 72:20, 73:3, 73:24, 78:21, 85:3, 88:1, 101:19, 102:2, 118:14, 129:10, 130:22, 131:1
**documents** [147] - 4:13, 4:15, 9:15, 12:2, 12:12, 12:16, 14:4, 14:12, 14:16, 15:14, 15:20, 15:21, 15:23, 16:2, 16:3, 16:7, 16:11, 16:24, 17:12, 18:1, 18:10, 18:12, 19:7, 27:1, 29:5, 29:9, 29:10, 31:8, 36:24, 41:14, 42:1, 42:12, 42:13, 42:14, 43:3, 43:9, 43:13, 43:18, 43:20, 45:1, 45:4, 46:18, 46:23, 49:8, 49:17, 49:18, 57:12, 57:23, 63:8, 65:1, 65:3, 65:23, 66:3, 66:17, 66:20, 67:1, 67:3, 67:20, 70:8, 70:9, 73:15, 73:16, 73:17, 75:8, 76:7, 76:10, 76:20, 76:23, 77:2, 77:13, 77:14, 78:19, 80:11, 85:21, 86:12, 86:15, 86:16, 86:17, 92:9, 92:15, 92:18, 94:11, 95:10, 95:17, 96:5, 97:5, 97:6, 97:9, 97:17, 97:19,
97:20, 97:21, 97:23, 98:3, 98:8, 99:7, 99:19, 99:22, 99:24, 100:1, 100:3, 100:8, 100:10, 100:16, 100:18, 100:21, 100:22, 101:10, 101:17, 102:4, 102:5, 102:9, 102:18, 102:19, 102:20, 103:5, 103:20, 106:13, 106:19, 107:21, 109:7, 110:14, 120:5, 120:9, 120:11, 120:17, 121:16, 121:21, 122:10, 124:15, 124:18, 125:4, 125:13, 127:1, 131:11, 132:5, 133:18, 134:12, 149:24, 151:15
**done** [26] - 3:7, 3:20, 9:21, 10:19, 44:12, 56:19, 59:12, 62:18, 62:21, 63:9, 71:14, 75:3, 90:4, 91:5, 93:9, 93:10, 100:14, 105:22, 106:3, 117:19, 126:24, 137:13, 146:16, 149:16, 150:17, 151:2
**door** [2] - 127:5, 152:6
**dose** [1] - 20:14
**double** [3] - 80:18, 109:11, 116:14
**double-check** [2] - 80:18, 109:11
**doubt** [2] - 34:4, 124:16
**down** [6] - 6:3, 6:12, 86:19, 86:22, 116:2, 140:12
**draft** [6] - 81:17, 81:23, 83:1, 83:20, 83:22, 84:1
**drafts** [7] - 66:20, 67:9, 67:13, 67:17, 82:2, 82:7, 82:19
**Duckworth** [2] - 12:14, 70:7
**due** [9] - 7:16, 82:11, 88:6, 90:10, 90:16, 91:17, 95:5, 95:6, 95:8
**Dunlap** [1] - 91:21
**during** [9] - 54:1, 90:19, 123:21,
124:3, 127:16, 128:2, 128:4, 137:16, 152:5
**duties** [2] - 72:10, 72:13
**duty** [8] - 23:9, 31:20, 32:13, 34:20, 87:17, 88:13, 89:19, 113:15
**E-mail** [12] - 51:11, 60:15, 60:18, 64:15, 85:6, 85:7, 85:9, 105:5, 129:9, 129:11, 129:12, 129:15
**E-mails** [6] - 70:2, 103:22, 120:11, 122:4, 127:1, 131:13
**early** [1] - 138:17
**easier** [2] - 3:16, 69:1
**easy** [1] - 148:15
**effect** [6] - 13:1, 28:15, 43:14, 53:2, 126:15, 126:16
**effort** [1] - 146:4
**efforts** [2] - 111:9, 138:21
**either** [8] - 25:24, 59:1, 61:4, 92:2, 117:19, 137:5, 141:21, 145:17
**electronic** [2] - 70:3, 132:5
**eliminating** [1] - 10:20
**emanating** [1] - 98:16
**emphasis** [1] - 96:19
**emphasize** [4] - 4:22, 39:2
**emphasized** [1] - 7:15
**empowered** [1] - 125:9
**encompassing** [1] - 139:18
**encouraging** [1] - 124:2
**end** [4] - 39:4, 84:18, 116:18, 126:5
**ended** [1] - 52:12
**ends** [2] - 28:5, 28:6
**Energy** [7] - 68:17, 68:18, 74:17, 76:5, 80:12, 127:13, 131:13
**engagement** [3] - 44:16, 44:18, 63:13
**enhances** [1] - 9:21
**entailed** [1] - 48:20
**entire** [4] - 65:11, 87:9, 141:4, 141:5
**entities** [4] - 97:6,
137:23
**entitled** [3] - 29:4, 108:21, 122:11
**entity** [9] - 56:10, 56:11, 56:24, 85:16, 95:23, 133:10, 137:18, 138:7, 142:13
**entries** [18] - 54:11, 54:12, 56:1, 56:15, 57:1, 57:2, 57:3, 58:7, 58:8, 58:12, 74:5, 76:2, 95:12, 97:1, 119:1, 119:5, 119:7, 119:8
**Ernst** [4] - 93:7, 93:11, 94:11, 95:9
**especially** [2] - 84:17, 149:23
**ESQ** [5] - 1:20, 1:23, 2:4, 2:7, 2:7
**Esquire** [1] - 68:12
**established** [3] - 38:10, 138:1, 138:7
**estopped** [1] - 144:8
**et** [2] - 1:4, 1:7
**evaporates** [1] - 28:13
**events** [2] - 125:14, 126:23
**everywhere** [1] - 144:14
**Evidence** [2] - 21:24, 30:18
**evidence** [15] - 9:20, 30:13, 30:16, 52:14, 53:8, 63:11, 63:15, 93:23, 107:6, 110:3, 127:7, 130:3, 134:19, 135:22
**eviscerate** [1] - 114:6
**exact** [1] - 130:11
**exactly** [11] - 3:4, 6:1, 22:6, 23:3, 53:14, 64:14, 65:20, 89:12, 105:19, 133:8, 136:14
**example** [8] - 37:3, 37:5, 52:20, 67:17, 90:24, 113:9, 121:20, 122:10
**examples** [1] - 120:18
**except** [2] - 126:21, 135:17
**exception** [5] - 27:6, 31:16, 38:5, 42:20, 113:8
**exceptions** [2] - 31:15, 112:7
**exchange** [2] - 82:10, 82:15
**exclusion** [1] - 113:2
**excuse** [1] - 59:6
**exercise** [2] - 38:10, 148:5
**Exhibit** [5] - 61:10, 61:15, 78:14, 130:24
**exhibit** [4] - 48:17, 60:24, 61:2, 61:7
**exist** [4] - 52:15, 54:2, 126:17, 150:22
**existed** [1] - 27:16
**existence** [5] - 44:11, 122:1, 131:12, 134:18
**existing** [2] - 86:6, 150:23
**expectations** [1] - 28:8
**expected** [1] - 47:6
**expects** [1] - 47:15
**expense** [2] - 23:6, 87:18
**explain** [3] - 92:17, 115:17, 143:10
**explained** [2] - 120:17, 143:24
**expose** [1] - 89:10
**express** [1] - 132:11
**extended** [1] - 120:1
**extent** [18] - 39:11, 69:14, 80:19, 82:16, 82:18, 92:14, 92:21, 99:12, 104:10, 105:12, 106:11, 114:23, 115:2, 116:7, 122:20, 126:22, 127:6, 149:17
**eyes** [1] - 79:4
**face** [1] - 89:11
**facilitated** [1] - 16:20
**facilities** [2] - 97:2, 97:3
**facility** [8] - 86:7, 86:16, 86:17, 97:24, 99:5, 100:14, 102:3, 118:20
**Facility** [1] - 100:9
**fact** [17] - 12:22, 24:1, 27:14, 45:21, 45:22, 47:20, 84:11, 87:2, 89:20, 97:8, 105:15, 113:9, 115:19, 115:23, 123:10, 124:2, 138:3
**facto** [2] - 15:12, 89:6
**facts** [2] - 22:2, 145:5
**fails** [1] - 89:11
**fair** [2] - 12:5, 107:4
**fall** [4] - 21:19, 25:5,

29:9, 32:7
**fallacy** [1] - 105:4
**fallen** [1] - 102:13
**falls** [5] - 45:4, 46:20, 116:24, 135:15, 140:10
**Family** [1] - 100:9
**famous** [2] - 87:20, 140:7
**far** [11] - 10:19, 32:10, 102:18, 105:7, 105:19, 105:20, 113:19, 114:21, 126:21, 127:6, 136:20
**FARRIS** [2] - 2:6, 2:7
**Farris** [2] - 4:3, 4:4
**favor** [2] - 63:12, 116:16
**favored** [3] - 23:1, 23:5, 142:12
**favoring** [2] - 87:17, 96:12
**fearful** [1] - 108:19
**February** [3] - 119:19, 130:8, 131:10
**Federal** [1] - 118:5
**fees** [5] - 140:4, 141:18, 141:19, 142:10, 143:3
**feet** [1] - 9:12
**fell** [1] - 42:19
**felt** [4] - 33:19, 38:4, 42:3, 123:23
**fiduciaries** [1] - 96:12
**fiduciary** [3] - 87:17, 88:13, 89:19
**figure** [2] - 114:19, 148:15
**file** [7] - 9:3, 71:17, 103:24, 107:12, 115:16, 116:14, 122:23
**filed** [45] - 9:6, 9:7, 11:1, 11:23, 11:24, 12:24, 17:1, 33:13, 52:10, 53:23, 54:6, 54:8, 55:14, 56:16, 71:11, 76:17, 76:24, 84:8, 88:1, 89:14, 90:24, 91:2, 92:15, 92:18, 92:22, 97:15, 115:19, 117:12, 118:5, 119:22, 119:23, 120:1, 120:12, 122:22, 125:2, 131:9, 133:7, 133:9, 133:22, 135:5, 135:8, 135:10, 136:8

**files** [1] - 77:15
**filing** [15] - 16:19, 45:15, 50:2, 50:12, 53:20, 91:6, 91:8, 92:5, 94:14, 94:16, 98:15, 123:11, 126:24, 135:6, 149:14
**filings** [1] - 98:15
**final** [4] - 81:19, 81:21, 82:16, 84:4
**financial** [3] - 93:9, 93:10, 93:23
**financial's** [2] - 84:8, 93:13
**findings** [3] - 25:13, 116:13, 117:23
**fine** [10] - 24:2, 26:9, 29:1, 35:19, 36:1, 106:14, 113:24, 117:10, 117:11, 121:6
**fingertips** [1] - 33:19
**fire** [1] - 9:12
**firm** [21] - 4:2, 12:14, 17:19, 56:6, 68:14, 70:7, 77:16, 77:21, 82:17, 87:9, 89:22, 109:16, 122:22, 123:2, 123:10, 134:10, 140:9, 141:4, 141:5, 141:22, 142:11
**firm's** [1] - 70:8
**first** [18] - 6:4, 12:9, 14:24, 17:13, 18:23, 21:1, 29:13, 38:13, 38:14, 60:22, 66:9, 66:15, 85:21, 98:11, 118:23, 119:22, 151:15, 151:16
**fits** [1] - 21:15
**Fitzgerald** [2] - 67:21, 102:9
**Fitzgerald's** [1] - 101:22
**five** [8] - 45:6, 78:8, 78:11, 79:5, 79:6, 121:2, 121:8, 130:23
**five-minute** [1] - 121:2
**fix** [1] - 124:22
**flavor** [1] - 85:3
**focused** [1] - 5:10
**folder** [1] - 47:23
**follow** [1] - 25:10
**FOR** [1] - 1:2
**force** [1] - 9:12
**foregoing** [1] - 153:9
**forgot** [2] - 5:19, 148:8
**forgotten** [1] - 26:7

