IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| P. DAVID NEWSOME, JR., as Liquidating Trustee of Mahalo Energy (USA), Inc., <br><br> *Plaintiff,* <br><br> v. <br><br> JEFF G. LAWSON and GRANT A. MACKENZIE, <br><br> *Defendants.* | Civ. No. 14-842-RGA-MPT |

## MEMORANDUM OPINION

Laura Davis Jones, Esquire and James E. O'Neill, Esquire of Pachulski Stang Ziehl & Jones LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Ali M.M. Mojdehi, Esquire and Janet Dean Gertz, Esquire of Cooley LLP, San Diego, California.

James W. Semple, Esquire of Cooch and Taylor, P.A., Wilmington, Delaware. Counsel for Defendants. Of Counsel: Paula J. Quillin, Esquire and Joseph R. Farris, Esquire of Franden, Farris, Quillin, Goodnight, & Roberts, Tulsa, Oklahoma.

December 12, 2017

![signature](Richard G. Andrews)
**ANDREWS, U.S. District Judge:**

Plaintiff P. David Newsome, Jr. ("Plaintiff") is the liquidating trustee and successor-in-interest to the claims of the reorganized debtor Mahalo Energy (USA), Inc. ("Mahalo USA"). (D.I. 115). Plaintiff has asserted various claims against Defendants Jeff G. Lawson and Grant A. MacKenzie (collectively, the "Defendants") based on their role as attorneys for both Mahalo USA and its parent Mahalo Energy Ltd. ("Mahalo Canada"). (*Id.* at ¶¶ 9, 84). The parties are currently engaged in jurisdictional discovery, which has led to the present dispute. A magistrate judge denied Plaintiff's motion to compel certain documents Defendants withheld as privileged. (D.I. 128). Presently before the court are Plaintiff's objections to the magistrate judge's rulings. (D.I. 129). For the reasons stated below, the court affirms in part and reverses in part the magistrate judge's rulings.

## I. BACKGROUND

### A. Factual Background

Mahalo USA was a Delaware corporation and wholly-owned subsidiary of Mahalo Canada, a Canadian corporation headquartered in Calgary, Alberta. (D.I. 115 ¶¶ 27, 80). On May 21, 2009, Mahalo USA filed for bankruptcy and Mahalo Canada filed for the Canadian equivalent of bankruptcy. (*Id.* at ¶¶ 26, 28). Defendants are corporate lawyers at Burnett, Duckworth & Palmer, LLP, a Canadian law firm, and had an attorney-client relationship with both Mahalo USA and Mahalo Canada. (*Id.* at ¶¶ 9, 84). Defendants also served as officers or directors of the companies. Specifically, MacKenzie was the corporate secretary of both Mahalo USA and Mahalo Canada, and Lawson was a director of Mahalo Canada. (*Id.* at ¶ 84).

### B. Procedural History

Plaintiff sued Defendants alleging breach of attorney fiduciary duty, attorney malpractice, aiding and abetting breach of fiduciary duties, and aiding and abetting illegal distributions in

1

violation of 8 *Del. C.* § 174. (*Id.* at ¶¶ 115-82). On August 28, 2014, Defendants filed a motion to dismiss, asserting lack of personal jurisdiction. (D.I. 11). After briefing and oral argument, the court entered an order granting Plaintiff leave to conduct jurisdictional discovery. (D.I. 35). Plaintiff thereafter issued discovery requests which led to several discovery disputes. (D.I. 47, D.I. 49, D.I. 50).

On May 12, 2015, the court referred the determination of all discovery disputes to a magistrate judge. (D.I. 68). A ruling on the parties' discovery disputes was held in abeyance pending, among other things, disposition of Plaintiff's motion to amend, which the court granted. (D.I. 20, D.I. 59, D.I. 85). After Plaintiff filed his first amended complaint, Defendants filed their second motion to dismiss. (D.I. 115, D.I. 116). The second motion to dismiss, like the first motion to dismiss, argued that the court lacked personal jurisdiction. (D.I. 116 at 5-8). Accordingly, the parties requested that the court rule on the outstanding discovery disputes. (D.I. 117).

### C. The Magistrate Judge's Rulings

The only portion of the discovery disputes currently before the court is whether Defendants have improperly asserted privilege to withhold certain documents from production. Plaintiff moved to compel production of the documents based on two exceptions to the attorney-client privilege: the adverse-litigation exception recognized by the Third Circuit in *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007), and the breach of duty exception codified at Del. R. Evid. 502(d)(3). (D.I. 128 at 18:15-20, 21:24).