**former** [3] - 17:6, 19:19, 19:20
**forth** [3] - 73:10, 78:4, 103:22
**forthwith** [2] - 148:19, 148:21
**forward** [5] - 9:13, 26:6, 63:7, 106:4, 116:4
**fought** [1] - 123:22
**four** [4] - 112:17, 130:4, 148:24, 149:9
**fourteen** [4] - 115:16, 116:15, 117:13
**frame** [1] - 128:17
**framed** [1] - 151:12
**FRANDEN** [1] - 2:6
**Franden** [1] - 4:2
**frankly** [5] - 7:14, 33:19, 40:12, 51:21, 148:4
**freely** [1] - 69:18
**Frizzell** [2] - 144:9, 145:2
**front** [3] - 33:11, 34:6, 61:11
**full** [3] - 39:5, 105:23, 108:7
**fully** [1] - 106:7
**fun** [1] - 136:14
**Gallagher** [1] - 140:7
**game** [1] - 12:5
**gee** [2] - 89:3, 132:3
**general** [14] - 5:22, 6:13, 7:20, 7:21, 8:8, 21:18, 21:20, 25:16, 70:17, 87:3, 89:7, 91:19, 95:1, 120:12
**generally** [1] - 47:6
**generated** [2] - 141:18, 141:20
**gentlemen** [3] - 56:4, 56:5, 92:3
**germane** [1] - 51:20
**given** [12] - 11:18, 15:13, 21:8, 30:3, 49:3, 53:6, 66:21, 83:21, 96:6, 108:19, 125:8
**glad** [2] - 27:10, 129:23
**glass** [2] - 40:13, 79:2
**gleaned** [1] - 5:2
**GOODNIGHT** [1] - 2:6
**Goodnight** [1] - 4:3
**Goodyear** [1] - 91:21
**Google** [1] - 140:6
**gosh** [1] - 40:20
**governance** [1] -

95:22, 107:22, 107:24, 108:2, 110:24, 111:1, 111:2
**governing** [2] - 24:9, 142:3
**grant** [5] - 10:8, 13:21, 60:19, 61:13, 63:7
**Grant** [2] - 61:24, 62:2
**granted** [2] - 10:9, 51:7
**great** [2] - 19:16, 85:10
**greater** [1] - 39:14
**ground** [1] - 122:15
**grounds** [3] - 12:9, 65:2, 145:21
**group** [1] - 135:1
**grouping** [2] - 18:11, 110:17
**groupings** [1] - 18:10
**guess** [4] - 6:4, 18:4, 32:20, 33:3
**guide** [1] - 26:3
**guided** [3] - 24:22, 33:20, 105:24
**guys** [2] - 9:9, 59:4
**half** [1] - 133:21
**hand** [2] - 33:23, 153:15
**handed** [3] - 6:12, 101:22, 112:4
**handled** [1] - 101:21
**happy** [3] - 33:22, 50:23, 146:14
**hard** [1] - 134:15
**harken** [1] - 110:9
**harm** [3] - 87:5, 94:17, 126:7
**hat** [7] - 59:4, 59:6, 59:7, 60:12, 60:13, 63:9, 63:16
**hate** [2] - 149:19, 150:15
**hats** [5] - 59:1, 59:9, 59:10, 60:4, 60:7
**Hawkins** [4] - 6:24, 153:7, 153:19, 153:20
**head** [1] - 25:22
**hear** [3] - 6:24, 9:14, 111:21
**heard** [4] - 72:21, 81:9, 99:10, 139:22
**hearing** [5] - 11:8, 47:12, 90:17, 109:16, 109:22
**hearsay** [1] - 109:18
**heart** [1] - 107:9
**held** [3] - 43:20, 57:9,

**help** [2] - 11:7, 149:7
**helpful** [5] - 7:1, 70:19, 102:14, 108:11, 147:13
**hence** [1] - 9:14
**hereby** [1] - 153:9
**hereunto** [1] - 153:14
**hesitant** [1] - 72:22
**hesitate** [2] - 66:1, 67:4
**hide** [1] - 105:14
**highlighted** [1] - 31:10
**hired** [1] - 126:10
**hitting** [1] - 71:20
**hold** [2] - 9:11, 118:15
**holder** [1] - 56:10
**holding** [1] - 46:10
**honestly** [1] - 101:23
**Honor** [112] - 3:10, 3:24, 6:22, 8:15, 9:9, 9:17, 10:3, 11:4, 16:13, 17:3, 17:24, 18:17, 18:24, 20:21, 22:1, 22:9, 22:15, 23:24, 25:3, 26:5, 27:2, 27:4, 27:24, 29:4, 30:8, 30:13, 31:19, 32:20, 33:12, 33:14, 34:3, 35:1, 35:15, 36:3, 36:6, 38:1, 44:24, 46:7, 46:19, 51:1, 51:5, 51:9, 54:8, 57:12, 57:21, 58:2, 58:23, 59:24, 60:14, 61:22, 62:4, 62:12, 69:3, 69:9, 71:1, 73:5, 74:4, 74:15, 75:11, 77:10, 79:3, 79:8, 79:21, 81:7, 83:11, 85:20, 87:16, 88:5, 88:10, 90:23, 95:15, 95:19, 97:7, 98:6, 98:11, 99:17, 101:3, 102:22, 103:12, 104:15, 106:7, 107:11, 109:15, 112:3, 112:16, 114:4, 120:21, 121:13, 121:19, 123:21, 127:3, 127:18, 129:7, 129:8, 129:13, 129:17, 130:6, 130:20, 132:22, 136:17, 136:22, 138:3, 140:16, 142:8, 143:7, 144:5, 147:22, 148:24, 150:19, 151:5, 152:9

HONORABLE [1] - 1:15
hope [3] - 38:6, 68:24, 111:12
hoped [1] - 3:5
hopefully [1] - 85:4
hour [1] - 36:9
hours [4] - 36:9, 36:10, 36:11
hundred [2] - 45:6, 71:12
hypothetically [1] - 51:10
I-54 [2] - 78:11, 78:12
i.e [1] - 88:12
idea [8] - 45:2, 46:11, 47:4, 106:22, 119:21, 147:7, 147:8
identical [2] - 20:21, 22:2
identification [1] - 69:6
identified [2] - 51:19, 101:9
identify [1] - 51:22
identity [1] - 44:6
ignore [1] - 26:8
ignoring [1] - 26:10
imagination [1] - 10:21
imagine [2] - 93:3, 134:9
immediately [2] - 55:24, 56:15
impact [9] - 43:10, 43:16, 43:17, 65:4, 65:7, 65:8, 65:10, 108:22, 121:22
impacted [2] - 87:15, 96:8
impacting [1] - 114:21
impacts [3] - 46:21, 99:5, 122:12
impeach [1] - 10:1
impeachment [1] - 108:11
implicated [1] - 88:8
important [6] - 4:16, 5:11, 10:23, 18:11, 89:9, 93:18
importantly [3] - 5:23, 84:13, 107:5
impressed [1] - 146:16
IN [2] - 1:1, 153:14
inappropriate [1] - 99:9
include [4] - 69:16, 100:1, 140:18, 141:24

included [4] - 69:7, 69:13, 69:16, 98:4
includes [2] - 44:20, 117:14
including [3] - 92:24, 134:12, 135:19
incorporated [1] - 77:23
incorporation [5] - 76:7, 76:18, 76:20, 76:23, 77:13
incorrectly [1] - 38:3
indeed [1] - 22:23
independent [4] - 44:10, 44:11, 96:3, 130:16
indicate [2] - 70:20, 101:18
indicated [7] - 87:15, 88:6, 106:1, 111:12, 126:15, 137:5, 137:16
indication [2] - 92:1, 137:4
individual [3] - 16:15, 16:16, 141:3
individuals [11] - 5:24, 6:7, 60:6, 67:22, 68:23, 94:4, 95:23, 123:7, 123:9, 142:11, 144:13
inextricably [1] - 10:4
infidelity [1] - 88:20
inform [1] - 58:18
information [7] - 11:18, 47:6, 47:15, 47:18, 47:21, 48:15, 68:19, 82:11, 82:17, 82:20, 102:17, 106:3, 107:8, 113:12, 121:16, 130:16, 148:12
initial [1] - 50:16
injured [3] - 88:13, 88:14, 88:20
injury [4] - 16:17, 50:1, 90:8, 90:21
inner [2] - 143:8, 143:9
inner-company [2] - 143:8, 143:9
inserted [1] - 88:21
instead [1] - 71:19
Instituto [1] - 95:17
instrument [1] - 16:19
insufficiently [1] - 18:8
insulated [1] - 90:2
intent [1] - 23:2
interest [5] - 22:1

31:23, 34:10, 88:23, 114:2
interested [2] - 43:9, 63:3
interesting [2] - 112:6, 112:7
internal [3] - 88:16, 88:22, 94:5
interpret [1] - 7:18
interpretation [2] - 105:21, 113:24
interpreted [1] - 26:15
interrogatories [1] - 142:5
interrogatory [6] - 136:18, 139:14, 139:18, 140:1, 140:24, 142:4
intimately [1] - 94:5
introduction [1] - 22:18
introductions [1] - 3:7
invalid [1] - 11:22
invert [1] - 29:22
invite [1] - 82:22
invoking [1] - 22:17
involve [5] - 16:4, 16:18, 64:11, 108:23, 132:23
involved [26] - 18:6, 20:3, 28:17, 29:18, 56:5, 56:6, 63:24, 64:10, 64:11, 89:3, 94:1, 94:5, 104:5, 105:14, 108:24, 109:2, 109:13, 110:19, 111:2, 114:10, 125:23, 129:24, 134:21, 135:16, 137:6, 138:17
involvement [2] - 123:19, 125:24
involves [1] - 109:1
involving [1] - 108:13
IPO [2] - 75:7, 75:16
issue [31] - 5:12, 5:16, 15:16, 23:8, 28:22, 29:15, 34:19, 37:20, 37:21, 38:9, 38:14, 38:15, 41:18, 45:12, 45:16, 49:11, 84:3, 93:7, 108:3, 114:15, 115:3, 117:9, 117:17, 118:18, 118:19, 135:16, 136:1, 136:22, 139:9, 151:5, 151:21
issued [3] - 4:8, 116:1, 147:20

issues [21] - 5:7, 6:1, 8:11, 10:23, 13:13, 18:6, 37:23, 38:1, 39:16, 63:3, 100:3, 104:17, 106:4, 113:20, 115:24, 118:17, 123:20, 135:12, 135:21, 139:7, 139:11
item [1] - 81:15
items [1] - 80:18
itself [3] - 12:3, 48:17, 104:16
JAMES [1] - 2:4
James [1] - 3:24
January [1] - 129:16
Jeff [1] - 13:18
JEFF [1] - 1:7
Joe [1] - 4:4
joint [45] - 12:17, 12:20, 13:11, 19:6, 19:8, 19:14, 19:16, 19:19, 19:22, 20:2, 20:5, 20:24, 21:11, 22:4, 22:19, 23:14, 23:16, 24:11, 24:15, 24:16, 26:14, 27:1, 27:6, 27:14, 27:17, 27:18, 27:20, 28:5, 28:6, 28:12, 30:1, 32:8, 32:14, 32:19, 34:10, 34:23, 35:7, 35:10, 35:13, 41:15, 42:21, 44:19, 114:2
jointly [3] - 25:20, 41:15, 49:6
Jones [3] - 3:10, 3:11, 46:7
JONES [3] - 1:20, 1:20, 3:9
JOSEPH [1] - 2:7
JR [1] - 1:4
judge [2] - 11:21, 146:23
Judge [25] - 1:15, 4:18, 6:12, 9:10, 10:8, 14:21, 16:14, 18:19, 26:18, 31:8, 33:9, 41:13, 43:2, 71:18, 71:19, 106:1, 108:9, 115:17, 115:18, 117:4, 144:9, 145:2, 147:3, 149:15, 151:6
judgements [1] - 60:8
judges [1] - 118:12
judgment [2] - 12:9, 60:6
July [4] - 150:6, 150:7, 150:11, 150:18

jump [1] - 73:10
June [3] - 1:10, 153:11, 153:15
junked [1] - 133:23
jurisdiction [70] - 5:22, 5:23, 6:13, 7:8, 7:11, 7:20, 7:21, 7:22, 8:3, 8:5, 8:8, 8:19, 12:10, 12:11, 14:13, 14:14, 14:23, 15:16, 16:16, 17:24, 18:2, 29:19, 47:9, 49:11, 49:16, 51:7, 51:12, 53:1, 53:6, 86:11, 87:3, 87:8, 88:7, 88:9, 89:11, 90:15, 91:18, 91:19, 93:16, 93:20, 93:22, 94:3, 95:1, 96:22, 106:6, 108:3, 108:4, 111:4, 115:3, 115:5, 115:21, 126:17, 132:19, 132:21, 134:5, 135:8, 139:12, 141:2, 142:17, 144:9, 144:10, 144:12, 144:23, 145:1, 145:4, 145:10, 145:12, 145:17, 145:18, 145:21
jurisdictional [39] - 4:19, 5:3, 5:6, 5:7, 5:14, 8:1, 9:23, 10:4, 10:9, 11:16, 38:24, 39:4, 39:6, 39:12, 48:24, 52:16, 71:7, 75:24, 84:15, 84:21, 84:22, 91:16, 95:11, 99:14, 99:15, 100:19, 106:10, 107:9, 107:10, 118:20, 125:21, 126:14, 130:18, 132:2, 134:14, 135:12, 135:21, 139:8, 141:8
jurisdictionally [2] - 96:14, 96:16
Justice [1] - 91:23
keep [5] - 48:23, 78:3, 106:16, 134:11, 135:18
keeping [1] - 129:23
kept [1] - 127:16
key [2] - 20:22, 62:13
kind [6] - 10:23, 112:5, 112:7, 116:3, 139:17, 151:12
King [1] - 1:12