On June 9, 2016, the magistrate judge held a discovery conference, and the transcript of that conference served as the order of the court. (D.I. 126, D.I. 128). In general, the magistrate judge found that the adverse-litigation exception was inapplicable, because Plaintiff was suing the joint attorney and not the other joint client. (*See, e.g.*, D.I. 128 at 19:13-20:19). In addition, the

2

breach of duty exception was inapplicable, because it "has nothing to do with joint representations." (*See, e.g., id.* at 32:12-19). More specifically, the magistrate judge made the following six rulings to which Plaintiff objects:

> THE COURT: [U]nder the *Teleglobe* case, the Court specifically stated, and I quote, the great caveat of the joint client privilege is that it only protects communications from compelled disclosures to parties outside the joint representation. When former co-clients sue one another ... the default rule is that all communications made in the course of the joint representation are discoverable. The *Teleglobe* case differs from this case because in that case, the subsidiary sued the parent. And there had been a joint representation involved between the parent and the sub. Here [it is] not joint clients suing one another, ... it's one client ... suing the attorney for both clients. A waiver cannot occur for the client who is not the party to the suit. .... In other words, if your argument is we have a parent and a sub, the sub is now suing counsel who allegedly represented both the parent and the sub, that parent [doesn't] lose attorney/client privilege just because the sub has sued the attorney. That is a completely different circumstance. And that's what I understand we have here and what we didn't have in the *Teleglobe* case.

(D.I. 128 at 19:13-20:19).

> THE COURT: [Y]ou're suggesting to me that the parent has given up ... any claim of attorney/client privilege in any document that has any reference to [Mahalo USA] because of the joint representation and [Mahalo USA is] now suing through the trustee ... the attorneys that represented it [and] the parent. I don't see how ... *Teleglobe* ... fits.
>
> MR. MOJDEHI: Let me address that question which was the second point. So *Teleglobe* gives us the general rule, and then the question is does this fall within that general rule?
>
> THE COURT: And the answer is no.

(*Id.* at 21:4-21).

> THE COURT: Then [*Teleglobe*] says when co-clients and their common attorneys communicate with one another both communications are in confidence for privilege purposes. Moreover, the waiving of attorney/client privilege requires a consent. That consent [is in] regards to a client. Under the statements there are other laws governing lawyers. And a client ... may unilaterally waive the privilege as to its own communications with a joint attorney so long as those communications concern only the waiving client. It may not, however, unilaterally waive the privilege as to any other joint client communication or to any of its communications that relate to the joint clients. And that was the

3

finding by the Third Circuit. That was the finding of the law that was applicable by the Third Circuit.

(*Id.* at 24:2-19).

> THE COURT: You may have a case in the Delaware statutes, but I am saying to you I am going to follow the *Teleglobe* case on this, because the *Teleglobe* case also considered that Delaware statute in its applications and findings.
>
> MR. MOJDEHI: But it wasn't dealing with -- for the reasons you have stated, so we have got to take the general rule in *Teleglobe* and apply it to what we have here.
>
> THE COURT: But it has pointed out, you cannot -- just because I decide to sue my attorney who is jointly representing somebody else, I cannot say -- I mean, this would put attorney/client privilege on its head. And I don't agree with the California case [*Anten v. Super. Ct.*, 183 Cal. Rptr. 3d 422, 423 (Cal. Ct. App. 2015)]. And I don't think the Third Circuit would, either.

(*Id.* at 25:8-26:4; *see also Id.* at 22:1-9).

> THE COURT: I think when we're talking about breach of a duty by a lawyer or a client, I think that has nothing to do with joint representation by a lawyer to two clients or by two lawyers to the same two clients. I think that has to do with single lawyer or lawyer to that one client. It has nothing to do with joint representation.

(*Id.* at 32:12-19).

> THE COURT: Well, Delaware has a similar statute.[1] I also think that part of ... the reason why this exception was made was the fact that when, for example, ... a client sues a lawyer, the client cannot make the argument that the lawyer cannot use in his or her defense any confidential information that was provided by the lawyer to the client.
>
> That's part of what happens under this breach of duty by the lawyer or client aspect of it. But I could go back, the *Teleglobe* case speaks volumes on this, and the *Teleglobe* case also addressed these points more directly than certainly this case did as far as the issues.
>
> It was a thorough analysis and I'm standing by that. I understand what was said by the Court of Appeals in California [in *Anten*], and that's fine, that's

---

[1] The court is referring to the breach of duty exception codified at Del. R. Evid. 502(d)(3).