known [1] - 135:23
knows [3] - 136:14, 149:16, 150:12
label [1] - 81:9
lack [3] - 115:20, 144:10, 144:11
laid [1] - 106:15
language [4] - 32:23, 89:1, 107:19, 116:20
last [5] - 3:14, 47:5, 51:2, 130:1, 139:14
latest [2] - 91:22, 130:8
LAURA [1] - 1:20
Laura [1] - 3:10
law [45] - 4:2, 4:17, 6:2, 6:6, 6:10, 12:4, 12:13, 12:22, 13:3, 13:9, 13:19, 14:7, 24:18, 26:2, 26:13, 32:11, 33:20, 33:21, 38:23, 39:1, 56:6, 68:13, 70:7, 70:8, 77:16, 77:21, 82:14, 82:17, 87:9, 88:11, 89:8, 89:15, 89:22, 96:17, 109:16, 122:22, 123:2, 123:10, 129:2, 134:10, 140:9, 141:4, 141:5, 142:11
laws [1] - 24:9
Lawson [7] - 13:18, 15:4, 128:21, 137:6, 141:11, 141:21, 144:24
LAWSON [1] - 1:7
lawsuit [5] - 28:10, 28:14, 47:12, 114:10, 135:4
lawyer [18] - 22:3, 23:9, 23:10, 31:21, 32:2, 32:13, 32:15, 32:17, 34:19, 89:20, 90:3, 113:1, 113:10, 113:11, 113:13, 113:15, 137:16
lawyer's [2] - 133:16, 133:17
lawyer/client [1] - 34:21
lawyers [37] - 4:1, 13:5, 13:8, 13:17, 14:9, 23:5, 24:9, 25:5, 27:5, 27:15, 32:16, 43:20, 44:3, 48:10, 49:12, 51:23, 59:8, 63:10, 71:9, 87:9, 87:17, 89:1, 89:16, 89:20, 91:3,

94:7, 96:3, 107:14, 109:18, 113:3, 126:12, 129:2, 134:1, 134:6, 140:10, 141:6, 145:1
lawyers' [1] - 49:14
lead [1] - 101:23
learn [1] - 131:19
learned [1] - 146:21
least [8] - 4:17, 5:13, 47:4, 75:24, 76:4, 106:12, 129:3, 131:12
left [4] - 14:3, 71:21, 121:15, 146:12
legal [20] - 15:11, 15:13, 28:22, 79:9, 79:16, 79:24, 80:7, 83:21, 88:14, 88:17, 96:22, 103:6, 104:18, 104:22, 110:23, 110:24, 114:15, 140:4, 142:1, 146:7
legally [1] - 69:21
legs [1] - 136:1
letter [21] - 44:22, 48:16, 73:6, 73:9, 73:24, 78:6, 78:8, 78:10, 78:12, 79:9, 79:15, 79:23, 80:17, 83:2, 100:5, 102:6, 103:4, 104:16, 115:22, 129:10
letters [8] - 10:16, 13:1, 44:16, 44:17, 63:13, 74:2, 75:5, 78:10
level [1] - 44:12
liberal [1] - 9:11
light [3] - 26:20, 44:15, 131:20
limit [4] - 7:18, 11:15, 51:16, 126:14
limitation [2] - 104:14, 147:18
Limited [1] - 80:12
limited [10] - 4:20, 50:14, 95:11, 110:16, 117:11, 119:23, 128:21, 132:17, 152:2, 152:3
limiting [2] - 44:17, 106:12
limits [1] - 63:14
line [4] - 39:7, 51:13, 80:11, 86:22
link [2] - 95:22, 108:12
linked [1] - 10:4
liquidated [1] - 138:24

liquidating [1] - 55:9
list [1] - 68:23
listed [12] - 15:9, 50:4, 68:17, 69:14, 72:16, 72:20, 74:5, 74:11, 97:5, 100:9, 102:3, 102:5
listing [1] - 72:9
litigation [8] - 16:21, 77:19, 125:5, 127:17, 128:3, 128:5, 130:7, 139:3
LLP [3] - 1:20, 1:22, 3:12
located [1] - 36:12
location [1] - 118:22
log [43] - 4:12, 16:8, 37:23, 39:19, 39:21, 45:3, 46:16, 47:10, 47:14, 47:19, 47:20, 47:24, 48:6, 49:8, 57:18, 57:20, 58:15, 66:4, 66:7, 66:9, 66:11, 66:14, 71:14, 74:6, 78:1, 78:4, 78:13, 78:15, 97:10, 97:12, 97:15, 101:10, 101:15, 101:19, 102:12, 102:13, 103:1, 103:3, 104:21, 104:24, 111:11, 111:14
logically [1] - 54:12
logs [3] - 47:2, 47:7, 104:17
look [17] - 3:15, 14:21, 17:12, 18:18, 26:6, 41:4, 44:8, 46:8, 58:2, 58:9, 71:16, 82:22, 83:3, 85:2, 90:6, 102:10, 115:10
looked [8] - 48:7, 58:21, 59:20, 67:6, 84:4, 94:16, 99:22
looking [20] - 4:9, 4:14, 4:17, 4:18, 6:17, 10:21, 11:7, 23:20, 36:14, 58:6, 68:2, 76:6, 91:15, 95:18, 105:23, 124:16, 125:20, 130:17, 132:20, 139:15
looks [3] - 34:9, 40:15, 67:9
looming [1] - 151:21
lose [2] - 20:10, 20:14
lost [1] - 27:20
LTD [1] - 74:17

lucky [1] - 47:20
M-O-J-D-E-H-I [1] - 3:18
M.M [1] - 1:23
ma'am [1] - 70:1
MacKenzie [26] - 13:21, 15:6, 44:8, 44:10, 44:15, 51:11, 61:24, 62:2, 62:22, 63:7, 64:15, 77:22, 78:18, 98:17, 123:12, 128:21, 128:23, 129:12, 130:6, 133:3, 134:16, 137:5, 137:14, 141:12, 141:21, 144:23
magistrate [1] - 118:11
Magistrate [1] - 1:15
magnifying [2] - 40:13, 79:2
Mahalo [135] - 12:13, 12:18, 12:22, 13:2, 13:9, 13:12, 13:16, 13:19, 13:23, 14:15, 14:17, 15:5, 15:7, 15:14, 15:20, 16:5, 16:7, 16:23, 17:20, 21:10, 21:11, 23:20, 27:1, 41:16, 41:21, 43:10, 43:14, 43:17, 43:21, 48:8, 48:9, 48:10, 48:14, 48:22, 49:3, 49:7, 56:8, 56:18, 57:3, 63:24, 64:4, 64:10, 64:11, 64:17, 65:4, 65:23, 66:4, 67:2, 67:3, 68:17, 68:18, 73:18, 73:21, 74:24, 75:18, 76:5, 76:14, 76:17, 76:23, 76:24, 77:6, 77:9, 77:23, 80:4, 80:8, 80:12, 80:15, 80:16, 80:19, 80:21, 81:2, 81:3, 81:9, 82:5, 86:4, 86:6, 86:13, 86:19, 86:21, 87:13, 87:14, 87:15, 88:19, 90:20, 90:21, 93:13, 96:8, 98:1, 98:3, 98:4, 98:23, 100:1, 100:17, 100:24, 103:10, 103:15, 103:16, 103:19, 103:21, 103:23, 104:5, 104:11, 105:10, 108:1, 108:2,

110:20, 111:3, 119:15, 120:9, 120:19, 122:23, 123:14, 124:24, 125:13, 126:11, 126:23, 127:13, 127:14, 130:9, 131:13, 133:11, 135:15, 137:3, 137:7, 141:16, 141:19, 141:20, 142:3, 143:2, 143:15
mail [12] - 51:11, 60:15, 60:18, 64:15, 85:6, 85:7, 85:9, 105:5, 129:9, 129:11, 129:12, 129:15
mails [6] - 70:2, 103:22, 120:11, 122:4, 127:1, 131:13
malpractice [1] - 96:22
manner [2] - 18:16, 56:20
MARY [1] - 1:15
match [1] - 149:20
material [2] - 45:12, 45:14
materials [7] - 3:3, 33:9, 63:23, 64:8, 64:10, 146:17
matter [16] - 17:1, 21:15, 29:18, 31:23, 37:8, 52:8, 52:23, 93:1, 93:4, 142:16, 142:17, 145:7, 145:17, 149:16, 152:4, 153:12
matters [16] - 51:20, 51:23, 54:11, 54:17, 54:22, 54:24, 55:3, 64:24, 81:1, 89:9, 117:18, 118:5, 122:9, 131:20, 148:16, 149:3
McKenzie's [2] - 60:13, 105:5
mean [16] - 25:21, 45:23, 52:8, 54:5, 71:5, 73:1, 74:12, 101:16, 105:8, 117:8, 125:8, 132:19, 133:19, 140:23, 146:9, 149:19
means [7] - 6:2, 6:14, 8:19, 27:15, 27:19, 70:21
mechanical [1] - 8:1

**meet** [4] - 17:8, 95:5, 95:6, 95:8
**meeting** [4] - 62:16, 103:7, 104:3, 104:9
**meetings** [2] - 103:19, 108:16
**members** [1] - 44:6
**memorandum** [2] - 116:23, 117:6
**mention** [2] - 66:3, 71:2
**mentioned** [2] - 45:5, 65:23
**merged** [2] - 87:1, 87:13
**merger** [4] - 85:18, 88:3, 90:19, 92:16
**Merit** [1] - 153:7
**merit** [1] - 42:4
**merits** [18] - 4:23, 5:1, 10:5, 10:11, 10:14, 39:3, 39:5, 96:18, 96:19, 105:20, 105:21, 115:5, 122:19, 126:18, 132:14, 135:24, 142:6, 142:20
**mess** [1] - 120:24
**messages** [1] - 46:9
**met** [2] - 90:16, 105:9
**methane** [1] - 126:8
**methodology** [7] - 48:5, 48:7, 49:2, 58:20, 59:16, 64:2, 68:2
**might** [5] - 67:4, 89:10, 118:21, 125:2, 150:23
**million** [4] - 86:4, 86:9, 92:17, 98:12
**millionaire** [1] - 140:8
**Milt** [1] - 68:16
**mind** [3] - 59:1, 64:15, 71:16
**minding** [1] - 107:14
**minute** [6] - 10:7, 52:5, 61:14, 66:6, 78:7, 121:2
**minutes** [11] - 35:16, 47:3, 62:8, 62:24, 103:7, 103:10, 103:16, 103:20, 104:3, 104:9, 121:9
**misleadingly** [1] - 89:16
**missing** [1] - 100:23
**misunderstood** [1] - 57:13
**modified** [1] - 36:21
**modifies** [1] - 35:5