4

their own interpretation. And you think that when it comes to the joint clients common interest that that's a different situation?

MR. MOJDEHI: So, Your Honor --

THE COURT: Because otherwise you just basically eviscerate the attorney/client privilege for that one party who has nothing to do with the action, who has not waived its rights, who has not waived anything at all, who is not involved in the lawsuit.

(*Id.* at 113:5-114:13).

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(a), the district judge must consider timely objections to a magistrate judge's ruling on any "pretrial matter not dispositive of a party's claim or defense." Discovery orders are non-dispositive pretrial matters, even where questions of privilege are involved. *Lebovitz v. Hartford Ins. Co. of the Midwest*, 918 F. Supp. 2d 422, 424 (W.D. Pa. 2013); *Shulton, Inc. v. Optel Corp.*, 1987 WL 19491, at *6 (D.N.J. Nov. 4, 1987). The magistrate judge's legal conclusions are given *de novo* review. *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 2016 WL 3457007, at *1 (D. Del. June 22, 2016), *aff'd*, 2017 WL 4570664 (3d Cir. Oct. 13, 2017). The district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

## III. DISCUSSION

The magistrate judge relied on *Teleglobe* to hold that neither the adverse-litigation exception nor the breach of duty exception were proper grounds to compel Defendants' production of privileged documents from the joint representation of Mahalo USA and Mahalo Canada. (D.I. 128 at 19:13-20:19, 25:8-26:4, 113:5-114:13). Other courts addressing the same factual scenario have uniformly reached a different conclusion: A joint client suing only the joint attorney may

5

compel disclosure of privileged documents from the joint representation.[2] *See Anten v. Super. Ct.*, 183 Cal. Rptr. 3d 422, 423 (Cal. Ct. App. 2015); *Bolton v. Weil, Gotshal & Manges LLP*, 2005 WL 5118189, at *5–7 (N.Y. Sup. 2005); *Farnsworth v. Van Cott, Bagley, Cornwall & McCarthy*, 141 F.R.D. 310, 313 (D. Colo. 1992); *Construction Unlimited Corp. v. Woodfield*, 1992 WL 157511, at *2 (Conn. Super. June 17, 1992); *Tunick v. Day, Berry & Howard*, 486 A.2d 1147, 1149 (Conn. Super. 1984). These courts have rested their conclusion on the adverse-litigation exception and/or the breach of duty exception. In light of the foregoing, the court will first address the limits of *Teleglobe*, and then discuss the rationales of these other cases. Next, the court will discuss the scope of discovery under the adverse-litigation exception, and why the magistrate judge correctly ruled that Plaintiff is not entitled to every document that mentions Mahalo USA. Finally, the court will address Defendants' argument that a joint attorney's conflict of interest allows him to withhold privileged communications from a joint client, even though the communications were made in the course of the joint representation.[3] (D.I. 131 at 3).

## A. The Limits of *Teleglobe*

The parties did not cite, and the court did not find, any Delaware case addressing whether a joint attorney, sued by only one of his joint clients, could withhold communications from the joint representation on the basis of privilege. Instead, the parties cited, and the magistrate judge relied on, the Third Circuit's decision in *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007). (D.I. 128 at 18:15-20, 19:13-20:19). In that case, Teleglobe's subsidiaries (the

---

[2] Defendants did not cite, and the court did not find, any case with the opposite outcome, *i.e.*, where a joint attorney sued by only one of the joint clients was allowed to withhold communications from the joint representation on the basis of privilege.

[3] The court will not address Defendants' argument raised in their response to Plaintiff's objections that the documents are irrelevant. (D.I. 131 at 6-7). Defendants have not shown that this argument was presented to and ruled on by the magistrate judge.