**MOJDEHI** [270] - 1:23, 3:17, 6:21, 7:4, 7:8, 7:23, 8:9, 8:14, 9:7, 11:4, 18:15, 18:23, 19:6, 19:11, 20:20, 21:16, 21:22, 22:6, 22:13, 23:24, 24:20, 25:14, 26:5, 26:20, 27:2, 27:10, 27:23, 28:21, 29:2, 29:20, 30:6, 30:12, 30:15, 30:21, 31:3, 31:11, 31:18, 32:6, 32:20, 33:1, 33:12, 33:16, 33:22, 34:2, 34:7, 34:24, 35:15, 35:18, 35:21, 36:2, 36:6, 36:10, 36:13, 36:23, 37:5, 37:8, 37:11, 37:14, 37:24, 38:16, 39:9, 39:22, 40:1, 40:4, 40:8, 40:11, 41:7, 41:13, 41:22, 42:2, 42:8, 42:16, 42:24, 43:8, 43:14, 43:17, 44:2, 44:23, 45:10, 45:18, 46:12, 46:17, 51:1, 51:5, 51:9, 51:18, 52:4, 52:13, 53:3, 53:7, 53:14, 53:21, 54:7, 54:18, 55:1, 55:5, 55:8, 55:12, 55:18, 55:22, 56:7, 56:14, 56:19, 57:4, 57:11, 57:15, 57:19, 58:1, 58:6, 58:11, 58:16, 58:19, 59:7, 59:14, 59:19, 59:23, 60:5, 60:18, 60:22, 61:2, 61:7, 61:9, 61:12, 61:17, 61:22, 61:24, 62:4, 62:12, 62:20, 63:2, 64:22, 69:3, 69:9, 71:1, 71:6, 73:5, 74:14, 74:19, 75:1, 75:10, 75:15, 76:9, 77:21, 78:5, 78:17, 78:23, 79:3, 79:8, 79:12, 79:14, 79:20, 79:23, 81:7, 82:21, 83:10, 83:17, 84:2, 84:11, 87:12, 88:4, 90:1, 90:22, 91:9, 91:12, 92:11, 94:2, 94:21, 95:14, 95:19, 98:9, 98:20, 98:24, 99:3, 99:16, 100:13, 101:2, 101:9, 104:15, 105:3, 105:11, 105...
**mOJDEHI** [1] - 25:2
**Mojdehi** [7] - 3:11, 3:17, 3:19, 48:4, 74:12, 121:12, 124:15
**Monday** [1] - 150:19
**monthly** [1] - 143:4
**months** [2] - 101:7
**moreover** [1] - 24:6
**Morgan** [2] - 87:19, 95:14
**morgan** [1] - 87:20
**morning** [2] - 3:9, 3:23
**Mosely** [5] - 60:19, 61:13, 61:20, 62:1, 62:3
**most** [4] - 3:3, 118:9,

106:7, 106:20, 106:22, 107:1, 107:11, 107:18, 108:10, 109:15, 109:21, 109:24, 110:2, 110:9, 111:20, 111:24, 112:3, 112:8, 112:12, 112:16, 114:4, 114:14, 114:20, 115:6, 117:7, 117:22, 118:23, 119:5, 119:9, 120:20, 120:23, 121:4, 121:13, 121:18, 123:1, 123:4, 123:8, 123:15, 123:18, 124:8, 127:9, 127:13, 127:23, 128:2, 128:6, 128:9, 128:18, 128:24, 129:6, 129:15, 129:19, 129:21, 130:5, 130:19, 131:2, 131:5, 131:8, 131:17, 136:17, 136:21, 137:14, 138:2, 138:5, 138:8, 138:12, 139:4, 139:13, 139:21, 142:8, 143:5, 143:12, 143:16, 143:20, 144:5, 144:14, 144:17, 145:14, 145:19, 145:24, 146:5, 147:21, 148:4, 148:13, 148:18, 148:23, 149:3, 149:5, 151:4, 151:11, 151:18, 151:22, 152:8

120:7, 148:14
**motion** [10] - 9:3, 9:19, 11:23, 12:1, 12:5, 12:8, 12:10, 54:9, 115:20
**mouth** [1] - 29:8
**move** [3] - 106:4, 116:4, 139:13
**MR** [280] - 3:17, 3:23, 6:21, 7:4, 7:8, 7:23, 8:9, 8:14, 9:7, 11:4, 18:15, 18:23, 19:6, 19:11, 20:20, 21:16, 21:22, 22:6, 22:13, 23:24, 24:20, 25:2, 25:14, 26:5, 26:20, 27:2, 27:10, 27:23, 28:21, 29:2, 29:20, 30:6, 30:12, 30:15, 30:21, 31:3, 31:11, 31:18, 32:6, 32:20, 33:1, 33:12, 33:16, 33:22, 34:2, 34:7, 34:24, 35:15, 35:18, 35:21, 36:2, 36:6, 36:10, 36:13, 36:23, 37:5, 37:8, 37:11, 37:14, 37:24, 38:16, 39:9, 39:22, 40:1, 40:4, 40:8, 40:11, 41:7, 41:13, 41:22, 42:2, 42:8, 42:16, 42:24, 43:8, 43:14, 43:17, 44:2, 44:23, 45:10, 45:18, 46:12, 46:17, 51:1, 51:5, 51:9, 51:18, 52:4, 52:13, 53:3, 53:7, 53:14, 53:21, 54:7, 54:18, 55:1, 55:5, 55:8, 55:12, 55:18, 55:22, 56:7, 56:14, 56:19, 57:4, 57:11, 57:15, 57:19, 58:1, 58:6, 58:11, 58:16, 58:19, 59:7, 59:14, 59:19, 59:23, 60:5, 60:18, 60:22, 61:2, 61:7, 61:9, 61:12, 61:17, 61:22, 61:24, 62:4, 62:12, 62:20, 63:2, 64:22, 69:3, 69:9, 71:1, 71:6, 73:5, 74:14, 74:19, 75:1, 75:10, 75:15, 76:9, 77:10, 77:15, 77:21, 78:5, 78:9, 78:17, 78:23, 79:3, 79:8, 79:12, 79:14, 79:20, 79:23, 81:7, 0, 83:17,

84:2, 84:11, 87:12, 88:4, 90:1, 90:22, 91:9, 91:12, 92:11, 94:2, 94:21, 95:14, 95:19, 98:9, 98:20, 98:24, 99:3, 99:16, 100:13, 101:2, 101:9, 104:15, 105:3, 105:11, 106:7, 106:20, 106:22, 107:1, 107:11, 107:18, 108:10, 109:15, 109:21, 109:24, 110:2, 110:9, 111:20, 111:24, 112:3, 112:8, 112:12, 112:16, 114:4, 114:14, 114:20, 115:6, 117:7, 117:22, 118:23, 119:5, 119:9, 120:20, 120:23, 121:4, 121:13, 121:18, 123:1, 123:4, 123:8, 123:15, 123:18, 124:8, 127:9, 127:13, 127:23, 128:2, 128:6, 128:9, 128:18, 128:24, 129:6, 129:15, 129:19, 129:21, 130:5, 130:19, 131:2, 131:5, 131:8, 131:17, 132:22, 136:17, 136:21, 137:14, 138:2, 138:5, 138:8, 138:12, 139:4, 139:13, 139:21, 142:8, 143:5, 143:12, 143:16, 143:20, 144:5, 144:14, 144:17, 145:14, 145:19, 145:24, 146:5, 147:2, 147:11, 147:21, 148:4, 148:13, 148:18, 148:23, 149:3, 149:5, 150:6, 150:10, 150:19, 151:4, 151:11, 151:18, 151:22, 152:8
**MS** [101] - 3:9, 11:23, 12:8, 12:21, 13:17, 14:2, 16:6, 16:12, 17:21, 17:23, 31:9, 31:13, 40:17, 41:1,

48:3, 48:18, 50:3,
57:17, 63:18, 64:1,
64:14, 64:20, 65:9,
65:13, 65:19, 66:1,
66:8, 66:12, 66:15,
67:14, 67:18, 68:8,
68:15, 69:8, 70:1,
70:6, 70:12, 73:19,
74:3, 74:8, 75:21,
76:16, 76:22, 77:5,
80:5, 80:10, 81:6,
81:19, 81:22, 82:1,
82:6, 83:6, 83:9,
85:5, 85:10, 85:19,
86:10, 87:6, 92:21,
93:2, 97:7, 97:14,
98:6, 100:6, 101:6,
101:20, 102:7,
102:22, 103:12,
103:18, 104:6,
104:10, 104:23,
106:24, 119:10,
119:13, 119:17,
120:7, 124:13,
124:23, 125:7,
125:18, 126:2,
126:6, 127:3, 133:8,
133:17, 134:23,
135:9, 136:8,
136:11, 138:14,
138:23, 140:16,
141:23, 148:1,
149:1, 149:4, 149:6,
149:17, 149:23
**multiple** [6] - 10:15,
59:1, 59:9, 59:10,
60:4, 60:7
**must** [3] - 16:18, 59:1,
71:20

**N**

**name** [1] - 3:14
**Nancy** [1] - 68:11
**narrow** [1] - 116:2
**narrowed** [1] - 6:15
**narrowing** [1] - 7:19
**necessarily** [13] - 5:3,
6:6, 26:12, 29:6,
38:12, 41:5, 61:4,
96:16, 102:6, 108:5,
110:19, 135:14,
142:6
**necessary** [3] - 4:24,
10:14, 132:7
**need** [17] - 7:1, 9:10,
9:11, 11:19, 11:20,
69:23, 70:20, 80:17,
80:20, 84:21, 92:20,
96:3, 104:8, 107:16,
119:11, 121:24,
149:13
**needed** [3] - 13:2,

74:22, 83:22
**needs** [7] - 5:10, 8:10,
69:7, 81:4, 82:13,
104:20
**neglected** [1] - 71:2
**net** [1] - 29:3
**never** [4] - 29:15,
62:15, 89:15, 124:18
**New** [1] - 153:2
**NEWSOME** [1] - 1:4
**next** [4] - 93:6, 103:6,
118:17, 148:5
**nice** [1] - 118:21
**night** [1] - 47:5
**nilly** [1] - 68:3
**non** [1] - 118:4
**non-pro** [1] - 118:4
**none** [1] - 67:2
**nonissues** [1] - 41:8
**nonsuing** [3] - 22:16,
22:22, 23:2
**normal** [2] - 56:20,
132:1
**Nortel** [1] - 136:13
**Notary** [1] - 153:8
**notations** [1] - 46:5
**note** [2] - 58:21, 84:24
**notes** [3] - 3:4, 87:23,
153:11
**nothing** [12] - 32:14,
32:18, 49:19, 63:14,
64:12, 84:18,
100:17, 107:12,
107:13, 109:8,
110:2, 114:7, 134:4
**notice** [3] - 66:4,
114:24, 130:7
**November** [1] - 118:7
**nuance** [1] - 7:10
**number** [14] - 11:12,
33:7, 40:24, 78:2,
78:13, 78:22, 83:7,
84:4, 101:19,
102:11, 135:6,
142:14, 143:5, 149:7
**numbered** [1] - 61:4
**numbers** [4] - 61:5,
74:11, 101:16, 102:3
**oath** [1] - 63:15
**objection** [4] - 117:6,
120:13, 121:20,
122:16
**objections** [4] - 71:17,
115:16, 117:5, 118:5
**obligated** [1] - 135:18
**obligation** [3] - 129:2,
133:3, 134:16
**oblivious** [1] - 124:5
**observations** [1] -
20:22

**obtain** [1] - 11:16
**obviously** [8] - 42:10,
51:24, 67:7, 68:12,
92:6, 131:18, 134:9,
142:1
**occur** [1] - 20:9
**occurred** [7] - 45:22,
53:19, 92:2, 92:4,
93:24, 125:14, 126:7
**occurring** [2] - 50:10,
152:6
**occurs** [2] - 28:10,
87:4
**OF** [2] - 1:2, 153:5
**offer** [1] - 17:14
**offered** [3] - 17:8,
32:3, 32:4
**offering** [1] - 122:18
**office** [5] - 36:14,
67:20, 67:24,
101:21, 101:22
**officer** [7] - 14:24,
15:2, 15:4, 15:11,
15:13, 15:17, 67:22
**officers** [11] - 8:4,
15:9, 37:13, 44:6,
53:24, 59:9, 140:5,
140:21, 141:15,
141:16, 144:24
**Oklahoma** [11] - 4:2,
126:2, 126:4, 126:5,
126:8, 126:9,
126:10, 135:10,
144:6, 152:13
**omission** [2] - 50:10,
90:9
**once** [5] - 9:20, 91:17,
138:9, 139:23
**one** [91] - 6:1, 7:10,
8:1, 8:10, 9:16, 12:9,
13:19, 14:6, 14:24,
15:8, 18:5, 18:6,
19:1, 19:20, 20:6,
20:7, 20:22, 21:2,
21:23, 21:24, 22:4,
23:5, 23:17, 24:4,
26:6, 27:14, 27:18,
29:12, 29:24, 30:12,
32:18, 36:9, 38:8,
39:12, 44:3, 44:4,
45:6, 51:13, 56:21,
59:1, 60:17, 61:12,
65:21, 66:2, 66:21,
68:5, 68:19, 70:23,
71:1, 72:12, 72:20,
73:14, 74:16, 75:1,
81:15, 83:4, 84:23,
85:16, 87:3, 87:12,
87:17, 91:13, 94:21,
96:2, 96:4, 96:6,