"Subsidiaries") sued Teleglobe's parent Bell Canada Enterprises, Inc. ("Bell Canada"), meaning the Subsidiaries essentially sued their grandparent. *Id.* at 354. The Subsidiaries alleged that Bell Canada had improperly decided to cease funding Teleglobe, thereby causing its bankruptcy. *Id.* In discovery, Bell Canada withheld from production documents regarding its decision to abandon Teleglobe, claiming that the documents reflected privileged advice given solely to it. *Id.* at 355. The trial court disagreed. *Id.* at 357. It found that Teleglobe and Bell Canada were joint clients represented by Bell Canada's in-house counsel and compelled the production of all the privileged documents from that joint representation. *Id.*

On appeal, the Third Circuit reversed. *Id.* at 380. As the Third Circuit explained, the joint-client privilege protects communications among joint clients and their common attorneys "from compelled disclosure to persons outside the joint representation." *Id.* at 363. As a general rule, persons outside the joint representation may obtain privileged communications from the joint representation only if all of the joint clients consent to waiving the privilege. *Id.* Bell Canada did not consent. *Id.* at 354. As a result, the Subsidiaries could not compel disclosure of the privileged documents unless they fit within one of two exceptions to the general rule. Under the first exception, one joint client "may unilaterally waive the privilege as to its own communications with a joint attorney, so long as those communications concern only the waiving client." *Id.* at 363. But one joint client may not "unilaterally waive the privilege as to any of the other joint clients' communications or as to any of its communications that relate to other joint clients." *Id.* Thus, Teleglobe's unilateral consent was not a proper basis on which to compel production of Bell Canada's privileged documents from the joint representation. *Id.* at 387. Under the second exception (the adverse-litigation exception), all communications made in the course of the joint representation are discoverable when former joint clients sue one another. *Id.* at 366. The trial

7

court, however, made no factual findings regarding whether the Subsidiaries were a part of the joint representation. *Id.* at 380. It only found that Teleglobe and Bell Canada were part of a joint representation. *Id.* at 357. Accordingly, the Third Circuit reversed and remanded with instructions for the trial court to determine whether the Subsidiaries were a part of any joint representation with Bell Canada and Teleglobe. *Id.* at 380.

Here, the parties dispute whether the adverse-litigation exception applies when a joint client sues the joint attorney but not the other joint client. *Teleglobe* did not address this particular issue because, in *Teleglobe*, plaintiffs were trying to compel the production of documents from a purported joint-client, not the joint-attorney. Accordingly, *Teleglobe* has limited applicability to this case. For cases addressing the factual scenario presented here, the court must look outside Delaware.

### B. Reasons to Compel Disclosure

In a lawsuit between a joint client and the joint attorney, all of the courts found to have addressed the issue relied on the adverse-litigation exception to compel disclosure of the privileged communications from the joint representation.[4] *See Bolton v. Weil, Gotshal & Manges LLP*, 2005 WL 5118189, at *5–7 (N.Y. Sup. 2005); *Farnsworth v. Van Cott, Bagley, Cornwall & McCarthy*, 141 F.R.D. 310, 313 (D. Colo. 1992); *Construction Unlimited Corp. v. Woodfield*, 1992 WL 157511, at *2 (Conn. Super. June 17, 1992); *Tunick v. Day, Berry & Howard*, 486 A.2d 1147, 1149 (Conn. Super. 1984). Some of these courts found that the breach of duty exception was a second independent reason to compel disclosure. *See Construction Unlimited*, 1992 WL 157511, at *2; *Tunick*, 486 A.2d at 1149. The court will address each of these exceptions in turn.

---

[4] Some of these cases refer to the adverse-litigation exception as the "joint client privilege" or the "co-client privilege."

8

## 1. The Adverse Litigation Exception

As one court explained, the adverse-litigation exception is not limited to lawsuits between former joint clients. *Bolton*, 2005 WL 5118189, at *6. It applies equally to lawsuits between one of the joint clients and the joint attorney. *Id.* "Rules governing the [joint client] privilege are premised on an assumption that [joint clients] usually understand that all information is to be disclosed to all of them." Restatement (Third), The Law Governing Lawyers, § 75, Comment d. A joint client "cannot reasonably expect that the [joint attorney] will keep information from other [joint clients]." *Bolton*, 2005 WL 5118189, at *5. The only people joint clients can reasonably expect to withhold privileged communications from are third parties or strangers to the joint representation. *Id.* at *6; *see also Teleglobe*, 493 F.3d at 363 (the joint-client privilege protects privileged communications "from compelled disclosure to persons outside the joint representation"). Neither a joint client nor a joint attorney is a stranger or a third party to the joint representation. *Bolton*, 2005 WL 5118189, at *6. Indeed, the joint attorney provided the joint representation. *Id.*