96:12, 97:13, 98:10,
101:4, 103:6,
109:23, 110:1,
111:19, 114:7,
117:18, 118:22,
122:17, 123:20,
125:22, 127:15,
130:20, 134:15,
142:9, 145:20,
147:17, 148:8,
148:13, 148:15,
151:4
**ones** [9] - 66:18, 67:5,
74:10, 81:21, 82:17,
84:5, 90:1, 102:24
**open** [1] - 127:6
**opening** [1] - 88:6
**operate** [1] - 102:16
**operated** [2] - 62:10,
62:13
**operates** [2] - 39:5,
149:11
**operation** [1] - 73:18
**opinion** [3] - 13:1,
21:6, 145:8
**opinions** [1] - 13:5
**opposed** [1] - 96:13
**order** [16] - 4:8, 14:22,
69:1, 88:23, 106:1,
116:1, 116:17,
116:18, 117:17,
117:20, 117:24,
118:3, 118:4, 118:7,
146:19, 146:21
**ordered** [1] - 108:9
**ordering** [1] - 114:13
**orders** [1] - 151:11
**organization** [1] -
71:19
**original** [2] - 60:21,
102:13
**originally** [1] - 97:9
**otherwise** [2] - 64:13,
114:5
**ourselves** [2] -
147:12, 147:13
**outline** [3] - 73:12,
73:13, 74:1
**outlines** [1] - 117:3
**outset** [1] - 86:2
**outside** [9] - 19:18,
29:10, 35:22, 35:23,
59:12, 87:5, 89:6,
90:13, 90:18
**outstanding** [1] -
136:18
**overall** [2] - 109:12,
110:13
**overlap** [1] - 39:3

**own** [6] - 24:11, 55:13,
60:14, 107:15,
108:15, 113:24
**p.m** [1] - 152:15
**PACHULSKI** [1] - 1:20
**Pachulski** [1] - 3:10
**package** [1] - 110:16
**page** [23] - 48:13,
48:18, 50:7, 61:17,
66:9, 66:15, 69:19,
74:4, 74:7, 74:8,
78:8, 78:11, 100:4,
100:7, 112:16,
129:10, 130:4,
130:22, 140:22,
147:17, 149:7
**pages** [8] - 10:15,
40:9, 58:10, 66:13,
109:7, 116:14,
117:12, 148:24
**Palmer** [2] - 12:14,
70:7
**paper** [1] - 112:14
**papers** [4] - 12:24,
13:4, 54:8, 76:18
**paragraph** [2] - 42:20,
130:22
**Paragren** [1] - 85:16,
85:20, 85:23, 86:2,
86:24, 87:12, 88:2,
88:3, 90:20, 92:12,
92:14, 92:16, 93:1,
93:4, 95:21, 96:1,
140:19
**Paragren's** [1] - 86:9
**paralegal** [2] - 85:6,
102:10, 149:20
**paranoid** [1] - 38:18
**parent** [111] - 12:18,
13:15, 14:1, 14:5,
14:6, 14:8, 14:12,
14:17, 14:18, 14:20,
15:5, 15:8, 16:4,
16:6, 17:5, 17:9,
17:11, 17:15, 20:2,
20:3, 20:7, 20:12,
20:14, 21:8, 21:14,
23:22, 25:4, 27:1,
27:6, 28:2, 28:11,
43:21, 44:8, 44:12,
44:20, 49:6, 49:7,
49:9, 49:15, 51:24,
52:1, 52:3, 52:6,
54:17, 54:20, 55:11,
55:12, 56:4, 57:10,
57:18, 62:8, 62:11,
62:14, 62:22, 63:23,
64:12, 65:2, 65:11,
65:20, 73:16, 74:17,
75:8, 75:9, 80:9,

80:12, 80:14, 80:22, 80:23, 81:1, 82:8, 82:9, 82:12, 82:20, 83:13, 83:21, 84:7, 85:17, 85:23, 86:23, 98:13, 98:19, 100:11, 100:16, 104:4, 104:24, 105:6, 107:24, 108:18, 111:3, 123:5, 123:6, 127:16, 132:24, 133:4, 133:16, 136:3, 136:4, 136:5, 136:8, 136:24, 137:10, 137:17, 139:24, 140:7, 140:20, 140:21, 143:23
**parent's** [2] - 75:6, 93:10
**parents** [1] - 57:2
**parse** [2] - 108:6, 140:12
**part** [12] - 13:22, 105:18, 113:7, 113:14, 115:7, 115:12, 120:8, 134:16, 135:24, 148:4, 152:7
**participating** [1] - 123:9
**particular** [4] - 63:1, 68:13, 84:16, 99:14
**particularly** [4] - 22:24, 58:4, 132:13, 139:11
**parties** [11] - 19:18, 23:18, 23:19, 72:19, 77:19, 88:24, 112:23, 116:2, 142:12, 144:4
**parties'** [1] - 28:8
**parts** [2] - 4:10, 4:12
**party** [12] - 20:9, 28:16, 28:18, 29:24, 30:2, 30:3, 47:11, 47:14, 96:9, 114:7, 132:1
**passed** [1] - 62:8
**past** [1] - 146:21
**PAT** [1] - 1:15
**patent** [1] - 47:20
**pattern** [2] - 46:10, 96:12
**PAULA** [1] - 2:7
**Paula** [1] - 4:3
**pay** [1] - 86:8
**pending** [1] - 145:3
**pension** [1] - 43:4

**people** [5] - 58:24, 70:14, 105:2, 124:21, 135:19
**perceive** [1] - 7:24
**percent** [1] - 71:12
**perfectly** [1] - 29:24
**performed** [1] - 90:7
**period** [6] - 111:18, 118:19, 119:4, 121:21, 141:16, 141:17
**permeating** [1] - 11:1
**permissible** [1] - 8:24
**permitted** [1] - 135:19
**perplexing** [1] - 18:18
**person** [4] - 68:7, 71:24, 72:7, 72:12
**personal** [5] - 115:20, 126:17, 142:17, 144:12, 145:18
**pertain** [4] - 43:10, 43:13, 51:21, 148:19
**pertaining** [4] - 43:3, 56:1, 99:19
**pertains** [1] - 122:12
**Peter** [6] - 60:19, 61:13, 61:20, 62:1, 62:3, 62:6
**petition** [4] - 49:20, 50:11, 50:18, 50:22
**phase** [1] - 11:16
**phone** [1] - 46:8
**phonetically** [1] - 3:21
**physical** [1] - 88:17
**picture** [1] - 94:2
**piece** [3] - 91:13, 94:15, 94:21
**pieces** [1] - 94:18
**place** [1] - 88:14
**Plaintiff** [1] - 1:5
**plaintiff** [28] - 3:8, 4:16, 6:18, 9:2, 10:19, 10:22, 12:23, 13:4, 15:10, 16:22, 17:8, 17:10, 17:11, 17:13, 18:1, 49:22, 50:13, 66:16, 74:4, 86:18, 87:7, 87:11, 93:8, 103:4, 120:17, 125:9, 126:7, 141:4
**plaintiff's** [7] - 9:12, 11:13, 50:3, 65:9, 68:10, 102:5, 121:23
**Plaintiffs** [1] - 1:24
**plaintiffs** [1] - 88:18
**plan** [3] - 138:9, 138:12
**plans** [1] - 43:4
**play** [1] - 135:23
**plus** [1] - 86

**podium** [2] - 6:24, 7:1
**point** [24] - 8:15, 9:16, 18:2, 19:2, 21:17, 26:12, 38:17, 39:9, 44:13, 46:8, 51:2, 63:4, 71:2, 75:10, 78:2, 84:2, 89:15, 89:19, 117:7, 124:15, 125:3, 130:10, 130:20, 139:14
**pointed** [1] - 25:18
**points** [1] - 113:18
**Porter** [1] - 68:16
**position** [14] - 13:6, 14:10, 30:8, 42:4, 50:24, 71:24, 72:3, 72:5, 72:6, 72:14, 85:20, 115:9, 121:19, 130:13
**possibility** [1] - 82:7
**possible** [2] - 13:21, 44:5
**possibly** [6] - 14:16, 21:14, 44:3, 49:14, 51:16
**post** [8] - 46:14, 111:18, 118:18, 119:4, 121:16, 121:21, 126:24, 127:2
**postdated** [2] - 97:13, 97:15
**postdates** [1] - 129:16
**potential** [8] - 122:7, 124:5, 125:6, 125:7, 128:12, 128:16, 135:3, 138:19
**potentially** [2] - 69:17, 122:19
**practically** [1] - 105:22
**practice** [1] - 127:15
**practiced** [1] - 89:15
**pre** [1] - 54:2
**pre-bankruptcy** [1] - 54:2
**prebankruptcy** [1] - 121:24
**precedent** [2] - 26:7, 26:11
**precisely** [2] - 8:20, 88:15
**predicate** [1] - 7:11
**predominantly** [1] - 128:23
**prefer** [2] - 146:22, 147:10
**prepared** [6] - 123:11, 123:14, 125:4

127:1, 127:2, 147:5
**present** [1] - 94:3
**presentation** [1] - 4:5
**preservation** [1] - 137:12
**preserve** [3] - 134:2, 134:3, 134:11
**preserved** [1] - 135:18
**press** [23] - 81:14, 81:15, 81:17, 81:18, 81:19, 81:23, 82:3, 82:7, 82:10, 82:13, 82:16, 82:22, 82:24, 83:1, 83:3, 83:10, 83:17, 83:20, 83:24, 84:1, 84:3, 84:17, 84:19
**pretty** [3] - 47:16, 138:16, 140:14
**prevailed** [1] - 124:1
**prevent** [2] - 22:18, 131:24
**previous** [1] - 62:6
**previously** [2] - 11:2, 119:21
**print** [1] - 83:5
**priority** [1] - 148:14
**privilege** [94] - 4:11, 14:8, 14:9, 16:8, 17:6, 17:7, 17:13, 17:16, 19:16, 20:15, 21:9, 22:11, 22:12, 22:17, 23:7, 24:5, 24:7, 24:10, 24:14, 25:22, 26:14, 26:15, 27:16, 27:21, 28:9, 28:18, 28:19, 29:10, 29:14, 29:16, 30:4, 34:10, 34:17, 34:18, 34:23, 35:7, 37:2, 37:23, 39:19, 39:21, 42:15, 45:3, 46:15, 47:2, 47:6, 47:10, 47:14, 47:19, 47:20, 47:24, 48:6, 49:8, 49:12, 56:3, 56:10, 57:18, 57:20, 58:15, 58:18, 65:13, 65:16, 65:18, 65:21, 66:4, 66:7, 66:9, 66:11, 66:14, 66:23, 71:14, 72:16, 72:23, 74:5, 78:1, 78:4, 78:13, 78:15, 80:24, 81:1, 86:24, 97:10, 101:10, 101:15, 101:19, 102:13, 103:1, 103:2, 104:21, 104:24, 111:11, 113:1,

114:7, 142:23
**privileged** [5] - 19:12, 37:1, 42:7, 42:12, 42:19
**pro** [1] - 118:4
**problem** [11] - 20:23, 34:1, 72:15, 84:15, 85:1, 90:14, 95:3, 110:12, 121:7, 147:23, 148:2
**problematic** [3] - 70:18, 73:3, 134:24
**problems** [3] - 150:21, 150:22, 150:23
**Procedure** [2] - 117:3, 118:6
**process** [9] - 7:16, 76:12, 88:7, 90:11, 90:16, 91:17, 95:5, 95:6, 95:8
**produce** [6] - 68:4, 68:5, 97:16, 100:10, 101:16, 103:5, 125:17, 148:18
**produced** [65] - 4:13, 12:12, 12:16, 15:19, 15:20, 16:23, 19:9, 41:14, 41:17, 41:23, 41:24, 42:3, 48:15, 48:21, 49:1, 49:5, 57:24, 64:19, 64:20, 65:24, 66:3, 73:22, 80:20, 81:5, 81:18, 81:20, 82:18, 92:6, 92:20, 92:23, 97:6, 97:10, 97:11, 98:5, 99:2, 99:4, 99:7, 99:18, 100:3, 100:19, 100:21, 101:5, 101:12, 102:6, 102:11, 102:21, 103:11, 103:17, 103:21, 103:24, 104:9, 109:3, 109:14, 110:21, 119:16, 120:10, 122:1, 123:17, 123:19, 124:14, 133:11, 133:18, 134:13, 134:14, 150:1
**product** [1] - 66:23
**production** [6] - 18:7, 41:19, 41:21, 92:7, 92:8, 126:8
**prong** [1] - 88:7
**pronounce** [1] - 3:14
**prosecution** [1] - 50:12
**protected** [1] - 129:4