As a result, a joint attorney may not withhold from one joint client privileged communications from the joint representation, even if the other (non-party) joint client refuses to consent to the disclosure. *See Farnsworth*, 141 F.R.D. at 312 (rejecting joint attorney's argument that privileged communications from the joint representation may be withheld because the non-party joint clients have not consented to the disclosure); *Anten*, 183 Cal. Rptr. 3d at 424 (same). Allowing the non-party joint client to withhold consent creates a substantial risk of collusion. *Anten*, 183 Cal. Rptr. 3d. at 426. For example, if "an attorney breached a duty to one of two joint clients but breached no duties to the other, and the wronged client sued the attorney, then it would be unjust to allow the nonsuing client to thwart the other client's suit by invoking the privilege to

9

prevent introduction of relevant attorney-client communications made in the course of the joint representation." *Id.* Under Plaintiff's theory of the case, collusion would be a relevant concern here.

Ultimately, the documents Plaintiff seeks would not be disclosed to a third party, but would remain among the joint clients and the joint attorney that participated in the joint representation. Accordingly, it is not enough that Mahalo Canada, a non-party joint client, objects to the disclosure of privileged documents from the joint representation. The court finds that the magistrate judge erred in holding that the adverse-litigation exception was not a proper legal basis for compelling disclosure of privileged documents from the joint representation.

### 2. The Breach of Duty Exception

Several courts have relied on the breach of duty exception to compel disclosure of privileged communications in a lawsuit between a joint client and the joint attorney. *See, e.g., Tunick*, 486 A.2d at 1149; *Construction Unlimited*, 1992 WL 157511, at *2. The breach of duty exception provides that, "[i]n a lawsuit between an attorney and a client based on an alleged breach of a duty arising from the attorney-client relationship, attorney-client communications relevant to the breach are not protected by the attorney-client privilege." *Anten*, 183 Cal. Rptr. 3d at 423. Delaware has adopted a breach of duty exception in substantially the same form. *See* Del. R. Evid. 502(d)(3) (stating that there is no privilege "[a]s to a communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer"); *State v. Black*, 1995 WL 156073, at *3 (Del. Super. Ct. Feb. 8, 1995) ("There is no attorney-client privilege when a client alleges a breach of duty on the attorney's part with regard to communications relevant to the alleged breach."), *aff'd*, 1995 WL 301370 (Del. 1995).

Here, the magistrate judge ruled that the breach of duty exception was limited to litigation involving a single lawyer and a single client. (D.I. 128 at 32:12-19). Defendants did not provide any authority suggesting that the breach of duty exception does not apply to joint clients. In addition, there is nothing in the rule itself that suggests such a limitation. More important, a narrow interpretation of the exception could lead to a situation where a joint lawyer could breach the duty owed to all of his joint clients, and those joint clients could not compel disclosure of privileged communications from the joint representation. For these reasons, the court finds that the magistrate judge erred in concluding that the breach of duty exception does not apply to cases involving a joint representation.

## C. The Scope of Documents Subject to Disclosure

The magistrate judge rejected Plaintiff's suggestion that, under the adverse-litigation exception, Mahalo Canada gave up any claim of attorney-client privilege in any document referencing Mahalo USA. (D.I. 129 at 3). The court finds no error in this statement. The adverse-litigation exception does not entitle Plaintiff to unbounded discovery. A joint client is entitled to only those communications relevant to the matter of common interest that was the subject of the joint representation. *See, e.g., Tunick*, 486 A.2d at 1149 (explaining that material not a part of the joint representation remains protected by the attorney client privilege); *Teleglobe*, 493 F.3d at 386-87 (explaining that communications outside the scope of the joint representation, even if shared with a conflicted joint attorney, are not discoverable, but communications within the scope are discoverable).

Although the parties do not dispute that there was a joint representation, they have not identified the matter of common interest that was the subject of the joint representation. It is possible that Mahalo Canada has some privileged documents which reference Mahalo USA, but

11

which are not the subject of the joint representation. Because the parties did not identify the matter of common interest, it is difficult to determine where exactly that line would be drawn. Nevertheless, once the parties have agreed on the matter of common interest, Plaintiff is entitled to all communications that fall within the scope of the joint representation, including communications where one joint client is not present. *See Glacier Gen. Assurance Co. v. Super. Ct.*, 157 Cal. Rptr. 435, 437 (Cal. App. 1979) (explaining that disclosure under the adverse-litigation exception is not limited to those communications made to an attorney by joint clients in the presence of each other, but "include[s] *all* communications-bilateral as well as trilateral" (emphasis in original)); *Ashcraft & Gerel v. Shaw*, 728 A.2d 798, 811-12 (Md. App. 1999) (finding that the adverse-litigation exception applies regardless of whether the communication was made in the presence of all joint clients or only one joint client).