**protects** [1] - 19:17
**prove** [1] - 15:15
**provide** [7] - 38:7, 39:23, 47:17, 68:6, 89:23, 101:17, 120:4
**provided** [11] - 10:17, 31:4, 68:19, 83:2, 86:12, 86:13, 86:15, 102:18, 107:8, 113:13, 118:16
**provides** [1] - 34:16
**providing** [4] - 79:9, 79:16, 79:24, 89:8
**proving** [2] - 93:17, 93:18
**provision** [1] - 39:8
**Public** [1] - 153:9
**public** [4] - 17:2, 42:14, 77:2, 82:17
**published** [1] - 84:5
**pull** [5] - 40:18, 40:22, 41:3, 73:7, 116:20
**purpose** [4] - 9:24, 95:10, 147:2
**purposes** [10] - 24:5, 48:24, 52:17, 88:15, 100:19, 115:8, 126:13, 139:1, 139:2, 141:8
**pursue** [4] - 50:4, 50:13, 50:22, 125:10
**put** [17] - 25:21, 29:7, 45:7, 50:16, 54:9, 58:15, 63:7, 68:24, 72:22, 102:11, 104:13, 105:1, 107:17, 117:8, 118:22, 146:5, 149:18
**putting** [1] - 38:8
**puzzle** [1] - 91:13

**Q**

**questions** [6] - 6:18, 6:20, 11:12, 50:23, 106:16, 106:18
**QUILLIN** [102] - 2:6, 2:7, 11:23, 12:8, 12:21, 13:17, 14:2, 16:6, 16:12, 17:21, 17:23, 31:9, 31:13, 40:17, 41:1, 48:3, 48:18, 50:3, 57:17, 63:18, 64:1, 64:14, 64:20, 65:9, 65:13, 65:19, 66:1, 66:8, 66:12, 66:15, 67:14, 67:18, 68:8, 68:15, 69:8, 70:1, 70:6, 70:12, 73:19, 74:3, 74:8, 75:21, 76:16, 76:22, 77:5, 80:5,
80:10, 81:6, 81:19, 81:22, 82:1, 82:6, 83:6, 83:9, 85:5, 85:10, 85:19, 86:10, 87:6, 92:21, 93:2, 97:7, 97:14, 98:6, 100:6, 101:6, 101:20, 102:7, 102:22, 103:12, 103:18, 104:6, 104:10, 104:23, 106:24, 119:10, 119:13, 119:17, 120:7, 124:13, 124:23, 125:7, 125:18, 126:2, 126:6, 127:3, 133:8, 133:17, 134:23, 135:9, 136:8, 136:11, 138:14, 138:23, 140:16, 141:23, 148:1, 149:1, 149:4, 149:6, 149:17, 149:23
**Quillin** [4] - 4:3, 4:4, 124:9
**quite** [1] - 107:17
**quote** [9] - 16:20, 19:15, 22:15, 23:7, 26:4, 43:21, 48:12, 88:11, 89:4
**quoted** [2] - 21:6, 40:23

**R**

**raise** [2] - 106:4, 134:8
**raised** [2] - 96:23, 100:4
**rarely** [1] - 47:17
**rather** [4] - 80:9, 128:21, 136:19, 151:3
**RE** [3] - 79:10, 79:16, 80:11
**reach** [1] - 144:19
**reaction** [1] - 135:23
**read** [8] - 10:16, 35:1, 40:21, 60:14, 73:1, 78:24, 79:5, 145:8
**reader** [1] - 59:2
**reading** [4] - 41:6, 69:22, 115:13, 129:9
**ready** [3] - 15:15, 41:8, 121:12
**real** [1] - 86:18
**realize** [2] - 89:6, 106:8
**realized** [1] - 99:24
**really** [22] - 4:9, 4:14, 4:15, 5:11, 6:2, 10:22, 18:17, 28:23, 38:15, 46:4, 63:5,
63:18, 71:13, 76:9, 105:20, 115:3, 115:5, 122:19, 142:10, 143:5, 147:8
**rearrange** [1] - 121:3
**reason** [9] - 19:13, 28:24, 32:9, 38:2, 94:23, 113:8, 116:1, 133:22, 141:15
**reasonable** [2] - 9:22, 147:22
**reasoning** [3] - 30:7, 51:14, 106:15
**reasons** [4] - 10:2, 25:15, 108:15, 143:24
**receive** [1] - 55:20
**received** [7] - 31:8, 33:4, 33:9, 40:14, 79:17, 80:1, 86:5
**receiving** [1] - 104:21
**recent** [3] - 6:2, 6:12, 96:17
**recently** [1] - 6:11
**reception** [1] - 36:1
**recess** [3] - 36:4, 85:13, 121:10
**recipient** [1] - 72:3
**recipient's** [1] - 72:3
**recipients** [4] - 69:10, 69:12, 72:7
**recognize** [3] - 4:21, 8:13, 141:14
**recognizes** [1] - 39:1
**recognizing** [2] - 23:15, 132:17
**recollection** [2] - 67:6, 86:16
**recommendation** [1] - 116:19
**recommendations** [1] - 118:10
**reconfirm** [1] - 135:17
**record** [11] - 3:15, 17:2, 34:3, 71:17, 71:18, 77:4, 78:9, 130:2, 130:21, 144:3, 153:9
**records** [1] - 76:21
**redacted** [6] - 37:15, 57:21, 57:22, 58:14, 143:17, 143:23
**redaction** [3] - 58:14, 58:18, 80:22
**refer** [5] - 45:8, 45:9, 65:3, 97:1, 121:22
**reference** [9] - 16:4, 16:7, 21:10, 73:17, 80:19, 80:21, 82:4,
**referenced** [9] - 12:3, 12:4, 54:7, 64:16, 67:2, 70:21, 80:17, 100:11, 100:16
**references** [5] - 16:15, 46:21, 74:9, 100:17, 126:22
**referencing** [1] - 34:14
**referred** [1] - 102:4
**referring** [1] - 76:2
**refers** [3] - 12:2, 83:24, 122:12
**refile** [2] - 9:3, 9:8
**refused** [1] - 17:14
**regard** [4] - 18:12, 148:9, 149:24, 151:1
**regarding** [11] - 5:13, 78:12, 81:17, 83:24, 92:16, 102:19, 103:22, 110:23, 110:24, 126:22, 133:12
**regards** [1] - 24:8
**registered** [1] - 76:12
**Registered** [1] - 153:7
**regularly** [1] - 89:8
**reinterpret** [1] - 7:18
**relate** [23] - 24:16, 43:10, 43:13, 54:12, 65:3, 65:7, 65:10, 73:17, 81:2, 94:12, 98:3, 103:15, 103:16, 104:11, 115:3, 119:1, 121:22, 121:23, 122:9, 132:15, 132:19, 132:20, 148:16
**related** [29] - 37:6, 37:7, 48:13, 50:11, 50:13, 64:5, 75:7, 75:8, 76:10, 80:8, 88:2, 92:5, 95:18, 95:23, 96:9, 97:5, 97:23, 100:2, 100:24, 102:20, 103:7, 103:10, 104:4, 108:1, 115:4, 120:11, 125:13, 126:23
**relates** [6] - 46:21, 75:6, 84:14, 119:15, 122:12, 139:6
**relating** [5] - 76:7, 77:13, 92:16, 95:12, 111:1
**relationship** [9] - 23:17, 28:7, 34:21, 92:3, 141:13, 141:19, 141:20,
142:16
**relationships** [1] - 140:20
**relatively** [1] - 4:20
**release** [11] - 81:17, 81:24, 82:13, 82:16, 83:1, 83:3, 83:11, 83:20, 83:24, 84:1, 84:3
**releases** [11] - 81:14, 81:18, 81:20, 82:4, 82:8, 82:10, 82:22, 83:1, 83:18, 84:18, 84:19
**relevance** [9] - 5:13, 5:14, 29:16, 38:13, 46:1, 49:11, 49:13, 52:16, 111:4
**relevant** [31] - 8:22, 22:18, 23:8, 29:13, 29:14, 29:15, 31:23, 34:19, 37:18, 46:3, 48:22, 49:14, 49:20, 52:16, 52:22, 53:9, 53:12, 53:16, 53:19, 75:23, 85:1, 86:22, 93:15, 93:20, 96:21, 108:2, 108:5, 118:19, 125:16, 139:11
**rely** [1] - 18:21
**relying** [2] - 31:16, 62:6
**remarkably** [1] - 83:11
**remarks** [1] - 88:6
**remember** [4] - 67:16, 69:20, 74:16, 116:17
**render** [1] - 116:5
**rendered** [3] - 94:24, 95:1, 126:17
**repeat** [2] - 108:14, 129:20
**repeatedly** [2] - 58:24, 72:21
**repeats** [1] - 69:18
**report** [9] - 53:23, 54:6, 55:14, 55:17, 55:20, 55:21, 56:15, 116:19, 131:8
**REPORTER** [1] - 153:5
**Reporter** [2] - 153:8
**reporting** [3] - 93:9, 93:10, 93:24
**reports** [1] - 118:10
**represent** [8] - 13:9, 13:16, 36:16, 62:15, 67:18, 101:24, 102:2, 140:4
**representation** [30] -

12:20, 13:12, 19:7, 19:8, 19:14, 19:19, 19:23, 20:3, 21:1, 21:11, 22:20, 23:14, 23:21, 27:6, 27:18, 28:5, 28:6, 28:12, 30:1, 32:15, 32:19, 35:11, 35:14, 41:16, 45:13, 52:10, 99:17, 99:21, 142:1

**representations** [1] - 42:21

**represented** [14] - 13:10, 13:15, 13:24, 20:13, 21:13, 55:23, 67:21, 75:4, 75:5, 95:24, 109:5, 109:12, 111:7, 145:11

**representing** [13] - 17:19, 23:18, 25:20, 43:21, 44:4, 51:22, 51:24, 133:4, 133:6, 134:19, 137:7

**request** [11] - 18:13, 18:14, 50:16, 119:20, 119:21, 131:16, 131:17, 151:5

**requested** [1] - 139:10

**requesting** [1] - 26:24

**requests** [5] - 4:14, 18:7, 115:2, 119:22, 119:24

**require** [3] - 99:13, 100:24, 125:16

**required** [9] - 5:3, 13:3, 64:3, 71:22, 73:21, 111:13, 116:8, 134:13, 148:10

**requirements** [3] - 95:5, 95:7, 95:8

**requires** [1] - 24:7

**requiring** [1] - 92:7

**researched** [1] - 30:21

**reserved** [1] - 151:6

**residence** [2] - 88:14, 88:17

**resident** [1] - 88:12

**resolution** [6] - 62:18, 64:16, 73:20, 103:19, 123:10, 123:13

**resolutions** [6] - 64:19, 98:16, 98:18, 98:21, 99:1, 99:4

**resolve** [1] - 112:21

**respect** [18] - 7:4, 12:11, 15:14, 49:10,

57:11, 77:6, 86:13, 90:22, 91:1, 92:11, 92:13, 94:11, 95:20, 96:1, 96:4, 96:7, 98:14

**respecting** [1] - 137:1

**respond** [2] - 11:10, 63:19

**responded** [1] - 18:8

**response** [5] - 4:13, 37:16, 39:10, 75:5, 82:9

**responsibilities** [1] - 72:9

**responsibility** [2] - 135:15, 136:6

**result** [2] - 29:3, 47:13

**retained** [4] - 32:2, 89:21, 89:22, 104:4

**return** [1] - 118:13

**reversed** [2] - 144:15, 144:21

**review** [5] - 17:12, 70:24, 83:4, 83:5, 98:8

**rightfully** [1] - 132:3

**rights** [1] - 114:9

**risk** [2] - 22:21, 22:23

**RMR** [1] - 153:20

**Robert** [3] - 5:18, 47:22, 116:16

**ROBERTS** [1] - 2:6

**Roberts** [1] - 4:3

**role** [1] - 123:12

**rolling** [1] - 150:24

**roughly** [1] - 106:21

**rubber** [1] - 96:10

**rule** [7] - 19:21, 21:18, 21:20, 22:12, 22:13, 25:6, 25:16

**Rule** [4] - 21:24, 67:11, 117:14, 118:5

**Rules** [2] - 30:18, 117:2

**ruling** [9] - 26:2, 26:17, 26:19, 27:3, 28:23, 36:20, 36:21, 126:16, 126:20

**run** [3] - 110:22, 147:4, 147:19

**running** [1] - 150:20

**runs** [1] - 147:15

**Sample** [10] - 87:19, 87:20, 88:9, 88:18, 88:19, 89:1, 94:14, 94:15, 96:14, 96:17

**sample** [2] - 95:14, 140:11

**sat** [1] - 84:23

**satisfied** [1] -

**satisfies** [2] - 91:12, 91:13

**satisfy** [1] - 7:10

**save** [1] - 65:14

**saved** [1] - 146:3

**saw** [5] - 10:15, 74:10, 74:12, 81:9, 128:22

**scan** [1] - 34:12

**scope** [3] - 19:8, 44:17, 63:14

**screw** [1] - 146:22

**se** [1] - 118:4

**seal** [2] - 54:10, 153:15

**search** [1] - 140:6

**seated** [3] - 3:1, 85:14, 121:11

**second** [7] - 5:16, 20:23, 21:2, 21:17, 30:12, 94:15, 115:20

**secondly** [1] - 15:18, 29:13

**secretary** [6] - 15:7, 15:8, 92:19, 137:15, 137:21

**section** [3] - 67:11, 67:16, 117:2

**Section** [3] - 15:9, 34:14, 34:16

**see** [26] - 6:5, 11:20, 14:11, 21:14, 24:23, 34:15, 35:8, 35:17, 40:21, 47:15, 58:9, 58:17, 64:9, 64:22, 66:18, 77:17, 84:6, 100:17, 107:12, 125:12, 125:15, 134:7, 139:6, 140:1, 145:8, 146:23