## D. When A Conflict of Interest Arises in the Joint Representation

Defendants rely on dicta in *Teleglobe* to argue that a joint attorney's conflict of interest allows one joint client to withhold from the other joint client privileged documents from the joint representation. (D.I. 131 at 3). Specifically, *Teleglobe* favorably quoted the following statement from *Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.*, 743 F.2d 932 (D.C. Cir. 1984):

> [C]ounsel's failure to avoid a conflict of interest should not deprive the client of the privilege. The privilege, being the client's, should not be defeated solely because the attorney's conduct was ethically questionable.

(D.I. 131 at 3 (quoting *Teleglobe*, 493 F.3d at 369 (quoting *Eureka*, 743 F.2d at 938))). This quote is taken out of context. Neither *Teleglobe* nor *Eureka* held that privileged communications from the joint representation can be withheld from a joint client when the joint attorney develops a conflict of interest due to diverging interests of the joint clients.

Instead, as *Teleglobe* itself stated, "*Eureka* is merely one in a line of cases that hold that communications outside the scope of the joint representation or common interest remain

12

privileged." *Teleglobe*, 493 F.3d at 381. In *Eureka*, the owner of an apartment building announced its intention to convert the building into condominiums. 743 F.2d at 935. The tenants sued in opposition. *Id.* The owner's insurer agreed to pay all of the owner's legal expenses in opposing the tenants. *Id.* The owner eventually agreed to settle the action with the tenants, but the insurer did not approve of the terms. *Id.* When the owner sued the insurer for wrongful delay in approving the settlement, it used the same lawyers as in the tenant action. In the insurance action, the owner refused to produce documents related to its consultation with the lawyers about that action. *Id.* at 936. The owner argued, and the court agreed, that the lawyers represented the insurer and the owner *jointly* with respect to the defense of the tenant action, but represented the owner *individually* with respect to the insurance action. *Id.* Accordingly, the court identified two separate matters of interest (represented by two different lawsuits) and held that documents related to the tenant dispute were not protected from disclosure, but the documents related to the insurance dispute remained protected by privilege, even though the lawyers should not have represented the owner in the insurance dispute given the conflict of interest. *Id.*

*Bolton v. Weil, Gotshal & Manges LLP* demonstrates the error of Defendants' position. 2005 WL 5118189 (N.Y. Sup. Sept. 16, 2005). In *Bolton*, a law firm represented a musician along with a music publishing company, a record company, and a songwriter in defending against a claim of copyright infringement. *Id.* at *1. The law firm's fees were paid by the insurer for the music publishing company. *Id.* The copyright infringement action resulted in a jury verdict against all of the defendants. *Id.* The adverse judgment allowed the music publishing company and the record company to recover from the musician under an indemnity agreement. *Id.* In a second action, the musician sued the law firm, alleging that it breached its fiduciary duties owed to him by pushing the copyright infringement action to trial instead of settlement, which favored his co-

13

clients' interests over his. *Id.* at *1. In the fiduciary duty action, the law firm withheld, as privileged, communications from the joint representation in the copyright infringement. *Id.* at *2. The court compelled disclosure on the grounds that: (1) the documents reflected communications between the law firm and the co-clients in the copyright infringement action, (2) the documents "were relevant to the common interest of the joint clients," and (3) the documents were relevant to the issues in the fiduciary duty action. *Id.* at *6. The court added that, to the extent the musician and his co-clients "are alleged to have had conflicting interests in the [copyright infringement action], any such purported conflict does not render their individual communications with their joint attorneys confidential," because the co-clients had no reasonable expectations of confidentiality with respect to communications relevant to the matter of common interest. *Id.*

Taking *Eureka* and *Bolton* together, the touchstone for compelling disclosure is whether the communications are relevant to the matter of common interest that is the subject of the joint representation. The Defendants cannot maintain a claim of privilege over communications relevant to the matter of common interest for which they were retained as joint attorneys by claiming that they had a conflict of interest within that joint representation. Instead, Defendants must demonstrate that the communications are related to an individual matter for which they were separately retained.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's objections (D.I. 129) are overruled in part and sustained in part. The magistrate judge's rulings (D.I. 126, D.I. 128) are affirmed in part and reversed in part. The matter is returned to the magistrate judge for further proceedings consistent with this memorandum opinion.

An appropriate order will be entered.

14