**seeing** [1] - 69:20

**seek** [2] - 9:15, 152:7

**seeking** [2] - 87:7, 132:1

**seeks** [1] - 140:1

**seem** [1] - 80:6

**selected** [1] - 68:4

**Semple** [4] - 3:22, 3:24, 147:1, 150:14

**SEMPLE** [11] - 2:4, 3:23, 77:10, 77:15, 78:9, 132:22, 147:2, 147:11, 150:6, 150:10, 150:19

**send** [3] - 16:1, 16:3, 56:20

**sense** [4] - 13:11, 39:7, 75:11, 124:19

**sent** [4] - 44:19, 51:11, 70:22, 144:22

117:17, 137:8

**sequentially** [1] - 61:4

**serve** [3] - 117:20, 117:24, 146:19

**served** [2] - 90:2, 93:12

**server** [12] - 70:17, 127:9, 127:16, 127:20, 131:22, 133:16, 136:4, 136:22, 137:1, 137:10, 137:12

**servers** [12] - 127:11, 127:18, 127:24, 129:4, 130:9, 131:11, 133:13, 133:15, 133:17, 133:23, 134:12, 134:17

**service** [2] - 76:12, 142:2

**set** [2] - 119:22, 153:14

**sets** [1] - 14:22

**setup** [1] - 92:9

**seven** [1] - 100:8

**several** [1] - 78:10

**shed** [1] - 131:20

**sheet** [2] - 68:7, 70:20

**shift** [1] - 86:3

**shifted** [1] - 98:13

**short** [3] - 72:9, 85:12, 121:8

**Shorthand** [1] - 153:8

**shortly** [1] - 54:10

**show** [8] - 12:17, 12:24, 18:2, 95:21, 96:5, 103:3, 131:11, 131:24

**showed** [1] - 49:6

**showing** [1] - 93:20

**shows** [4] - 96:11, 102:12, 103:2, 105:1

**side** [1] - 38:9

**sides** [2] - 73:11, 148:3

**significant** [7] - 8:16, 9:17, 22:24, 84:12, 88:10, 96:14, 96:16

**significantly** [1] - 38:11

**similar** [9] - 22:14, 35:1, 35:3, 38:8, 79:15, 87:19, 89:2, 113:4, 113:7

**simple** [2] - 53:22, 58:1

**simpler** [1] - 38:11

**simplify** [1] - 41:9

39:10, 87:16

**single** [4] - 32:17, 62:16, 66:2, 89:20

**sit** [13] - 30:2, 41:4, 60:9, 68:20, 68:23, 91:20, 98:10, 109:6, 109:19, 110:7, 117:17, 146:20, 151:8

**sitting** [2] - 33:11, 107:14

**situation** [10] - 23:14, 28:3, 28:5, 28:13, 32:8, 91:24, 110:22, 114:3, 143:19, 143:21

**situations** [1] - 143:21

**six** [2] - 60:9, 100:4

**sixty** [1] - 79:6

**sixty-five** [1] - 79:6

**slightly** [1] - 18:16

**slipped** [1] - 67:5

**slow** [1] - 27:24

**Smith** [1] - 68:11

**sole** [1] - 27:17

**solely** [4] - 14:5, 43:21, 65:2, 80:21, 82:4, 119:1

**someone** [3] - 46:1, 63:15, 132:4

**someplace** [1] - 111:13

**sometime** [1] - 130:10

**sometimes** [1] - 7:2

**somewhat** [1] - 8:17

**sooner** [1] - 151:2

**sophisticated** [1] - 89:5

**sorry** [13] - 27:23, 27:24, 45:11, 46:12, 60:22, 66:8, 78:5, 83:6, 120:20, 123:4, 129:16, 129:21, 144:17

**sort** [2] - 33:2, 105:14

**sound** [1] - 136:2

**southern** [1] - 36:13

**spaced** [1] - 116:15

**speaks** [2] - 104:16, 113:17

**specific** [12] - 5:21, 7:21, 8:10, 35:6, 67:16, 73:2, 87:7, 87:8, 90:15, 90:23, 91:18, 150:12

**specifically** [4] - 13:7, 19:15, 74:11, 96:21

**specifics** [3] - 9:13, 11:20

**spectrum** [1] - 6:14

spent [1] - 3:2
spoliate [1] - 133:20
spoliation [10] - 71:3, 71:5, 71:15, 111:19, 127:7, 130:3, 130:18, 135:14, 136:1, 139:9
squarely [1] - 140:10
stage [9] - 92:8, 110:8, 121:16, 124:12, 124:13, 135:20, 136:2, 139:9
stamped [3] - 96:10, 101:18, 102:11
stand [3] - 6:24, 21:6, 114:11
standard [4] - 116:19, 116:21, 117:4, 117:16
standing [7] - 17:3, 113:22, 116:17, 116:18, 118:3, 118:4, 118:7
stands [1] - 26:3
STANG [1] - 1:20
Stang [1] - 3:10
start [4] - 72:20, 147:19, 150:20, 150:23
started [2] - 3:6
starting [1] - 150:8
starts [2] - 112:17, 116:6
state [19] - 7:23, 15:19, 16:17, 17:1, 49:23, 80:14, 87:5, 90:8, 90:9, 90:11, 90:12, 90:13, 90:18, 92:2, 92:4, 92:5, 92:15, 92:19
State [1] - 153:1
statement [1] - 108:17
statements [2] - 24:8, 37:6, 45:8
states [1] - 8:18
STATES [1] - 1:1
States [2] - 1:15, 76:5
statute [10] - 25:7, 25:12, 30:23, 30:24, 31:2, 34:24, 38:7, 112:20, 113:5, 113:7
statutes [2] - 25:9, 112:10
statutory [3] - 7:11, 88:8, 113:2
stay [2] - 106:2, 107:2
stenographic [1] - 153:10
step [4] - 35:21, 35:23, 81:12

steps [3] - 111:8, 111:9, 129:3
still [14] - 21:6, 38:6, 38:13, 39:1, 52:2, 91:15, 112:22, 117:14, 127:5, 127:21, 131:11, 146:1
stock [2] - 82:10, 82:15
stockholders [1] - 89:10
stone [1] - 146:13
stored [1] - 70:2
straight [2] - 89:11, 129:24
Street [1] - 1:12
stretch [1] - 10:20
strict [1] - 8:12
strictly [3] - 48:22, 49:9, 82:20
Strine [2] - 6:13, 91:23
stuff [9] - 58:10, 73:9, 117:24, 121:3, 124:17, 129:24, 130:1, 149:12, 149:15
stupid [1] - 124:21
sub [10] - 20:4, 20:5, 20:7, 20:12, 20:14, 20:15, 28:11, 136:10, 137:10
subject [7] - 17:12, 51:12, 93:21, 142:16, 145:17, 152:4
subjecting [1] - 16:15
submit [2] - 15:23, 17:24
submitted [3] - 5:2, 9:18, 16:9
subparts [1] - 136:20
subpoena [1] - 77:20
subpoenaed [1] - 47:11
subsequently [2] - 97:10, 98:5
subsidiary [6] - 20:1, 20:23, 21:2, 44:20, 62:10, 84:7
substance [1] - 107:19
substantial [6] - 22:23, 40:10, 40:12, 69:17, 107:3, 136:20
substantive [1] - 140:17
succeeded [1] - 86:23
successor [6] - 14:7, 17:9, 17:11, 17:15

65:20, 133:24
sucked [1] - 7:2
suddenly [2] - 8:2, 27:20
sue [8] - 19:20, 25:19, 27:15, 27:19, 30:2, 53:5, 146:2
sued [13] - 13:7, 13:8, 20:2, 20:16, 22:3, 52:1, 52:11, 59:13, 67:23, 113:1, 141:5, 144:4, 144:6
sues [1] - 113:10
sufficient [1] - 72:17
suggest [8] - 60:8, 64:12, 84:19, 93:23, 100:18, 109:9, 132:12, 149:22
suggested [3] - 100:22, 137:5, 148:22
suggesting [5] - 21:7, 47:18, 58:23, 114:19, 139:20
suing [12] - 20:6, 20:7, 20:13, 20:24, 21:12, 23:2, 25:4, 25:5, 27:5, 28:2, 28:16
suit [4] - 20:10, 22:17, 23:4, 113:3
summarize [1] - 112:18
summary [1] - 12:9
Superior [1] - 22:7
supplement [1] - 99:13
supplemented [2] - 97:8, 99:12
supplied [3] - 48:4, 76:22, 77:6
support [1] - 9:18
supposed [2] - 47:23, 109:19
supposedly [1] - 76:3
supreme [1] - 146:6
Supreme [2] - 6:11, 7:15
surprise [2] - 54:3
suspect [1] - 140:8
swear [1] - 71:12
system [1] - 146:7
talks [1] - 97:24
tangentially [1] - 115:4
TAYLOR [1] - 2:4
Taylor [1] - 3:24
tech [1] - 70:14
techier [1] - 70:14
technically [1] - 115:15

Teleglobe [20] - 18:19, 18:22, 19:3, 19:14, 19:24, 20:19, 20:22, 21:15, 21:18, 23:11, 24:23, 24:24, 25:10, 25:11, 25:17, 28:12, 32:10, 113:17, 113:18, 115:13
telephone [1] - 117:19
temporal [1] - 46:3
ten [8] - 35:16, 45:6, 116:14, 117:12, 121:8, 146:16, 149:10, 149:11
Tenth [6] - 144:17, 144:21, 145:6, 145:8, 145:9, 145:11
terms [4] - 63:12, 94:17, 140:4, 151:12
test [3] - 8:1, 8:4, 89:11
tested [2] - 52:15, 52:17
THE [368] - 1:1, 1:2, 1:15, 3:1, 3:13, 3:19, 4:7, 6:23, 7:7, 7:14, 8:7, 8:13, 9:5, 10:7, 11:6, 12:7, 12:19, 13:14, 13:24, 16:1, 16:10, 17:18, 17:22, 18:3, 18:21, 19:2, 19:10, 19:13, 21:4, 21:21, 22:4, 22:10, 23:13, 24:2, 24:21, 25:8, 25:18, 26:10, 26:23, 27:8, 27:12, 28:4, 29:1, 29:6, 29:23, 30:9, 30:14, 30:17, 31:1, 31:7, 31:12, 31:14, 31:20, 32:7, 32:22, 33:5, 33:15, 33:18, 33:24, 34:4, 34:8, 35:3, 35:17, 35:19, 35:23, 36:5, 36:8, 36:11, 36:18, 37:4, 37:7, 37:10, 37:12, 37:19, 38:12, 38:20, 39:18, 39:23, 40:2, 40:5, 40:9, 40:15, 40:20, 41:2, 41:11, 41:20, 41:24, 42:6, 42:9, 42:23, 43:6, 43:12, 43:16, 44:1, 44:21, 45:9, 45:11, 46:11, 46:13, 47:1, 48:16, 49:21, 51:3, 51:6, 51:15, 52:2, 52:5, 52:24, 53:4, 53:11, 53:15, 54:5, 54:16,

54:21, 55:2, 55:7, 55:10, 55:16, 55:19, 56:2, 56:12, 56:17, 56:23, 57:7, 57:13, 57:23, 58:4, 58:8, 58:13, 58:17, 59:6, 59:11, 59:16, 59:22, 60:1, 60:17, 60:20, 60:24, 61:3, 61:8, 61:10, 61:14, 61:19, 61:23, 62:2, 62:5, 62:17, 62:23, 63:17, 63:21, 64:7, 64:18, 65:6, 65:12, 65:17, 65:22, 66:6, 66:10, 66:13, 67:10, 67:15, 68:6, 68:10, 68:16, 69:5, 69:11, 70:4, 70:10, 70:15, 71:4, 71:13, 73:8, 73:23, 74:7, 74:16, 74:20, 75:2, 75:13, 75:19, 75:22, 76:11, 76:19, 77:1, 77:7, 77:12, 77:17, 78:3, 78:7, 78:11, 78:21, 78:24, 79:4, 79:11, 79:13, 79:18, 79:22, 80:2, 80:6, 80:16, 81:10, 81:21, 81:23, 82:3, 82:24, 83:8, 83:15, 83:19, 84:9, 84:13, 85:8, 85:11, 85:14, 85:24, 87:2, 87:10, 87:22, 89:23, 90:5, 91:7, 91:10, 91:15, 92:13, 92:24, 93:6, 94:19, 94:23, 95:16, 96:15, 97:12, 97:18, 98:7, 98:18, 98:22, 99:1, 99:10, 99:20, 100:7, 100:15, 101:4, 101:8, 101:13, 102:1, 102:14, 102:23, 103:13, 104:2, 104:7, 104:12, 104:19, 105:8, 105:16, 106:17, 106:21, 107:2, 107:16, 107:23, 109:1, 109:19, 109:23, 110:1, 110:5, 110:12, 111:22, 112:2, 112:5, 112:11, 112:13, 113:6, 114:5, 114:18, 114:23, 115:15, 117:10, 117:23, 119:3, 119:7,

119:11, 119:14, 119:18, 120:15, 120:22, 121:1, 121:6, 121:11, 121:14, 122:17, 123:2, 123:6, 123:13, 123:16, 124:6, 124:9, 124:20, 125:6, 125:11, 125:19, 126:4, 126:13, 127:4, 127:11, 127:20, 128:1, 128:4, 128:7, 128:15, 128:20, 129:5, 129:14, 129:18, 129:20, 129:22, 130:3, 130:15, 130:24, 131:4, 131:7, 131:15, 132:8, 133:2, 133:14, 134:7, 134:24, 135:13, 136:10, 136:12, 136:19, 137:2, 137:20, 138:4, 138:6, 138:10, 138:16, 139:2, 139:5, 139:15, 140:12, 141:9, 141:24, 142:15, 143:10, 143:14, 143:18, 144:2, 144:11, 144:16, 145:13, 145:16, 145:22, 146:1, 146:8, 147:6, 147:16, 147:23, 148:2, 148:7, 148:17, 148:21, 149:8, 149:21, 150:4, 150:8, 150:13, 150:20, 151:8, 151:16, 151:20, 151:23, 152:10

**themselves** [2] - 64:8, 88:21
**theory** [1] - 139:22
**thereafter** [1] - 55:24
**therefore** [2] - 9:10, 37:17
**thinking** [4] - 135:3, 138:18, 138:19, 149:10
**third** [4] - 8:15, 47:10, 47:14, 112:23
**Third** [12] - 21:5, 23:15, 24:18, 24:19, 25:24, 26:13, 33:20,

33:21, 35:12, 144:15, 144:16, 144:19
**thirty** [4] - 149:18, 150:4, 150:6, 150:8
**thorniest** [1] - 38:14
**thorough** [1] - 113:21
**three** [8] - 36:8, 36:10, 36:11, 129:10, 130:1, 130:22, 148:23, 149:9
**threw** [1] - 144:9
**throwing** [1] - 141:10
**Thursday** [1] - 1:10
**thwart** [1] - 22:16
**Thynge** [1] - 71:20
**THYNGE** [1] - 1:15
**tier** [1] - 21:2
**tier's** [1] - 20:23
**tight** [1] - 95:22
**timing** [9] - 54:18, 57:5, 75:11, 75:14, 121:15, 122:5, 128:12, 147:3, 148:11
**Tires** [1] - 91:22
**title** [3] - 30:10, 30:11, 137:21
**Title** [1] - 5:18
**today** [7] - 11:2, 23:4, 26:3, 83:5, 87:7, 99:11
**together** [6] - 3:11, 100:14, 102:12, 105:1, 118:22, 149:18
**tomorrow** [2] - 149:10, 150:9
**ton** [1] - 55:3
**took** [2] - 86:18, 101:22
**top** [2] - 16:11, 61:18
**topic** [1] - 110:17
**Toronto** [2] - 82:10, 82:15
**tortious** [2] - 16:17, 90:8
**totally** [1] - 53:21
**toward** [1] - 98:3
**towards** [2] - 128:23, 152:3
**traded** [1] - 82:9
**transact** [1] - 15:18
**transacting** [2] - 15:22, 90:7
**transaction** [12] - 85:21, 87:14, 90:23, 91:1, 96:2, 96:7, 96:10, 98:10, 108:13, 10¯¯¯

109:2, 109:13
**transactions** [3] - 16:20, 96:8, 105:13
**transcript** [6] - 117:20, 118:1, 146:19, 147:4, 147:20, 153:10
**treated** [1] - 6:6
**trial** [2] - 59:23, 60:2
**trip** [1] - 152:12
**trouble** [2] - 65:15, 82:15
**true** [4] - 11:24, 96:5, 120:8, 153:10
**trustee** [22] - 21:12, 51:4, 51:6, 53:1, 53:3, 53:5, 53:10, 55:9, 56:8, 56:11, 134:2, 135:2, 138:1, 138:6, 138:8, 138:10, 138:17, 138:18, 138:21, 138:23, 138:24
**try** [8] - 10:10, 18:15, 36:2, 116:2, 118:2, 131:23, 146:20, 151:2
**trying** [15] - 11:14, 15:11, 18:9, 18:10, 34:12, 36:18, 38:22, 39:8, 41:3, 64:22, 106:2, 108:6, 114:19, 131:15, 149:20
**Tulsa** [1] - 4:2
**turn** [1] - 108:19
**twenty** [1] - 79:5
**twenty-five** [1] - 79:5
**two** [41] - 4:1, 13:7, 13:17, 14:3, 20:21, 23:17, 23:19, 29:12, 31:16, 31:24, 32:15, 32:16, 34:11, 36:9, 47:3, 52:19, 52:21, 56:4, 56:5, 67:22, 80:18, 85:22, 86:20, 87:8, 92:3, 93:5, 96:23, 106:6, 112:9, 130:1, 134:5, 138:20, 141:2, 141:5, 142:5, 144:1, 144:12, 149:11, 144:12, 149:11,
**type** [10] - 5:9, 29:17, 47:5, 47:15, 47:17, 68:18, 72:16, 95:17, 122:10, 142:23
**types** [1] - 77:14
**U.S** [56] - 13:3, 13:5, 13:9, 13:12, 13:13,

41:16, 41:21, 43:10, 43:15, 43:17, 44:9, 46:21, 54:13, 55:14, 56:9, 56:11, 62:9, 62:15, 65:4, 75:18, 77:23, 83:14, 87:15, 88:19, 89:21, 90:3, 96:8, 97:2, 97:24, 98:13, 98:21, 98:22, 99:6, 105:5, 105:7, 105:13, 108:12, 108:13, 108:14, 108:22, 108:23, 109:2, 109:13, 121:22, 122:9, 122:13, 122:24, 127:14, 137:15, 137:18, 146:6, 148:16, 148:20
**UCC** [5] - 91:2, 91:6, 91:8, 98:14, 98:15
**under** [37] - 6:6, 7:19, 14:7, 15:11, 16:21, 19:14, 22:11, 24:8, 32:7, 34:16, 34:17, 49:1, 50:21, 54:10, 62:13, 63:15, 65:9, 67:11, 67:12, 87:3, 88:11, 90:10, 94:13, 95:1, 96:14, 96:17, 99:14, 105:21, 113:14, 116:21, 117:1, 118:5, 129:2, 131:19, 136:11, 136:12, 144:12
**underlying** [1] - 93:18
**underscores** [1] - 81:8
**understood** [1] - 87:6
**uniformly** [1] - 120:4
**unilaterally** [2] - 24:10, 24:14
**Union** [1] - 86:7
**union** [1] - 86:14
**unique** [1] - 8:17
**UNITED** [1] - 1:1
**United** [2] - 1:15, 76:5
**universe** [4] - 44:24, 45:4, 46:20, 49:17
**unjust** [1] - 22:16
**unless** [4] - 26:4, 35:8, 36:21, 72:13
**unrelated** [1] - 52:7
**unsecured** [1] - 123:24
**unsent** [1] - 46:9
**unsuccessful** [1] - 116:3
**unturned** [1] - 146:13
**unusual** [1] - 84:9
**up** [29] - 21:8, 21:9,

26:18, 30:3, 33:23, 39:4, 39:8, 40:18, 40:22, 41:4, 41:12, 68:1, 85:15, 107:7, 119:23, 120:22, 121:2, 124:15, 124:24, 126:5, 141:17, 146:22, 149:20
**uptake** [1] - 27:24
**urgency** [1] - 132:12
**US** [2] - 89:16, 138:7
**USA** [97] - 12:13, 12:18, 12:22, 13:2, 13:9, 13:12, 13:19, 13:23, 14:15, 14:17, 15:5, 15:7, 15:14, 15:20, 16:7, 16:23, 48:8, 48:9, 48:11, 48:14, 48:22, 49:4, 49:7, 56:8, 56:18, 57:3, 63:24, 64:4, 64:5, 64:10, 64:11, 64:17, 65:23, 66:4, 67:3, 73:18, 73:21, 74:24, 76:6, 76:17, 76:23, 76:24, 77:6, 77:9, 80:4, 80:8, 80:15, 80:16, 80:19, 81:2, 81:4, 82:5, 86:4, 86:6, 86:13, 86:19, 86:21, 90:21, 93:13, 98:2, 98:3, 98:4, 100:1, 100:17, 100:24, 103:10, 103:16, 103:19, 103:21, 103:23, 104:5, 104:11, 105:10, 108:1, 108:2, 110:20, 111:4, 119:15, 120:9, 120:19, 123:14, 124:24, 125:13, 126:11, 126:23, 133:5, 133:6, 133:15, 137:3, 137:7, 141:16, 141:19, 141:20, 142:3, 143:2, 143:15
**USA's** [1] - 133:11
**uses** [1] - 7:17
**usurp** [2] - 74:12, 74:14
**variant** [1] - 103:8
**various** [2] - 10:16, 101:10
**verify** [1] - 35:18
**verifying** [1] - 35:20
**versus** [3] - 6:7, 22:7,

63:23

**view** [6] - 8:23, 45:18, 64:8, 91:13, 115:14, 129:1

**viewing** [1] - 114:22

**voice** [1] - 7:2

**volumes** [1] - 113:17

**vote** [1] - 103:23

**wait** [5] - 10:7, 52:5, 61:14, 66:6, 78:7

**waive** [12] - 14:9, 17:16, 24:10, 24:14, 28:9, 28:17, 28:19, 65:14, 65:15, 65:21, 145:19, 145:23

**waived** [5] - 17:7, 72:23, 80:24, 114:8, 114:9

**waiver** [3] - 20:8, 26:4, 41:18

**waiving** [3] - 24:6, 24:13, 65:18

**walked** [1] - 46:10

**wants** [3] - 26:8, 65:10, 140:17

**waste** [1] - 109:8

**water** [1] - 46:4

**wazoo** [1] - 53:18

**wearing** [9] - 59:1, 59:4, 59:8, 59:9, 59:10, 60:3, 60:6, 60:11, 63:9

**website** [1] - 118:8

**week** [1] - 150:18

**weekend** [1] - 152:13

**weeks** [2] - 149:11, 149:12

**weigh** [1] - 49:13

**Westlaw** [1] - 22:8

**whatsoever** [1] - 47:21

**WHEREOF** [1] - 153:14

**whole** [1] - 146:3

**wholesome** [1] - 10:5

**Willie** [1] - 80:13

**willy** [1] - 68:3

**Wilmington** [2] - 1:13, 153:16

**wisdom** [2] - 46:8, 145:3

**withheld** [4] - 46:19, 65:1, 78:20, 101:11

**WITNESS** [1] - 153:14

**wonderful** [2] - 31:11, 152:13

**word** [1] - 4:23

**words** [7] - 20:11, 29:7, 35:6, 60:14, 62:13, 64:7, 68:11

**wore** [1] - 63:16

**worth** [1] - 66:13

**wrestle** [2] - 38:1, 112:15

**wrestles** [1] - 112:9

**wrestling** [1] - 122:15

**wrote** [1] - 84:24

**year** [2] - 133:21

**year-and-a-half** [1] - 133:21

**years** [5] - 52:19, 52:21, 60:10, 75:15, 130:1

**Young** [4] - 93:7, 93:11, 94:11, 95:9

**Ziehl** [1] - 3:11

**ZIEHL** [1] - 1:20

**zone** [1] - 36:7